UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BARBARA J. WALKER, : | |
| : | |
| Plaintiff, : | |
| : | Civil Action No.:   04-1991 (RMU) |
| v. : | |
| : | Document No.:   15 |
| PHARMACEUTICAL RESEARCH AND : | |
| MANUFACTURERS OF AMERICA *et al.*, : | |
| : | |
| Defendants. : | |

MEMORANDUM OPINION

Granting the Defendants' Motion for Summary Judgment

I.  INTRODUCTION

This case comes before the court on the defendants'[1] motion for summary judgment.  The plaintiff alleges that defendant Pharmaceutical Research and Manufacturers of America ("PhRMA") erroneously classified her as an independent contractor, thus denying her pension and welfare benefits in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, and the common law of the District of Columbia ("D.C.").  Because the plaintiff's claims that the defendants violated ERISA are time-barred and because ERISA preempts the plaintiff's common law claims, the court grants the defendants' motion for summary judgment.

---

[1]  The motion of summary judgment was filed by the following defendants: Pharmaceutical Research and Manufacturers of America ("PhRMA"), the PhRMA Retirement Plan, the PhRMA Deferred Savings Plan, the PhRMA Retirement Committee, and the PhRMA Board of Directors.

## II. BACKGROUND

### A. Factual Background

The plaintiff, an attorney, began her employment at PhRMA's predecessor organization, the Pharmaceutical Manufacturers Association ("PMA") in December 1977 as Regional Director for State Government Affairs. Pl.'s Mem. of P. & A. in Opp'n to PhRMA Defs.' Mot. for Summ. J. ("Pl.'s Opp'n") at 3. The plaintiff was promoted to the positions of Assistant General Counsel and Associate General Counsel in July 1982 and November 1986, respectively. *Id.* at 4.

Following the birth of her second child in 1988, the plaintiff requested a part-time work arrangement. *Id.* at 6. PMA's President, Gerald Mossinghoff, however, "did not believe in part-time professionals" and denied her request. Pl.'s Opp'n Ex. 19 at 1-2. As a result, the plaintiff resigned her position on March 28, 1988 and sought employment elsewhere. Defs.' Mem. of P. & A. in Support of their Mot. for Summ. J. ("Defs.' Mot.") at 2; Pl.'s Opp'n at 6. After the plaintiff received an offer of employment elsewhere, PhRMA's General Counsel, Bruce Brennan, suggested to her that she serve as an independent contractor to PhRMA. Pl.'s Opp'n at 6. The plaintiff accepted and signed an independent contractor agreement on March 24, 1988.[2] *Id.* The plaintiff alleges that she signed the independent contractor agreement based on the belief that, as a professional, she was ineligible for part-time employment and based on the belief that part-time employees were not eligible for employee benefits. Pl.'s Mot. at 6.

The independent contractor agreement stated that the plaintiff "shall be engaged as an independent contractor, not as an employee, and shall not be entitled to participate in any of

---

[2] The independent contractor agreement became effective April 18, 1988. Defs.' Mem. of P. & A. in Support of their Mot. for Summ. J. ("Defs.' Mot.") at 2.

[PhRMA's] employee benefit plans." Defs.' Mot. Ex. 8A. The March 24, 1988 independent contractor agreement terminated on January 28, 1989. Once that independent contractor agreement expired, PhRMA and the plaintiff signed identically worded agreements every year until 2001. Defs.' Mot Ex. 8; Defs.' Mot. at 3. The parties executed their final agreement on September 12, 2001. Defs.' Mot. at 3. "This final agreement also provided [the plaintiff] with notice of PhRMA's intent not to continue their relationship following the expiration of the agreement on June 30, 2002." *Id.*

### B. Procedural Background

The plaintiff filed her original complaint on November 11, 2004. On August 25, 2005, the plaintiff filed an amended complaint, and the defendants moved for summary judgment on October 21, 2005. The court now turns to the defendants' motion.

### III. ANALYSIS

The plaintiff's complaint makes several claims under ERISA and D.C. common law. Specifically, the plaintiff asserts that: (1) she is entitled to benefits under 29 U.S.C. § 1132(a)(1)(B) ("ERISA § 502"); (2) the defendants interfered with her rights to retirement benefits, in violation of 29 U.S.C. § 1140 ("ERISA § 510"); (3) the defendants breached their fiduciary duties, in violation of 29 U.S.C. § 1104 ("ERISA § 404"); (4) PhRMA abused the parties' employment relationship; and (5) PhRMA breached its obligations to the plaintiff. *See*

*generally* Am. Compl.³  The court analyzes each of these claims in turn.

### A.   Legal Standard for a Motion for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  To determine which facts are "material," a court must look to the substantive law on which each claim rests.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action.  *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true.  *Anderson*, 477 U.S. at 255.  A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position.  *Id.* at 252.  To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.  By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on

---

³ The plaintiff's amended complaint does not list the ERISA claims as separate counts.  Further, the plaintiff's specific claims are unclear because the complaint cites mostly to the Internal Revenue Code, 26 U.S.C. §§ 1001 *et seq.*, rather than to ERISA.  Because the plaintiff does not dispute the defendants' statements that she brings claims under ERISA §§ 502, 510 and 404, the court relies on the defendants' characterization of the plaintiff's claim.

summary judgment.  *Id.*

In addition, the nonmoving party may not rely solely on allegations or conclusory statements.  *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999); *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993).  Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor.  *Greene*, 164 F.3d at 675.  If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted."  *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

### B.  The Court Dismisses the ERISA § 502 Claim

The plaintiff alleges that the defendants interfered with her right to benefits under the PhRMA employee welfare benefit plans and pension plans and that she is entitled to benefits for the years 1988 - 2002 under ERISA § 502.  Am. Compl. ¶¶ 23, 75.  The defendants move to dismiss the ERISA § 502 claim, arguing that it is barred by the applicable statute of limitations.  Defs.' Mot. at 5.

ERISA does not provide a statute of limitations for § 502 claims.  As a result, courts apply the statute of limitations for the most analogous state law claim.  "[C]ourts have uniformly characterized [ERISA § 502] claims as breach of contract claims for purposes of determining the most analogous statute of limitations under state law."  *Meade v. Pension Appeals & Review Comm.*, 966 F.2d 190, 195 (6th Cir. 1992); *see also Trs. of United Ass'n Full-Time Salaried Officers and Employees of Local Unions, Dist. Councils, State and Provincial Ass'ns Pension Plan v. Steamfitters Local Union 395*, 641 F. Supp. 444, 446 n.1 (D.D.C. 1986) (analogizing ERISA § 502 claims to state law contract claims).  The D.C. statute of limitations for breach of contract claims is three years.  D.C. Code § 12-301(7)-(8).  In a case such as this one where the

plaintiff did not file a claim for benefits, the statute of limitations on an ERISA § 502 claim begins to run when the fiduciary clearly and unequivocally repudiates the beneficiary's benefits claim.[4]  *Union Pac. R.R. Co. v. Beckham*, 138 F.3d 325, 330-31 (8th Cir. 1998).

The defendants argue that PhRMA clearly and unequivocally repudiated the plaintiff's benefits in the March 24, 1988 independent contractor agreement and the subsequent yearly independent contractor agreements.  Defs.' Mot. Ex. 8.  The independent contractor agreements explicitly stated that the plaintiff was ineligible to participate in the defendants' pension plans. *Id.*  The plaintiff does not expressly address the defendants' arguments regarding repudiation except to say that she did not knowingly waive her rights to retirement benefits.[5]  Pl.'s Opp'n at 6-7, 25.

The court's inquiry, however, does not center on whether the plaintiff knowingly waived any rights.  Rather, the court's inquiry centers on whether the defendants repudiated their obligations under the retirement plans, and whether the defendants clearly communicated the repudiation to the plaintiff.  *Romero v. Allstate Corp.*, 404 F.3d 212, 223 (3d Cir. 2005) (noting that the statute of limitations on an ERISA § 502 claim begins to run "when there has been a

---

[4]  Although the D.C. Circuit has not discussed the repudiation concept as applied to ERISA, courts construe ERISA claims in light of trust law.  *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 110-11 (1989).  The statute of limitations against a trust begins to run after "a clear and continuing repudiation of the right to trust benefits."  *Kosty v. Lewis*, 319 F.2d 744, 750 (D.C. Cir. 1963).

[5]  The plaintiff states that the statute of limitations cannot begin running when an individual signs an independent contractor agreement because "[i]f that were the case, there would be no place for the assessment of the *Darden* criteria to see whether or not the person is a common law employee."  Pl.'s Opp'n at 27.  The plaintiff's rather muddled argument assumes that the statute of limitations has not run.  Yet, the relevant inquiry is not whether the plaintiff qualifies as a common law employee, but rather, whether the statute of limitations began to run when the plaintiff signed the independent contractor agreement.  *Levine v. NL Indus., Inc.*, 926 F.2d 199, 201 (2d Cir. 1991) (considering statute of limitations arguments before considering arguments on the merits).

repudiation of the benefits *by the fiduciary* which is clear and made known to the beneficiary" (emphasis added) (internal punctuation omitted)); *see also Daill v. Sheet Metal Workers Local 73 Pension Fund*, 100 F.3d 62, 66 (7th Cir. 1996); *Miles v. N.Y. State Teamsters Conference Pension & Ret. Fund Employee Pension Benefit Plan*, 698 F.2d 593, 598 (2d Cir. 1983), *cert. denied*, 464 U.S. 829 (1983).

    Here, the defendants' independent contractor agreement clearly communicated to the plaintiff that she was ineligible to receive benefits under the PhRMA retirement plans.  Defs.' Mot. Ex. 8.  As stated by one court, "all of the district courts that have considered claims made by individuals who were classified or treated as independent contractors have held that the statute of limitations begins to run when the beneficiary first learns that she is considered an independent contractor and is therefore not entitled to benefits, regardless of whether she later files a formal claim for benefits."  *Brennan v. Met. Life Ins. Co.*, 275 F. Supp. 2d 406, 410 (S.D.N.Y. 2003) (citing *Schultz v. Texaco Inc.*, 127 F. Supp. 2d 443, 448 (S.D.N.Y. 2001), *Berry v. Allstate Ins. Co.*, 252 F. Supp. 2d 336, 343 (E.D. Tex. 2003), *Kryzer v. BMC Profit Sharing Plan*, Civ. 2001 WL 1587177, at *4 (D. Minn. Nov. 1, 2001), *Bolduc v. Nat'l Semiconductor Corp.*, 35 F. Supp. 2d 106, 120 (D. Me. 1998), and *Kienle v. Hunter Engg Co.*, 24 F. Supp. 2d 1004, 1006-07 (E.D. Mo. 1998)).  Accordingly, the plaintiff's ERISA § 502 claim began to run on March 24, 1988, the date that the parties executed the independent contractor agreement.  Because the plaintiff did not bring this suit until 2004, the applicable three-year statute of limitations bars her claim.

### C. The Court Dismisses the ERISA § 510 Claim

The plaintiff alleges that the defendants violated ERISA § 510, Am. Compl. ¶¶ 23, 75, which makes it unlawful "to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled," 29 U.S.C. § 1140. The defendants argue that the court should dismiss the claim because it is barred by the applicable statute of limitations. Defs.' Mot. at 8.

ERISA does not provide a statute of limitations for § 510 claims. "When confronted with the question of the appropriate statute of limitations for § 510, the courts of appeals have often applied a state's wrongful discharge or employment discrimination statute." *Andes v. Ford Motor Co.*, 70 F.3d 1332, 1337 n.7 (D.C. Cir. 1995) (citing *Hinton v. Pac. Enters.*, 5 F.3d 391 (9th Cir. 1993), *cert. denied*, 511 U.S. 1083 (1994), *Byrd v. MacPapers, Inc.*, 961 F.2d 157 (11th Cir. 1992), and *McClure v. Zoecon, Inc.*, 936 F.2d 777 (5th Cir. 1991)). In the District of Columbia, a litigant complaining of wrongful discharge must bring an action within three years after the claim accrues. D.C. Code § 12-301(8); *see also Stephenson v. Am. Dental Ass'n*, 789 A.2d 1248, 1248 (D.C. 2002). Under the D.C. Human Rights Act, employment discrimination claims are subject to a one-year statute of limitations. D.C. Code § 2-1403.16(a). Although D.C. law provides the applicable statute of limitations, courts "determine the time at which the federal claim accrued – the moment at which the limitations period began to run – by consulting federal law." *Connors v. Hallmark & Son Coal Co.*, 935 F.2d 336, 341 (D.C. Cir. 1991); *see also Edes v. Verizon Commc'ns, Inc.*, 417 F.3d 133, 138-39 (1st Cir. 2005).

The defendants argue that the statute of limitations on the plaintiff's claim began to run

when PhRMA classified her as an independent contractor ineligible for pension benefits.  Defs.' Mot. at 9-10.  As with the ERISA § 502 claim, the plaintiff does not expressly address the defendants' contention that the ERISA § 510 claim began to run on the date that she was classified as an independent contractor.[6]  Because the purpose of ERISA § 510 is to prevent an employer from terminating an employee for the purpose of avoiding payment of retirement benefits, "it is the [termination] decision and the participant's discovery of this decision that dictates accrual."  *Tolle v. Carroll Touch, Inc.*, 977 F.2d 1129, 1140-41 (7th Cir. 1992).  Here, PhRMA terminated the plaintiff in 1988 and in that same year advised her that she was not eligible for retirement benefits.  Pl.'s Opp'n at 6, 7.  The statute of limitations on the plaintiff's claim, in other words, began to run in 1988, the year she learned that she was no longer eligible to participate in the PhRMA retirement plans.  Because the plaintiff's claim accrued more than 16 years before she filed suit in this court, both the three-year statute of limitations and the one-year statute of limitations bar her ERISA § 510 claim.

### D.  The Court Dismisses the ERISA § 404 Claim

The plaintiff also alleges that the defendants' classification of her as an independent contractor constitutes a breach of fiduciary duty under ERISA § 404.  Am. Compl. ¶¶ 64, 71, 72.  The defendants argue that the applicable statute of limitations bars the plaintiff's claims of breach of fiduciary duty.

The statute of limitations for ERISA § 404 claims is the earlier of: (1) six years after "the

---

[6] Accordingly, the court may treat the defendants' argument as conceded.  *Flynn v. Thibodeaux Masonry, Inc.*, 311 F. Supp. 2d 30, 40 (D.D.C. 2004).  Out of an abundance of caution, however, the court goes on to analyze the merits of the defendants' argument.

date of the last action which constituted a part of the breach or violation" or (2) "three years after the earliest date on which the plaintiff had actual knowledge[7] of the breach or violation." 29 U.S.C. § 1113(1)-(2). Recognizing that her claims are time-barred, the plaintiff opposes the defendants' motion to dismiss the breach of fiduciary claim by arguing that the court should toll the statute of limitations under the doctrine of fraudulent concealment.[8] Pl.'s Opp'n at 12. To prevail on a claim for fraudulent concealment, the plaintiff must plead with particularity that "(1) the defendants engaged in a course of conduct designed to conceal evidence of their alleged wrong-doing and that (2) [the plaintiff was] not on actual or constructive notice of that evidence, despite (3) [her] exercise of diligence." *Larson v. Northrop Corp.*, 21 F.3d 1164, 1172 (D.C. Cir. 1994). Because the plaintiff signed the independent contractor agreements stating that she was ineligible to participate in the PhRMA retirement plans every year from 1988 to 2002, the

---

[7]  The defendants' motion contains a detailed discussion of the "actual knowledge" requirement under 29 U.S.C. § 1113(2). Defs.' Mot. at 14-17. The plaintiff's opposition, however, does not address the defendants' argument that she had actual knowledge of the alleged breach of fiduciary duties in 1988. Instead, the plaintiff's opposition states that she is entitled to the six-year statute of limitations under 29 U.S.C. § 1113(1). Pl.'s Opp'n at 25.

[8]  The plaintiff's amended complaint and her opposition to the defendants' motion to dismiss confuse the doctrines of equitable estoppel and fraudulent concealment. *See, e.g.*, Am. Compl. ¶¶ 47, 48; Pl.'s Opp'n at 12, 25. Unlike fraudulent concealment, the doctrine of equitable estoppel "does not assume a wrongful – or any – effort by the defendant to prevent the plaintiff from suing." *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir. 1990). Because the plaintiff alleges that the defendants took active steps to prevent the plaintiff from bringing this suit, *see, e.g.*, Pl.'s Opp'n at 12, the court presumes that she is urging the court to toll the statute of limitations on the basis of fraudulent concealment.

In her amended complaint, the plaintiff also asserts that the court should toll the statute of limitations because the defendants' actions constitute a continuing breach. Am. Compl. ¶¶ 46, 47, 50. The continuing breach doctrine, however, cannot toll the statute of limitations in this case because the alleged breach arises out of a single act: the allegedly wrongful change of the plaintiff's status from employee to independent contractor. *Edes v. Verizon Comm'ncs, Inc.*, 417 F.3d 133, 139 (1st Cir. 2005) (reasoning that the plaintiff's allegedly wrongful change of status is not a continuing tort because it constitutes a single act); *Berry v. Allstate Ins. Co.*, 252 F. Supp. 2d 336, 345-46 (E.D. Tex. 2003) (citing *Russell v. Bd. of Trs. of Firemen*, 968 F.2d 489, 493 (5th Cir. 1992)); *Potter v. ICI Americas Inc.*, 103 F. Supp. 2d 1062, 1074 (S.D. Ind. 1999) (citing *Teumer v. Gen. Motors Corp.*, 34 F.3d 542 (7th Cir. 1994)).

plaintiff's fraudulent concealment doctrine rests on the theory that the defendants concealed from her that independent contractors may be eligible for pension benefits.  Pl.'s Opp'n at 25.

Without deciding whether the plaintiff's theory is sufficient to meet the first of the three fraudulent concealment prongs, the court rules that the fraudulent concealment doctrine does not toll the statute of limitations in the case at bar because the plaintiff was on notice as early as 1989 that employees in her situation may be eligible for pension benefits.  Specifically, in May 1989, the plaintiff was part of a PhRMA audit team that investigated whether certain individuals, including her, were improperly classified as independent contractors.  Pl.'s Opp'n Ex. 21 at 5-6.  One of the purposes of the investigation was to determine whether such employees were eligible for coverage under the PhRMA pension and benefit plans.[9]  *Id.*  Thus, contrary to the plaintiff's argument that she first learned that she may be eligible for pension benefits during a conversation with her supervisor in 2001, the plaintiff was aware as early as 1989 that the defendants may have improperly classified independent contractors and that the improperly classified independent contractors may be eligible for retirement benefits.[10]  The court accordingly declines

---

[9]     Because of an "obvious conflict of interest," the plaintiff did not review whether she was eligible for pension benefits, but instead left that determination to her supervisor.  Pl.'s Opp'n Ex. 21.  The plaintiff's supervisor allegedly failed to determine whether she was eligible for pension benefits.  *Id.*  The plaintiff, however, also discussed her situation with PhRMA management because she "wanted to be sure that she would be covered by the latest version of the PhRMA retirement plan."  *Id.*  Moreover, in 1993, the plaintiff received a memorandum that included her on a list of independent contractors potentially eligible for retirement benefits.  Pl.'s Opp'n Ex. 5.  The plaintiff, in other words, knew long before she brought suit that she may have been improperly classified as an independent contractor and that independent contractors may be eligible for retirement benefits.

[10]    The plaintiff further states that "PhRMA has been on notice of my disagreement with my employment status since at least May 3, 1989, when I sent one of my many memos to PhRMA management on the subject of PhRMA's misclassification of workers."  Pl.'s Opp'n Ex. 19.  Indeed, the plaintiff "repeatedly and consistently advised PhRMA both verbally and in writing that the Association was inappropriately classifying workers, including [her]self, as independent contractors when legally they should have been classified as employees."  *Id.*

to toll the statute of limitations.

### E. The Court Dismisses the D.C. Common Law Claims

The plaintiff alleges that the defendants committed the tort of abuse of right and breach of contract in violation of D.C. common law. Am. Compl. ¶¶ 76-85. The defendants move for summary judgment on the plaintiff's common law claims arguing that ERISA preempts those claims. Defs.' Mot. at 19. The plaintiff addresses the defendants' preemption arguments in a lone paragraph at the end of her opposition brief, stating simply that she may amend her complain to redact the preempted claims. Pl.'s Opp'n at 28. To date, however, the plaintiff has not sought leave to amend the complaint.

ERISA preempts "any and all state laws insofar as they . . . relate to any employee benefit plan." 29 U.S.C. § 1144(a). ERISA even preempts common law causes of action which relate to ERISA-regulated employee benefit plans. *Murchison v. Murchison*, 2006 WL 994508, at *1 (D.C. Cir. Mar. 2, 2006). The plaintiff's abuse of right and breach of contract claims seek relief pursuant to ERISA plans. For example, she seeks as damages "the reasonable value of the employment benefits that were wrongfully withheld" and "the reasonable value of employment benefits owed to Plaintiff in the future." Am. Compl. ¶¶ 78-79. Because the plaintiff's common law claims seek to vindicate rights under ERISA, preemption applies. *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133 (1990) (holding that ERISA preempted a state law claim because the court's inquiry centered on the employee benefits plan at issue). The court accordingly dismisses the plaintiff's claims that the defendants violated D.C. common law.

## IV.  CONCLUSION

For the foregoing reasons, the court grants the defendants' motion for summary judgment. An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 17th day of July, 2006.

RICARDO M. URBINA  
United States District Judge