**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| BARBARA J. WALKER, | : | | |
| | : | | |
| Plaintiff, | : | | |
| | : | Civil Action No.: | 04-1991 (RMU) |
| v. | : | | |
| | : | Document No.: | 34 |
| PHARMACEUTICAL RESEARCH AND | : | | |
| MANUFACTURERS OF AMERICA *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

**MEMORANDUM OPINION**

**DENYING THE PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT**

**I. INTRODUCTION**

This matter comes before the court on the plaintiff's motion to alter or amend judgment pursuant to Federal Rule of Civil Procedure 59(e). The plaintiff asks the court to vacate its July 17, 2006 order granting summary judgment in favor of the defendants. She argues that the court erroneously ruled that the plaintiff's Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, claims are time-barred.[1] Because the plaintiff had notice of her claims on or before September 2001 and because the plaintiff fails to demonstrate fraudulent concealment by the defendants, the court denies the plaintiff's motion to alter or amend.

---

[1] The court also dismissed the plaintiff's common law claims on pre-emption grounds. The plaintiff does not challenge this ruling in the instant motion.

## II.  BACKGROUND

### A.  Factual Background

The plaintiff, an attorney, was a full-time employee of defendant Pharmaceutical Research and Manufacturers of America[2] ("PhRMA") in various professional capacities from 1977 to 1988.  Mem. Op. (July 17, 2006) ("Mem. Op.") at 2.  Following the birth of her second child in 1988, the plaintiff requested but was denied a part-time work arrangement because PhRMA's then-president "did not believe in part-time professionals."  *Id.*  Instead, PhRMA's General Counsel, Bruce Brennan, suggested that the plaintiff serve as an independent contractor.  *Id.*  The plaintiff accepted this arrangement and signed an independent contractor agreement on March 24, 1988.[3]  *Id.*  At the expiration of that agreement, the plaintiff and PhRMA signed identically worded agreements every year until 2001.  *Id.* at 3.  The final agreement, signed on September 12, 2001, notified the plaintiff that PhRMA did not intend to continue their relationship following the expiration of the agreement on June 30, 2002.  *Id.*

The independent contractor agreements signed by the plaintiff each year stated that the plaintiff "shall be engaged as an independent contractor, not as an employee, and shall not be entitled to participate in any of [PhRMA's] employee benefit plans."  *Id.* at 2-3.  The plaintiff alleges that she signed the independent contractor agreements based on the belief that part-time employees, like independent contractors, were ineligible for employee benefits.  *Id.* at 2.  In other

---

[2]  At the time the plaintiff began her employment with the defendant, the association was known as the Pharmaceutical Manufacturers Association ("PMA").

[3]  On March 28, 1988, the plaintiff submitted her resignation, effective April 17, 1988.  Defs.' Mem. in Supp. of Mot. for Summ. J. ("Defs.' Mot. for Summ. J.") at 2.  The independent contractor agreement became effective April 18, 1988.  *Id.*

words, the plaintiff alleges that she "had no reason" to challenge her classification as an independent contractor rather than as a part-time employee because she believed the "terms and conditions of her employment" were the same as those of part-time employees. Pl.'s Mem. in Supp. of Mot. to Alter or Amend J. ("Pl.'s Mot.") at 5.

Sometime between 1991 and 1994, PhRMA reinterpreted its retirement plan to make part-time employees eligible for certain retirement benefits. Pl.'s Mot. at 5. The plaintiff alleges that the defendants violated ERISA because they failed to notify independent contractors of the changes affecting part-time employees. *Id.* at 5, 13, 16.

### B. Procedural Background

The plaintiff filed her original complaint on November 11, 2004 and she amended her complaint in August 2005. Although difficult to parse, the complaint appears to assert the following claims arising under ERISA[4]: (1) that the plaintiff is entitled to benefits under 29 U.S.C. § 1132(a)(1)(B) ("ERISA § 502"); (2) that the defendants interfered with her rights to retirement benefits by improperly classifying her as an independent contractor, in violation of 29 U.S.C. § 1140 ("ERISA § 510"); and (3) that the defendants breached their fiduciary duties by either failing to notify the plaintiff that part-time employees were eligible to receive benefits, or by classifying her as an independent contractor, rather than as a part-time employee, in violation of 29 U.S.C. § 1104 ("ERISA § 404").

---

[4] Because the plaintiff's complaint does not list her claims as separate counts, *see generally* Pl.'s Am. Compl., the court relies on the defendants' characterization of the claims, *see* Defs.' Mot. for Summ. J. at 3. The plaintiff has not disputed this characterization of her claims. *See generally* Pl.'s Mot. (referring to the ERISA § 502 and ERISA § 404 claims).

The defendants[5] moved for summary judgment in October 2005 on the grounds that the plaintiff's claims were barred by the statute of limitations and were preempted by common law. The court granted the defendants' motion on July 17, 2006, and the plaintiff filed a motion to alter or amend the judgment on July 31, 2006. The court now turns to the plaintiff's motion.

### III. ANALYSIS

#### A. Legal Standard for a Rule 59(e) Motion

Federal Rule of Civil Procedure 59(e) provides that a motion to alter or amend a judgment must be filed within 10 days of the entry of the judgment at issue. FED. R. CIV. P. 59(e); *see also Mashpee Wamponoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1098 (D.C. Cir. 2003) (stating that a Rule 59(e) motion "must be filed within 10 days of the challenged order, not including weekends, certain specified national holidays (including Christmas Day and New Year's Day), or any other day appointed as a holiday by the President"). While the court has considerable discretion in ruling on a Rule 59(e) motion, the reconsideration and amendment of a previous order is an unusual measure. *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (*per curiam*); *McDowell v. Calderon*, 197 F.3d 1253, 1255 (9th Cir. 1999). Rule 59(e) motions "need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear legal error or prevent manifest injustice." *Ciralsky v. Cent. Intelligence Agency*, 355 F.3d 661, 671 (D.C. Cir.

---

[5] The motion for summary judgment was filed by the following defendants: Pharmaceutical Research and Manufacturers of America ("PhRMA"), the PhRMA Retirement Plan, the PhRMA Deferred Savings Plan, the PhRMA Retirement Committee, and the PhRMA Board of Directors.

2004) (quoting *Firestone*, 76 F.3d at 1208). Moreover, "[a] Rule 59(e) motion to reconsider is not simply an opportunity to reargue facts and theories upon which a court has already ruled," *New York v. United States*, 880 F. Supp. 37, 38 (D.D.C. 1995), or a vehicle for presenting theories or arguments that could have been advanced earlier. *Kattan v. District of Columbia*, 995 F.2d 274, 276 (D.C. Cir. 1993); *W.C. & A.N. Miller Cos. v. United States*, 173 F.R.D. 1, 3 (D.D.C. 1997).

### B.  Summary Judgment on the ERISA § 502 Claim was Appropriate

The plaintiff's ERISA § 502 claim alleges that the defendants interfered with her right to benefits under the PhRMA employee welfare benefit and pension plans and that she is entitled to benefits for the years 1988 - 2002. Am. Compl. ¶¶ 23, 75. Under ERISA § 502, a participant or beneficiary of a plan may bring a civil action to recover benefits due under the plan. 29 U.S.C. § 1132(a)(1)(B). The court dismissed the plaintiff's claim that she was entitled to benefits for the years 1988 - 2002, reasoning that the claim began to run in 1988 when she signed the first independent contractor agreement and that she was thus barred by the applicable three-year statute of limitations.[6] Mem. Op. at 7.

The plaintiff makes a number of arguments with respect to the court's dismissal of her ERISA § 502 claim. First, the plaintiff argues that the statute of limitations began to run on

---

[6] ERISA does not provide a statute of limitations for § 502 claims. As a result, courts generally borrow the most closely analogous statute of limitations from the state in which the court sits. *Connors v. Hallmark & Son Coal Co.*, 935 F.2d 336, 341 (D.C. Cir. 1991). Courts apply federal law to decide when the statute of limitations in an ERISA § 502 claim begins to run. *Id.* Because ERISA § 502 claims are most analogous to breach of contract claims, *Meade v. Pension Appeals & Review Comm.*, 966 F.2d 190, 195 (6th Cir. 1992), the applicable statute of limitations for this claim is three years. *Trs. of United Ass'n Full-Time Salaried Officers & Employees of Local Unions, Dist. Councils, State & Provincial Ass'ns Pension Plan v. Steamfitters Local Union 195*, 641 F. Supp. 444, 446 n.1 (D.D.C. 1986); *see* D.C. CODE § 12-301(7).

November 5, 2002, when the defendants denied her March 22, 2002 claim for benefits.  Pl.'s Mot. at 8.  That is, the plaintiff contends that the defendant's denial of benefits in 2002, rather than the date of the first independent contractor agreement, should be the point at which the statute of limitations clock begins to run.  *Id.* at 9.

An ERISA § 502 claim begins to run when a fiduciary clearly repudiates a beneficiary's claim to benefits.  *Romero v. Allstate Corp.*, 404 F.3d 212, 223 (3d Cir. 2005).  While this typically coincides with the formal denial of benefits through an administrative process, it is not the only means by which to repudiate a plaintiff's claim to benefits.  *See id.* at 222-23; *Union Pac. R.R. Co. v. Beckham*, 138 F.3d 325, 330-31 (8th Cir. 1998).  When a clear repudiation occurs before the plaintiff files a formal claim for benefits, the date of the repudiation controls.  *Romero*, 404 F.3d at 223; *Carey v. Int'l Bhd. of Elec. Workers Local 363 Pension Plan*, 201 F.3d 44, 48 (2d Cir. 1999); *Union Pac.*, 138 F.3d at 330-31.  Accordingly, the plaintiff's argument that the court erred in calculating the statute of limitations as of 1988 misconstrues the relevant inquiry.  The court's conclusion that the plaintiff's claim began to run when the defendants repudiated her right to benefits in 1988 was therefore not in error.

Second and in the alternative, the plaintiff asserts that the court erred in concluding that the defendants clearly communicated the 1988 repudiation of benefits to the plaintiff.  *Id.* at 10.  She contends that the defendant's repudiation was not clear because the independent contractor agreements did not describe in detail the particular benefits she was forfeiting.  *Id.*  The independent contractors agreements, however, plainly stated that the plaintiff "shall not be entitled to participate in *any* of [PhRMA's] employee benefit plans."  Mem. Op. at 2-3 (emphasis added).  Contrary to the plaintiff's assertion, the agreements make clear that the plaintiff was

waiving a right to participate in all of PhRMA's employee benefit plans.

The plaintiff attempts to circumvent this unambiguous provision of the independent contractor agreements by arguing that without knowledge that part-time employees were entitled to benefits, an employee's "waiver" of her entitlement to benefits can never be clear.  Pl.'s Mot. at 11.  In other words, the plaintiff contends that "[h]ad she been advised of the reinterpretation of the retirement plan to cover part-time employees, [she] would have taken steps to challenge what she already believed to be an erroneous classification of her as an independent contractor."  Pl.'s Mot. at 5.  But, simply because the defendants did not explain to the plaintiff why she was ineligible – presumably because she was an independent contractor and not a part-time employee – does not mean that they did not clearly communicate to the plaintiff that she was ineligible.[7] An ERISA § 502 claim accrues "when there has been a repudiation of the benefits by the fiduciary which is *clear* and made known to the beneficiary."  *Romero*, 404 F.3d at 223 (internal citation, quotation marks, and brackets omitted) (emphasis in original).  The defendants' repudiation of the plaintiff's right to benefits was clear to her in 1988 when the plaintiff signed the first independent contractor agreement and was made clear again and again with each subsequent agreement that the plaintiff signed.  Even if each of these annual contracts constitutes a new repudiation – an issue the court need not decide – the last repudiation occurred on September 12, 2001.  Because the plaintiff filed suit on November 11, 2004, her suit is barred by the three-year statute of limitations.

---

[7]   Additionally, the court has serious doubts that the plaintiff, even if she had challenged her classification, would have been afforded part-time employee status.  *See* Pl.'s Opp'n to Mot. for Summ. J. ("Pl.'s Opp'n to Summ. J.") Ex. 19 at 1-2 (stating that then-president Gerald Mossinghoff "did not believe in part-time professionals").

Third, the plaintiff claims that the defendants engaged in fraud, which she argues tolls the statute of limitations. Pl.'s Mot. at 5. The plaintiff makes two alternative arguments in support of her contention that the court should toll the statute of limitations, both of which are unconvincing. The plaintiff first argues that the defendants fraudulently concealed her ineligibility for benefits. *See id.* at 11. This argument is unconvincing, however, because the independent contractor agreements explicitly stated that the plaintiff was ineligible to receive benefits. The plaintiff's second argument is that the defendants concealed information from her about part-time employees' eligibility for benefits. *Id.* at 16. An already tenuous argument because the plaintiff was an independent contractor, and not a part-time employee, this point is contradicted by the evidence in the record. The June 1997 PhRMA Employee Handbook specifically notes twice, under the headings "Retirement Benefits" and "Benefits for Part-Time Employees," that the 401(k) Deferred Savings Plan is offered to "all employees who are regularly scheduled to work at least 20 hours per week." Pl.'s Opp'n to Summ. J. Ex. 10. If the plaintiff was actually an employee, as she alleges, or if she was responsible for drafting the employee handbooks, *id.* at 23, she would have been aware as early as 1997 that part-time employees were

entitled to at least some retirement benefits.[8]  Because the defendants clearly and repeatedly repudiated the plaintiff's eligibility for benefits from 1988 to 2001, and because the evidence contradicts the plaintiff's claims of fraudulent concealment, the plaintiff's ERISA § 502 action is barred by the applicable three-year statute of limitations.

### C. The Plaintiff Does Not Challenge the Court's Dismissal of her ERISA § 510 Claim

As the defendants point out, the plaintiff does not challenge the court's holding that her ERISA § 510 claim is time-barred.  Defs.' Opp'n to Pl.'s Rule 59(e) Mot. ("Defs.' Opp'n") at 2 n.2.  When a plaintiff fails to raise certain arguments, the court may treat those arguments as conceded.  *Tnaib v. Document Techs., LLC*, --- F. Supp. 2d ---, 2006 WL 2699022, at *3 (D.D.C. Sept. 21, 2006); *Fox v. Am. Airlines, Inc.*, 2003 WL 21854800, at *2 (D.D.C. Aug. 5, 2003), *aff'd*, 389 F.3d 1291 (D.C. Cir. 2004).  Because the plaintiff has conceded that her ERISA § 510 claim is time-barred, the court does not reconsider its dismissal of this claim.

---

[8]  The court further questions whether the PhRMA Retirement Plan (as opposed to the 401(k) Deferred Savings Plan ["401(k) Plan"]) has, as the plaintiff alleges, been reinterpreted to cover part-time employees.  The plan modification to include part-time employees appears only to affect the 401(k) Plan.  *See* Pl.'s Opp'n to Summ. J. Ex. 3 (discussing how the definition of part-time employee is "narrower" for the 401(k) Plan than for the Retirement Plan and advising that the 401(k) Plan be offered to employees who work 1,000 or more hours per year); Pl.'s Opp'n to Summ. J. Ex. 6 (discussing the 401(k) Plan in light of an IRS newsletter article).  The plaintiff, at the very least, was aware that the 401(k) Plan included employees working at least 1,000 hours per year.  Pl.'s Opp'n to Summ. J. Ex. 4 (listing on a chart created by the plaintiff the eligibility of employees for the Retirement Plan and the 401(k) Plan, specifically referencing the draft letter advising PhRMA that employees working at least 1,000 hours per year could be classified as "full-time" for purposes of the 401(k) Plan).  As far as the court can tell, the only material change made by PhRMA to any of the plans was removing the words "full-time" from the definition of employees eligible to participate in the 401(k) Plan; however, the actual group of employees entitled to participate in the plans remained the same because those employees still satisfied the hourly requirement.

### D. Summary Judgment on the ERISA § 404 Claim was Appropriate

The plaintiff alleges that the defendants breached their fiduciary duties by failing to notify her of plan reinterpretations.[9]  Am. Compl. ¶¶ 68, 71, 72.  ERISA § 404 states that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries."  29 U.S.C. § 1104.  The duties of a fiduciary are not limited to the statute's express provisions, but instead include duties derived from common law trust principles.  *Eddy v. Colonial Life Ins. Co. of Am.*, 919 F.2d 747, 750 (D.C. Cir. 1990).  Concluding that the plaintiff was on notice that employees in her situation may be eligible for pension benefits as early as 1989, the court dismissed the plaintiff's ERISA § 404 claim as time-barred.  Mem. Op. at 9.  The court based it's conclusion on the plaintiff's participation in a 1989 contingent worker audit that investigated whether certain individuals, including her, were improperly classified as independent contractors.  *Id.* at 9, 11-12.

In her motion to alter or amend judgment, the plaintiff reiterates that the court should have tolled statute of limitations because of the defendants' alleged fraudulent concealment.  Pl.'s Mot. at 14.  Arguing that the court improperly relied on the 1989 contingent worker audit conducted by the plaintiff, the plaintiff alleges that because of the defendant's fraud, she did not

---

[9]  Although the plaintiff also alleges that the defendants' breach of fiduciary duty includes a failure to provide her with requested plan documents, Am. Compl. ¶¶ 46, 71, she failed to argue this claim in her opposition to the defendant's motion for summary judgment.  Likewise, the plaintiff does not address the issue in her Rule 59 motion, only raising the point in her reply to the motion to alter or amend judgment.  Pl.'s Reply to Defs.' Opp'n at 1.  Because the plaintiff only addresses this particular claim in her reply to the motion to alter or amend judgment, the plaintiff has waived the argument.  *In re Asemani*, 455 F.3d 296, 300 (D.C. Cir. 2006) (concluding that the plaintiff waived an argument made for the first time in a reply brief); *see also County of McHenry v. Ins. Co. of the West*, 438 F.3d 813, 820 (7th Cir. 2006) (declining to consider an argument raised in a complaint when the plaintiff raised the argument in its Rule 59(e) motion, but did not raise the argument in its opposition to the defendant's motion to dismiss); *Tnaib,* 2006 WL 2699022, at *3.

become aware of her claims until September or November 2001, when she discovered a "smoking gun" letter indicating that part-time workers were eligible for retirement benefits. Pl.'s Mot. at 14-15. For the reasons that follow, the court denies the plaintiff's motion to alter or amend its order dismissing her ERISA § 404 claim.

### 1. Because the Plaintiff Had Actual Knowledge of the Breach, the Three-Year Statute of Limitations is Applicable

The applicable statute of limitations for a breach of fiduciary duty claim under ERISA is the earlier of six years from the date of the last action constituting a part of the breach,[10] or three years from the date a plaintiff first gains actual knowledge of the breach. 29 U.S.C. § 1113(1)-(2). Additionally, in a case of fraud or concealment, an action may be commenced up to six years after the date of discovery of the breach. 29 U.S.C. § 1113.

As an initial matter, there are two ways to characterize the plaintiff's ERISA § 404 claim: either the defendants breached a fiduciary duty to the plaintiff by failing to notify her that part-time employees were eligible for benefits ("failure to disclose") or the defendants breached a fiduciary duty to properly classify the plaintiff as a part-time employee ("failure to properly classify"). In either case, the plaintiff had actual knowledge of her claim in 1991 at the latest, making the three-year statute of limitations applicable to the ERISA § 404 claim.

The plaintiff argues that her claim is not time-barred because she did not discover the "smoking gun" letter until sometime between September 10, 2001, and November 15, 2001. *See* Pl.'s Mot. at 17. The plaintiff asserts that this letter indicated to her that part-time workers were

---

[10] Where the "last action constituting a part of the breach" is an act of omission, the statute of limitations is six years from the latest date the fiduciary could have cured the breach. 29 U.S.C. § 1113(1)(B).

eligible for benefits and thus alerted her to the possibility that she may have an ERISA claim. *Id.* Thus, if the defendant's breach is characterized as a failure to disclose, the plaintiff would have had actual knowledge of the breach as soon as she discovered the letter. Additionally, this knowledge may trigger the statute of limitations on the plaintiff's "failure to properly classify" claim because the plaintiff states that she "would have taken steps to challenge" her classification as an independent contractor had she known that the retirement plan covered part-time employees.[11] Pl.'s Mot. at 5.

Contrary to the plaintiff's assertions, however, the plaintiff was aware of the "smoking gun" letter in 1991. In July 1991, the plaintiff prepared a chart showing the eligibility requirements for retirement benefits which specifically referenced the June 18, 1991 draft letter by Lawrence J. Eisenberg of Sanders, Schnabel & Brandenburg, P.C. Pl.'s Mot. for Summ. J. Ex. 4. If this letter is indeed a "smoking gun" that alerted the plaintiff to the possibility that she had an ERISA claim, then there was smoke long before the plaintiff filed her suit in 2004.[12] Accordingly, because the plaintiff had actual notice of her claim upon discovery of the letter in 1991, her ERISA § 404 claim is barred by the three-year statute of limitations.

### 2. The Fraudulent Concealment Doctrine is Inapplicable

Because the plaintiff had actual knowledge of the alleged breach in 1991, the court need

---

[11] The court notes that, regardless of whether the plaintiff knew that there was a meaningful distinction between the the benefits afforded to part-time workers and independent contractors, starting in 1989, the plaintiff "repeatedly and consistently" challenged her classification as an independent contractor. Mem. Op. (July 17, 2006) at 11 n.10.

[12] Even under the plaintiff's version of the facts, the plaintiff's claim only falls within the statute of limitations if she discovered the letter after November 11, 2001.

not consider the plaintiff's argument that the doctrine of fraudulent concealment tolls the statute of limitations.[13] Nevertheless, the court briefly addresses the fraudulent concealment doctrine as it constitutes the bulk of the plaintiff's arguments. The plaintiff argues that the defendants fraudulently concealed from independent contractors that part-time employees were eligible to participate in the PhRMA retirement plan. Pl.'s Mot. at 5. The plaintiff contends that if she had known that part-time employees were eligible to participate in the retirement plan, she "would have taken steps to challenge what she already believed to be an erroneous classification of her as an independent contractor." *Id.*

For the court to toll the statute of limitations on the basis of "fraud or concealment," the plaintiff must show that a defendant engaged in a course of conduct designed to conceal evidence of the alleged wrongdoing, and that the plaintiff was not on actual or constructive notice of that evidence, despite the exercise of due diligence. *Larson v. Northrop Corp.*, 21 F.3d 1164, 1172 (D.C. Cir. 1994). Stated differently, the plaintiff must show that the defendants engaged in active concealment, that is, "some trick or contrivance to exclude suspicion and prevent inquiry." *Id.* at 1174 (citation and quotation marks omitted).

Whether the concealment is classified as a failure to disclose, Mem. Op. at 11, or a failure to notify the plaintiff that there was a meaningful distinction between part-time employees and independent contractors, the plaintiff has not shown that the defendant engaged in a course of conduct designed to conceal evidence of the alleged wrongdoing. Failure to disclose or "mere silence" does not constitute fraudulent concealment. *Larson*, 21 F.3d at 1174; *see also Ranke v.*

---

[13] The court did not decide this issue in its Memorandum Opinion granting summary judgment to the defendants, but addresses it here in light of the plaintiff's disagreement with the court's interpretation of the facts.

*Sanofi-Synthelabo Inc.*, 436 F.3d 197, 204 (3d Cir. 2006) (noting that failure to warn beneficiaries regarding misconceptions about benefits is not an "affirmative step[]" that would implicate the fraudulent concealment exception); *Larson*, 21 F.3d at 1174. Further, the plaintiff does not claim that the defendants prevented the plaintiff from inquiring about the benefits for part-time employees. *Cf. Eddy*, 919 F.2d at 751 (stating that as soon as the beneficiary called the plan administrator with questions, the administrator "bore a fiduciary duty to convey correct and complete information material to [the beneficiary's] circumstance"). The court additionally questions whether the defendants owed a fiduciary duty to the plaintiff, as she was neither a plan participant nor beneficiary. *See* 29 U.S.C. §§ 1024(b), 1104(a)(1). Because the plaintiff has not demonstrated that the defendants engaged in a course of conduct sufficient to satisfy the fraudulent concealment doctrine, the fraudulent concealment doctrine is inapplicable.

## IV. CONCLUSION

For the foregoing reasons, the court denies the plaintiff's motion to alter or amend its grant of summary judgment in favor of the defendants. An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 15th day of November, 2006.

RICARDO M. URBINA
United States District Judge