**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| BARBARA J. WALKER, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 04-1991 (RMU) |
| | : | | |
| v. | : | Document Nos.: | 59, 60 |
| | : | | |
| PHARMACEUTICAL RESEARCH AND | : | | |
| MANUFACTURERS OF AMERICA *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

**MEMORANDUM OPINION**

GRANTING IN PART AND DENYING IN PART THE INDIVIDUAL DEFENDANTS' MOTION TO DISMISS; GRANTING IN PART AND DENYING IN PART THE NEW YORK LIFE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**I. INTRODUCTION**

The remaining defendants in this lengthy litigious saga set before this court a motion to dismiss and a motion for summary judgment. Individuals who are current or former members of the board of directors of Pharmaceutical Research and Manufacturers of America[1] ("PhRMA") and members of the PhRMA retirement committee (collectively the "individual defendants") filed the motion to dismiss. New York Life Insurance Company ("NYLIC") and New York Life Investment Management, Inc. ("NYLIM") (collectively the "New York Life defendants") filed the motion for summary judgment. Both groups of defendants raise numerous arguments against the plaintiff's claims, which stem from alleged violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* Because the plaintiff failed to properly serve 10 of the individual defendants, the court allows 30 days for the plaintiff, proceeding *pro se*, to properly effect service. Furthermore, because claims arising before

---

[1] At the time the plaintiff began her employment with the defendant, the association was known as the Pharmaceutical Manufacturers Association ("PMA").

November 15, 1998 are definitively time barred, and because the plaintiff may not re-hash old legal arguments to bring back claims that this court previously dismissed, the court dismisses many of the plaintiff's ERISA claims. But, the court does not dismiss the plaintiff's claims that allege that the remaining defendants failed to respond to requests for, or disclose, ERISA plan documents in more recent years.

## II.  BACKGROUND

### A.  Factual Background

The plaintiff, an attorney, was a full-time employee of PhRMA in various professional capacities from 1977 to 1988. Mem. Op. (July 17, 2006) at 2. Following the birth of her second child in 1988, the plaintiff requested but was denied a part-time work arrangement because PhRMA's then-president "did not believe in part-time professionals." *Id.* Instead, PhRMA's General Counsel, Bruce Brennan, suggested that the plaintiff serve as an independent contractor. *Id.* The plaintiff accepted this arrangement and signed an independent contractor agreement on March 24, 1988.[2] *Id.* At the expiration of that agreement, the plaintiff and PhRMA signed identically worded agreements every year until 2001. *Id.* at 3. The final agreement, signed on September 12, 2001, notified the plaintiff that PhRMA did not intend to continue their relationship following the expiration of the agreement on June 30, 2002. *Id.*

The independent contractor agreements signed by the plaintiff each year stated that the plaintiff "shall be engaged as an independent contractor, not as an employee, and shall not be entitled to participate in any of [PhRMA's] employee benefit plans." *Id.* at 2-3. The plaintiff alleges that she signed the independent contractor agreements based on the belief that part-time

---

[2]   On March 28, 1988, the plaintiff submitted her resignation, effective April 17, 1988. PhRMA Defs.' Mot. for Summ. J. at 2. The independent contractor agreement became effective April 18, 1988. *Id.*

2

employees, like independent contractors, were ineligible for employee benefits. *Id.* at 2. In other words, the plaintiff alleges that she "had no reason" to challenge her classification as an independent contractor rather than as a part-time employee because she believed the "terms and conditions of her employment" were the same as those of part-time employees. Pls.' Mot. to Alter or Amend J. at 5.

Sometime between 1991 and 1994, PhRMA reinterpreted its retirement plan to make part-time employees eligible for certain retirement benefits. *Id.* at 5. The plaintiff alleges that the defendants violated ERISA because they failed to notify independent contractors of the changes affecting part-time employees. *Id.* at 5, 13, 16.

### B. Procedural Background

The plaintiff filed her original complaint on November 11, 2004, and she amended her complaint in August 2005. Although difficult to parse, the complaint appears to assert the following claims arising under ERISA[3]: (1) that the plaintiff is entitled to benefits under 29 U.S.C. § 1132(a)(1)(B) ("ERISA § 502"); (2) that the defendants interfered with her rights to retirement benefits by improperly classifying her as an independent contractor, in violation of 29 U.S.C. § 1140 ("ERISA § 510"); and (3) that the defendants breached their fiduciary duties by either failing to notify the plaintiff that part-time employees were eligible to receive benefits, or by classifying her as an independent contractor, rather than as a part-time employee, in violation of 29 U.S.C. § 1104 ("ERISA § 404").

---

[3]   Because the plaintiff's complaint does not list her claims as separate counts, *see generally* Pl.'s Am. Compl., the court relies on the defendants' characterization of the claims, *see* Defs.' Mot. for Summ. J. at 3. The plaintiff has not disputed this characterization of her claims. *See generally* Pl.'s Mot. (referring to the ERISA § 502 and ERISA § 404 claims).

The PhRMA defendants[4] moved for summary judgment in October 2005 on the grounds that the statute of limitations bars the plaintiff's ERISA claims and that ERISA preempts the platintiff's common law claims. *See generally* PhRMA's Mot. In granting the PhRMA defendants' motion on July 17, 2006, the court determined that (1) the three-year statute of limitations bars the plaintiff's § 502 claim because it began to run when the parties executed an independent contractor agreement in 1988; (2) applying either a one-year or a three-year statute of limitation would bar the plaintiff's § 510 claim because the claim accrued in 1988, the year she learned that she was no longer eligible to participate in the PhRMA retirement plans; (3) the statute of limitations bars the plaintiff's § 404 claim because the plaintiff had knowledge of the alleged breach or violation more than three years before she filed suit; and (4) ERISA preempts the plaintiff's D.C. common law claims. *See generally* Mem. Op. (July 16, 2006).

The plaintiff then filed a motion to alter or amend judgment on July 31, 2006. The court denied the plaintiff's motion, reaffirming the dismissal of each of the plaintiff's claims. The court explained that the plaintiff's § 502 claim accrued the date of the clear repudiation of benefits, not, as the plaintiff argued in her motion, the date the defendants denied the plaintiff's claim for benefits. Mem. Op. (Nov. 15, 2006) at 6. The court then rejected the plaintiff's argument that her waiver of benefits could not have been clear without the knowledge that part-time employees were entitled to benefits. *Id.* at 7. In rejecting this argument, the court reasoned that the repudiation of benefits is the communication at issue, not communications regarding other employees' benefits. *Id.* The court was similarly unmoved by the plaintiff's contention that the statute of limitations should be tolled because of the PhRMA defendants' alleged fraudulent concealment of part-time employees' eligibility for benefits. *Id.* at 8. First, the

---

[4]  These defendants include PhRMA, PhRMA Retirement Plan, PhRMA Savings Plan and PhRMA Committee. PhRMA Defs.' Mot. for Summ. J.

plaintiff was not a part-time employee. *Id.* Second, the PhRMA defendants' employee handbook, which the plaintiff was allegedly responsible for drafting, states that the 401(k) Deferred Savings Plan is offered to "all employees who are regularly scheduled to work at least 20 hours per week." *Id.* Third, in 1991, the plaintiff was aware of the "smoking gun" letter, which indicated to her that part-time workers were eligible for benefits. *Id.* at 11. Therefore, even if this knowledge is relevant to the plaintiff's claims, she would have been aware that part-time employees were entitled to at least some retirement benefits far earlier than the limitations period allows. *Id.* at 8. Finally, the court reiterated its conclusion that the plaintiff had actual knowledge of the PhRMA defendants' alleged breach of fiduciary duties[5] more than three years before she filed her suit, which bars her § 404 claim.[6] *Id.* at 11-12.

The individual defendants and the New York Life defendants have since filed motions to dismiss and for summary judgment respectively. The plaintiff's complaint alleges the same claims against these defendants as she alleged against the PhRMA defendants. Fully briefed, the court now turns to the defendants' motions.

### III.  ANALYSIS

#### A.  The Plaintiff Failed to Properly Serve 10 Individual Defendants

#### 1.  Legal Standard for a Rule 12(b)(5) Motion to Dismiss

A party can move the court to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(5) for insufficient service of process. "[T]he party on whose behalf service is made has the

---

[5]  For purposes of the statute of limitation, it does not matter whether the alleged breach was for failing to notify the plaintiff that part-time employees were eligible for benefits or for failing to properly classify her as a part-time employee: the plaintiff had actual knowledge of both more than three years before she filed her complaint.

[6]  The plaintiff did not challenge the court's reasoning in dismissing her § 510 and D.C. common law claims.

burden of establishing its validity when challenged; to do so, he must demonstrate that the procedure employed satisfied the requirements of the relevant portions of Rule 4 and any other applicable provision of law." *Light v. Wolf*, 816 F.2d 746, 751 (D.C. Cir. 1987) (internal quotations omitted); *Hilska v. Jones*, 217 F.R.D. 16, 20 (D.D.C. 2003). Unless the procedural requirements of effective service of process are satisfied, a court lacks power to assert personal jurisdiction over a defendant. *Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 514 (D.C. Cir. 2002) (citing *Omni Capital Int'l, Ltd. v. Rudolph Wolff & Co.*, 484 U.S. 97, 104 (1987)).

### 2. The Court Allows Additional Time for the Plaintiff to Properly Serve the Individual Defendants

The plaintiff's amended complaint[7] identifies 57 distinct[8] individual defendants, consisting of past and present members of the board of directors of PhRMA and members of the retirement committee of PhRMA. Am. Compl. The individual defendants contend that 10 of the 57 individual defendants did not waive service and were not properly served.[9] Ind. Defs.' Mot. at 8. The plaintiff protests that she properly served 5 of the 10 individual defendants in question. Pl.'s Opp'n to Ind. Defs.' Mot. ("Pl.'s Ind. Opp'n") at 1. Specifically, she contends that she served the individual defendants "by certified mail, return receipt requested, on January 19, 2006, February 10, 2006, and February 11, 2006." *Id.* And she asserts that this is proper

---

[7] The court granted the plaintiff's motion to amend her complaint on August 25, 2005. Mem. Order (Aug. 25, 2005). The amended complaint approved by the court appeared as Exhibit 2 to the plaintiff's motion to amend her complaint. Pl.'s Mot. to Am. Compl., Ex. 2. However, the plaintiff further amended the complaint before filing it as her "First Amended Complaint" on October 14, 2005. Because the court did not approve this amended complaint, the court strikes the first amended complaint filed October 14, 2005 and the answer responding to it filed October 19, 2005. LCvR 7(i). The controlling amended complaint in this case is the complaint attached as Exhibit 2 to the plaintiff's motion to amend her complaint.

[8] The plaintiff names Alan Holmer twice in the amended complaint.

[9] They are Richard DeSchutter, James Dougherty, Kanichi Nakamura, Ernesto Bertarelli, Colin Foster, David Ebsworth, Saburo Hamanaka, Carl-Gustaf Johansson, David Brennan and Lutz Lingau.

6

because the District of Columbia "permits service of process outside the District by several means, including by mail addressed to the person to be served and requiring a signed receipt." *Id.* at 2. The individual defendants counter with three arguments. First, they assert that waiver was insufficient because the packets "disavow *any* attempt to serve process." Ind. Defs.' Reply at 3. Second, they note that the packets are insufficient because they attach an incorrect version of her amended complaint. *Id.* And third, they maintain that the plaintiff sent defendants Nakamura's and Johansson's packets to their former employers, who do not have authority to receive service of process. *Id.*

Regardless of whether the individual defendants' arguments have merit, an examination of the plaintiff's returns of service reveals that the plaintiff has not properly effected service of process. The returns, all filed on October 9, 2006, state that the plaintiff herself sent the summons and complaint by certified mail. *See* Returns of Serv. & Aff. (Oct. 9, 2006). This is in direct contravention of Federal Rule of Civil Procedure 4(c)(2), which states: "Any person who is at least 18 years old *and not a party* may serve a summons and complaint." FED. R. CIV. P. 4(c)(2) (emphasis added); *Smith v. United States*, 475 F. Supp. 2d 1, 9 (D.D.C. 2006) (holding that service was defective because the plaintiff himself sent the summons and complaint by certified mail). Because the plaintiff is proceeding *pro se*, and because the court has not previously warned the plaintiff of the consequences of failing to properly effect service, the court grants the plaintiff 20 days from the date of the issuance of this Memorandum Opinion to effect service. *Moore v. Agency for Int'l Dev.*, 994 F.2d 874, 876 (D.C. Cir. 1993) (noting that "[p]ro se litigants are allowed more latitude than litigants represented by counsel to correct defects in service of process and pleadings"). If proper service for the remaining 10 individual defendants

has not been completed after 20 days, the court will entertain a motion to dismiss the complaint against these defendants.

### B.  Dismissal and Summary Judgment

### 1.  Legal Standard for Rule 12(b)(6) and Statute of Limitations

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  The complaint need only set forth a short and plain statement of the claim, giving the defendant fair notice of the claim and the grounds upon which it rests.  *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir. 2003) (citing FED. R. CIV. P. 8(a)(2) and *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  "Such simplified notice pleading is made possible by the liberal opportunity for discovery and the other pre-trial procedures established by the Rules to disclose more precisely the basis of both claim and defense to define more narrowly the disputed facts and issues."  *Conley*, 355 U.S. at 47-48 (internal quotation marks omitted).  It is not necessary for the plaintiff to plead all elements of his prima facie case in the complaint, *Swierkiewicz v. Sonoma N.A.*, 534 U.S. 506, 511-14 (2002), or "plead law or match facts to every element of a legal theory," *Krieger v. Fadely*, 211 F.3d 134, 136 (D.C. Cir. 2000) (internal quotation marks and citation omitted).

Yet, the plaintiff must allege "any set of facts consistent with the allegations."  *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (2007) (abrogating the oft-quoted language from *Conley*, 355 U.S. at 45-56, instructing courts not to dismiss for failure to state a claim unless it appears beyond doubt that "no set of facts in support of his claim [] would entitle him to relief"); *Aktieselskabet AF 21. November 2001 v. Fame Jeans, Inc.*, 525 F.3d 8, 16 n.4 (D.C. Cir. 2008) (affirming that "a complaint needs *some* information about the circumstances giving rise to the claims").  While these facts must "possess enough heft to 'sho[w] that the pleader is entitled to

relief,'" a complaint "does not need detailed factual allegations." *Twombly*, 127 S. Ct. at 1964, 1966. In resolving a Rule 12(b)(6) motion, the court must treat the complaint's factual allegations – including mixed questions of law and fact – as true and draw all reasonable inferences therefrom in the plaintiff's favor. *Macharia v. United States*, 334 F.3d 61, 64, 67 (D.C. Cir. 2003); *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003); *Browning*, 292 F.3d at 242. While many well-pleaded complaints are conclusory, the court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations. *Warren v. District of Columbia*, 353 F.3d 36, 40 (D.C. Cir. 2004); *Browning*, 292 F.3d at 242.

In addition, a defendant may raise the affirmative defense of statute of limitations via a Rule 12(b)(6) motion when the facts that give rise to the defense are clear from the face of the complaint. *Smith-Haynie v. District of Columbia*, 155 F.3d 575, 578 (D.C. Cir. 1998). Because statute of limitations issues often depend on contested questions of fact, however, the court should hesitate to dismiss a complaint on statute of limitations grounds based solely on the face of the complaint. *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996). Rather, the court should grant a motion to dismiss only if the complaint on its face is conclusively time barred. *Id.*; *Doe v. Dep't of Justice*, 753 F.2d 1092, 1115 (D.C. Cir. 1985). If "no reasonable person could disagree on the date" on which the cause of action accrued, the court may dismiss a claim on statute of limitations grounds. *Smith v. Brown & Williamson Tobacco Corp.*, 3 F. Supp. 2d 1473, 1475 (D.D.C. 1998) (citing *Kuwait Airways Corp. v. Am. Sec. Bank, N.A.*, 890 F.2d 456, 463 n.11 (D.C. Cir. 1989)).

### 2.  Legal Standard for a Motion for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  To determine which facts are "material," a court must look to the substantive law on which each claim rests.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action.  *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true.  *Anderson*, 477 U.S. at 255.  A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position.  *Id.* at 252.  To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.  By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment.  *Id.*

The nonmoving party may defeat summary judgment through factual representations made in a sworn affidavit if he "support[s] his allegations . . . with facts in the record," *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999) (quoting *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993)), or provides "direct testimonial evidence," *Arrington v. United States*, 473 F.3d 329, 338

(D.C. Cir. 2006).  Indeed, for the court to accept anything less "would defeat the central purpose of the summary judgment device, which is to weed out those cases insufficiently meritorious to warrant the expense of a jury trial." *Greene*, 164 F.3d at 675.

### 3.  The Plaintiff's § 404 Claim

The New York Life and individual defendants first assert that the court should dismiss the plaintiff's claims because the factual predicate for her claims – her alleged erroneous classification as an independent contractor – is the same for her claims brought against the PhRMA defendants which the court already dismissed as time barred.  *See generally* NYL Defs.' Mot.; Ind. Defs.' Mot.  These defendants insist, therefore, that the law of the case doctrine or collateral estoppel bars the plaintiff's claims.  NYL Defs.' Mot. at 5; Ind. Defs.' Mot. at 306.  The plaintiff denies that the factual predicate for her claims against these defendants is the same as for her claims against the PhRMA defendants.  Pl.'s Opp'n to NYL Defs.' Mot. ("Pl.'s NYL Opp'n") at 6; Pl.'s Am. Opp'n to Ind. Defs.' Mot. ("Pl.'s Ind. Am. Opp'n") at 3-4.  Retooling her claims in light of the court's previous rulings, the plaintiff now stresses that the defendants breached their fiduciary duty to provide the requisite plan information.  Pl.'s NYL Opp'n at 4; Pl.'s Ind. Am. Opp'n at 3-4.

For clarity, claims brought against the New York Life defendants or the individual defendants based on the alleged misclassification of the plaintiff as an independent contractor are time barred, and ERISA preempts her common law claims.  The court thoroughly vetted these issues in memorandum opinions issued on July 17 and November 15, 2006, summarized *supra*.  The reasoning therein applies equally to the claims against the remaining defendants to the extent that they rely on the misclassification of the plaintiff as an independent contractor or the

withholding of information pertaining to part-time employees' eligibility status. *See Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735, 739 (D.C. Cir. 1995) (explaining that "a court involved in later phases of a lawsuit should not re-open questions decided (i.e., established as the law of the case) by that court or a higher one in earlier phases"). The plaintiff may not circumvent this court's decisions and continue to seek recovery for alleged damages associated with this purported misclassification by simply restyling her claims. The court discusses below the viability of her retooled claims, which allege that the remaining defendants have simply defaulted in their obligations to provide information to her as a former employee and plan participant. Pl.'s NYL Opp'n at 5-6; Pl.'s Ind. Am. Opp'n at 3-4. Although the plaintiff raised this argument against the PhRMA defendants, she did so first in her reply to alter or amend judgment. Mem. Op. (Nov. 15, 2006) at 10 n.9. The court, therefore, treated the point as conceded. *Id.* Against the remaining defendants, however, the argument is properly before the court.

### a. The Record is Insufficient to Grant the New York Life Defendants' Motion for Summary Judgment

The plaintiff explains that the New York Life defendants made an "erroneous participation determination" and failed to provide her information – summary annual reports, notifications of material changes, complete summary of plan every five years if changes have been made and every ten years if no changes have been made – as required by their service agreement with PhRMA and by statute and regulation. ERISA §§ 101-105; 29 C.F.R. § 2520.104(b)(1); Pl.'s NYL Opp'n at 6-7. The New York Life defendants concede that they were responsible for mailing certain notices, but dispute their responsibility for summary plan

descriptions[10] or other ERISA-required communications.  NYL Defs.' Reply at 2.  In any event, they insist that the plaintiff's claim fails because she presents no evidence that the New York Life defendants provided such services before 2005; whereas the New York Life defendants provide a declaration by Joseph Henehan, Managing Director of defendant New York Life Investment Management, LLC, to the effect that no such agreement was reached before 2005.  NYL Defs.' Reply at 4-6 & Ex. 2 ¶¶ 3-4.  In her sur-reply, the plaintiff points to alleged inconsistencies in statements made by Henehan, referring to the Service Agreement as "the most recent version," and then stating that it is "the only service agreement."  Pl.'s Sur-reply to NYL Defs.' Mot. ("Pl.'s NYL Sur-reply") at 2.  Such superficial reasoning alone normally would not justify proceeding to discovery, *see Scott-Blanton v. Universal City Studios Prods. LLLP*, 246 F.R.D. 344, 348 (D.D.C. 2007) (denying discovery because allegations did not "rise above mere speculation"), but the plaintiff also notes that the date NYLIM began service to PhRMA in 2005 is unclear; the scope of the Service Agreement is ambiguous; and the nature of the corporate relationship between NYLIC and NYLIM remains undisclosed.  Pl.'s NYL Sur-reply at 2-6.  All these issues should be brought into focus by discovery's end.  Accordingly, because the plaintiff has not had the full benefit of discovery, the court denies the motion for summary judgment at this stage.  *Khan v. Parsons Global Servs., Ltd.*, 428 F.3d 1079, 1087 (D.C. Cir. 2005) (noting that "[t]he court has long recognized that a party opposing summary judgment needs a 'reasonable opportunity' to complete discovery before responding to a summary judgment

---

[10] The Service Agreement appears ambiguous on this point. Exhibit A to the Service Agreement indicates that New York Life provides "Normal Retirement Notification" forms and Summary Plan Description forms.  NYL Defs.' Mot., Ex. 1, Attach. A ("Service Agreement").  Yet the Service Agreement later states that the "Plan Sponsor shall be responsible for the distribution of the summary plan descriptions (and summary of material modifications) to participants."  *Id.*

motion and that 'insufficient time or opportunity to engage in discovery' is cause to defer decision on the motion" (quoting *Martin v. Malhoyt*, 830 F.2d 237, 256 (D.C. Cir. 1987))).

### b. The Court Grants in Part the Individual Defendants' Motion to Dismiss

The plaintiff also contends that the individual defendants shirked their duty to "provide information about the plan, including summary annual reports, summary plan descriptions and summaries of material modifications to the plan." Pl.'s Ind. Am. Opp'n at 3, 7 (citing 29 U.S.C. § 1024(b)). The individual defendants assert that the court should apply the law of the case doctrine against this claim, even though it was decided on a procedural ground when the same claim was brought against the PhRMA defendants. Ind. Defs.' Reply at 3. That proposal, however, would lead to an inappropriate application of the law of the case doctrine, which "presumes a hearing on the merits." *United States v. Hatter*, 532 U.S. 557, 566 (2001); *see Crocker*, 49 F.3d at 739-40 (recognizing that "[l]aw of the case is a prudential rule rather than a jurisdictional one"). Thus, the court declines the individual defendants' invitation.

The individual defendants next argue that the plaintiff's claims are time barred. Ind. Defs.' Reply at 4-6. Specifically, they contend that their alleged failure to send required ERISA plan documents since 1988 was "complete upon [the] plaintiff's 1988 reclassification," and in any event, the plaintiff had actual knowledge in 1988 that she was no longer receiving this information. Ind. Defs.' Reply at 5. Although their argument misses the bull's-eye, it at least hits the target. Each failure to disclose constitutes a separate breach of the individual defendants'

fiduciary duty,[11] so the defendants' arguments hold true for alleged violations occurring before November 15, 1998.[12] But because the parties present little argument, even less evidence and almost no case law regarding the documents that the plaintiff contends she did not receive in more recent years, the court stays its hand until the record is more fully developed and the parties' legal arguments mature.

### 4. The Court Grants in Part and Denies in Part the Defendants' Motion to Dismiss the Plaintiff's § 502 and § 510 Claims

First, the plaintiff can only bring a claim under § 502(a)(1)(B) against the "plan," and the New York Life defendants and the individual defendants do not qualify.[13] ERISA § 502(a)(1)(B) and (d); *Gelardi v. Pertec Computer Corp.*, 761 F.2d 1323, 1324 (9th Cir. 1985) (holding that § 502(a)(1)(B) allows for suit "only against the Plan as an entity"). Furthermore, even if the plaintiff could bring a claim under § 502(a)(1)(B) against the plan administrator (in addition to the plan itself), the court would still dismiss the claim because PhRMA was the plan administrator pursuant to the Service Agreement. Service Agreement at 1, 3; *see Davis v. Liberty Mutual Ins. Co.*, 871 F.2d 1134, 1138 (D.C. Cir. 1989) (declining to recognize de facto plan administrators). But, the New York Life defendants and individual defendants do not

---

[11]   *See Lee v. Burkhart*, 991 F.2d 1004, 1011 (2d Cir. 1992) (noting that "failure to provide participants with a Plan description violated a statutory obligation that can be fairly characterized as a fiduciary duty"); *see also Finocchiaro v. Squire Corrugated Container Corp.*, 2007 WL 608462, at *6-7 (D.N.J. Feb. 23, 2007) (rejecting alleged disclosure violations arising outside the six year limitations period); *Jackson v. E.J. Brach Corp.*, 937 F. Supp. 735, 739-41 (N.D. Ill. 1996) (recognizing a cause of action under ERISA § 502(c) for "both refusals to provide requested information, and *failures* to do so").

[12]   The plaintiff filed her complaint on November 15, 2004. *See generally* Compl. Assuming, *arguendo*, that the statute of limitations is six years, *see* 29 U.S.C. § 1113 (setting the statute of limitations at either 3 or 6 years depending on whether the plaintiff had "actual knowledge of the breach or violation"), the plaintiff's claims for breaches of fiduciary duties arising before November 15, 1998 are time barred.

[13]   ERISA defines "plan" as a welfare or a pension plan or both. ERISA § 3(3).

15

address the plaintiff's additional claims under § 502(a)(2) and (a)(3), Pl.'s NYL Opp'n at 9, so for now, these claims remain.[14]

Second, for the plaintiff's claim under § 510 for interference of protected rights to survive, "the [c]ourt must determine if [the] plaintiff[] ha[s] established a *prima facie* case: (1) prohibited employer conduct; (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled."  *May v. Shuttle, Inc.*, 129 F.3d 165, 169 (D.C. Cir. 1997) (citing *Berger v. Edgewater Steel Co.*, 911 F.2d 911, 922 (3d Cir. 1990).[15] Although it is too early in the proceedings to determine whether the remaining defendants engaged in prohibited conduct, *see supra* part III.B.3, and it is far from clear whether they may have done so for the purpose of interfering, the court, nevertheless, dismisses this claim for failing to meet the third prong of the prima facie case.

The plaintiff relies on the same tired arguments in her attempt to reawaken her § 510 claim.  Pl.'s NYL Opp'n at 9-10; Pl.'s Ind. Opp'n at 13-14.  To wit, she alleges that the New York Life defendants' and the individual defendants' failure to provide plan information, which would have put her on notice of PhRMA decision to make part-time employees eligible for retirement benefits, resulted in her being unable to challenge her status as an independent contractor.  *Id.*  This, she insists, qualifies as an interference with her "protected rights under § 510," Pl.'s NYL Opp'n at 10-11, and with her "right to bring a civil action under ERISA § 502," Pl.'s Ind. Opp'n at 14.  The court already explained in its previous memorandum opinions that

---

[14]   *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 (1985) (holding that § 502(a)(2) "protect[s] the entire plan, rather than [] the rights of an individual beneficiary").

[15]   After the plaintiff establishes a prima facie case, the burden shifts to the defendant to assert a legitimate, nondiscriminatory reason.  *May v. Shuttle, Inc.*, 129 F.3d 165, 169 (D.C. Cir. 1997). Once that burden is met, the plaintiff must prove that the proffered reason is pretextual.  *Id.* at 169-70.  The New York Life defendants do not proffer a legitimate, nondiscriminatory reason, so the court's focus rests on the plaintiff's ability to establish a prima facie case.

all of the plaintiff's ERISA claims regarding her alleged misclassification as an independent contractor are time barred and that PhRMA clearly and unequivocally repudiated her eligibility in the pension plan in 1988.  *See generally* Mem. Op. (July 16, 2006); Mem. Op. (Nov. 15, 2006).  Moreover, the court concluded that the plaintiff was aware that part-time employees were eligible for pension benefits by 1991.  Mem. Op. (Nov. 15, 2006) at 11.  Accordingly, the plaintiff can allege no right under § 510 to which she may become entitled, and the court dismisses this claim.

## IV.  CONCLUSION

For the foregoing reasons the court grants in part and denies in part the individual defendants' motion to dismiss and grants in part and denies in part the New York Life defendants' motion for summary judgment.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 7th day of August, 2008.

RICARDO M. URBINA  
United States District Judge