## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

BARBARA J. WALKER,

          Plaintiff,

    v.

PHARMACEUTICAL RESEARCH AND
MANUFACTURERS OF AMERICA, et al.,

        Defendants.

Civil Action No. 1:04CV01991 (RMU/JMF)
Judge Ricardo M. Urbina
Magistrate Judge John M. Facciola

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT NEW YORK LIFE INVESTMENT MANAGEMENT, LLC'S MOTION FOR SUMMARY JUDGMENT

Christopher A. Weals, DC Bar No. 414754
Simon J. Torres, DC Bar No. 973898
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC  20004
Telephone:     202.739.3000
Facsimile:     202.739.3001

*Attorneys for Defendant New York Life
Investment Management, LLC*

DB1/63397405.1

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................ 1

STATEMENT OF UNDISPUTED MATERIAL FACTS ................................................. 2

LEGAL STANDARD FOR SUMMARY JUDGMENT .................................................... 6

ARGUMENT ..................................................................................................... 8

I.     NYLIM Cannot Be Liable For Statutory Penalties Under ERISA § 502(c)
       Because Plaintiff Never Made A Request For Documents To NYLIM and
       Because NYLIM Was Not The "Plan Administrator".......................................... 8

       A.     Plaintiff Did Not Make A Request For Documents To NYLIM ............... 8

       B.     NYLIM Is Not the Plan Administrator And Therefore
              Has No Responsibility Under Section 104(b)(4) to Furnish
              Documents In Response To Written Requests........................................... 9

II.    NYLIM Did Not Violate Any Other Disclosure Obligations of ERISA .............. 11

       A.     SPD ................................................................................................ 12

       B.     SMM ............................................................................................... 13

       C.     SAR................................................................................................. 14

       D.     Benefit Statement................................................................................ 16

CONCLUSION................................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

### CASES

*American Medical Ass'n v. United Healthcare Corp.*, Nos. 00-2800/7246,
   2001 U.S. Dist. LEXIS 10818 (S.D.N.Y. July 31, 2001) ...............................................9

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ...................................................6, 7

*Beckett v. Air Line Pilots Ass'n*, 995 F.2d 280 (D.C. Cir. 1993) ........................................6

*Boone v. Leavenworth Anesthesia, Inc.*, No. 90-2156-V,
   1992 U.S. Dist. LEXIS 13895 (D. Kan. Aug. 25, 1992) ...........................................10

*Brucks v. Coca-Cola Co.*, 391 F. Supp. 2d 1193 (N.D. Ga. 2005) .....................................9

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ...................................................................6

*Davis v. Liberty Mutual Ins. Co.*, 871 F.2d 1134 (D.C. Cir. 1989) ........................9, 10, 11

*Greene v. Dalton*, 164 F.3d 671 (D.C. Cir 1999) ...............................................................7

*Heller v. Fortis Benefits Ins. Co.*, 142 F.3d 487 (D.C. Cir. 1998).......................................7

*Hussey v. Chase Manhattan Bank*, 418 F. Supp. 2d 702 (E.D. Pa. 2005) .......................16

*Jones v. UOP*, 16 F.3d 141 (7th Cir. 1994) .....................................................................11

*Kifafi v. Hilton Hotels Ret. Plan*, No. 98-1517-CKK, 2009 WL 1353541
   (D.D.C. May 15, 2009) ....................................................................................6, 7, 12

*McKinsey v. Sentry Ins.*, 986 F.2d 401 (10th Cir. 1993)....................................................11

*Meyer v. Phillip Morris., Inc.*, 575 F. Supp. 1232 (E.D. Mo. 1983) ...........................11, 12

*Moran v. Aetna Life Ins. Co.*, 872 F.2d 296 (9th Cir. 1989)..............................................11

*Player v. Northrop Grumman Corp.*, No. 2:05CV753DAK,
   2006 U.S. Dist. LEXIS 62521 (D. Utah Aug. 31, 2006) ............................................9

*Schikore v. Bankamerica Supplemental Ret. Plan*, 269 F.3d 956 (9th Cir. 2001).............16

*Williams v. Callaghan*, 938 F. Supp. 46 (D.D.C. 1996) .....................................................8

## FEDERAL STATUTES, REGULATIONS, AND RULES

Employee Retirement Income Security Act of 1974 ("ERISA"),
   29 U.S.C. § 1001 et seq......................................................................................1

   ERISA § 3(2), 29 U.S.C. § 1002(2) ........................................................................2

   ERISA § 3(16)(A), 29 U.S.C. § 3(16)(A) ...........................................................9, 11

   ERISA § 104(b), 29 U.S.C. § 1024(b) .................................................................9, 11

   ERISA § 104(b)(1), 29 U.S.C. § 1024(b)(1)........................................................12, 13

   ERISA § 104(b)(3), 29 U.S.C. § 1024(b)(3)........................................................14, 15

   ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4).....................................................8, 9, 11

   ERISA § 105(a)(1)(B), 29 U.S.C. § 1025(a)(1)(B) .................................................16

   ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) ..................................................1

   ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) ..........................................................12

   ERISA § 502(c), 29 U.S.C. § 1132(c) ............................................................ *passim*

   ERISA § 502(c)(1), 29 U.S.C. § 1132(c)(1) ...........................................................9

   ERISA § 510, 29 U.S.C. § 1140 ...............................................................................1

29 C.F.R. § 2520.104b-3 .............................................................................................14

29 C.F.R. § 2520.104b-4(c) .........................................................................................14

29 C.F.R. § 2575.502c-1 ...............................................................................................8

Fed. R. Civ. P. 56(c) ......................................................................................................6

Fed. R. Civ. P. 56(e) ......................................................................................................7

Defendant New York Life Investment Management, LLC ("NYLIM") respectfully moves for summary judgment against Plaintiff Barbara Walker ("Plaintiff") as to her remaining claims alleging failure to provide documents related to the Pharmaceutical Research and Manufacturers of America Retirement Plan (the "Plan").[1]

## INTRODUCTION

This long-running lawsuit (now in its fifth year) began as a dispute over retirement benefits to which Plaintiff claimed she was entitled as a result of being classified as an independent contractor by the Pharmaceutical Research and Manufacturing of America ("PhRMA"). After this Court dismissed Plaintiff's benefits claims as time-barred, Plaintiff continued to pursue allegations that she did not receive certain documents related to the Plan and is therefore entitled to statutory penalties under the Employee Retirement Income Security Act of 1974 ("ERISA"). Discovery is now complete and the material facts needed to decide the case are undisputed.

Plaintiff stopped working for PhRMA in any capacity in June 2002. In August 2002, she sent a letter to PhRMA requesting Plan documents and received a response within 30 days. Plaintiff again requested documents from PhRMA in 2003, and PhRMA timely responded. NYLIM was not involved with either request or response, as it did not even begin providing services to PhRMA until 2005. From the onset of NYLIM's involvement with the Plan in 2005 until present, Plaintiff admittedly has *never* made a written request for documents to NYLIM. Therefore, she cannot state a claim for penalties against NYLIM under ERISA § 502(c) because that section explicitly requires a

---

[1] Before discovery commenced, NYLIM moved for summary judgment (Dkt. 60). In its August 7, 2008 Memorandum Opinion (Dkt. 82), the Court dismissed Plaintiff's ERISA breach of fiduciary duty claim, her claim for benefits under ERISA § 502(a)(1)(B), and her interference with benefits claim under ERISA § 510. The only extant claim is based on Plaintiff's alleged failure to receive documents.

"written request," which Plaintiff never made to NYLIM, and because NYLIM was not the "Plan administrator" responsible for responding to such requests.

NYLIM performs actuarial and administrative services for PhRMA and the Plan. Plaintiff's only remotely viable claim against NYLIM is that it breached a fiduciary duty by not providing Plaintiff with certain documents that should be "automatically" furnished to employee benefit plan participants under ERISA.  This claim fails as a matter of law, however, for multiple reasons:  (1) ERISA does not provide a remedy for failure to furnish documents absent a written request; (2) NYLIM was not the Plan administrator and therefore had no statutory obligation to furnish documents; (3) to the extent any responsibility existed to provide these documents, it fell on the PhRMA Retirement Committee members (whose own motion for summary judgment will show they complied with their obligations); and (4) Plaintiff ultimately suffered no harm or prejudice – she received Plan documents from PhRMA and other sources at various times, and nothing in the documents would have affected her benefits one iota.

As the undisputed material facts and governing law clearly show, the Court should grant summary judgment on Plaintiff's remaining claims and end this protracted and meritless litigation.

## STATEMENT OF UNDISPUTED MATERIAL FACTS[2]

1.      The Plan is an employee pension plan as defined by ERISA § 3(2), 29 U.S.C. § 1002(2), and is sponsored by PhRMA.  It is a defined benefit plan that provides a fixed benefit upon retirement based on years of service and compensation.  (Dkt. 86, Amended Complaint ("Am. Compl.") ¶ 10).

---

[2] Submitted in accordance with Local Rule 7(h)(1).

2.      PhRMA retained NYLIM to provide actuarial and administrative services in connection with the Plan.  NYLIM's services are described in the DB Complete Service Agreement ("Agreement") signed by NYLIM on December 14, 2005 and by PhRMA on January 3, 2006.  (Dkt. 60-3, Ex. 1).

3.      NYLIM began providing retirement plan services to PhRMA on or about January 1, 2005, when NYLIM took over responsibility for issuing benefit checks.  (Ex. 1 [Abend Dep. at 17:1-5]).[3]

4.      The Plan administrator of the Plan is the PhRMA Retirement Committee. (Am. Compl. ¶ 12; Dkt. 89 at ¶ 12).

5.      NYLIM is not the Plan administrator.  (Dkt. 60-3, Ex. 1 at 1, 3 ["Plan Administrator"], 4 ["Status of NYLIM"]; Ex. 2 [Abend Dep. at 33:5-12]; Ex. 3 [Henehan Dep. at 33:13-34:22]).

6.      From January 1, 2005 to the present, Plaintiff has not made a written request for Plan documents to NYLIM except in connection with this litigation.  (Ex. 4 [Pl.'s Response to NYLIM's Request for Admission #2 and Pl.'s Response to NYLIM's Request for Production #5(E)]).

7.      PhRMA is responsible for distributing the Summary Plan Description ("SPD") to Plan participants and beneficiaries.  (Dkt. 60-3, Ex. 1 at 14; Ex. 5 [Abend Dep. at 20:24-21:23, 87:2-5]; Ex. 6 [Morales 6/8/09 Dep. at 52-53]).

8.      Plan participants may request copies of Plan-related forms and documents, including the SPD, through the "Benefits Complete" website or by calling an 800 number.  NYLIM responds to such requests by mailing the appropriate form or document

---

[3] Documents and deposition testimony cited herein are attached as exhibits to this memorandum.

to the participant.  Page 13 of the Agreement – entitled "Plan Materials Ordering" – refers to this process of furnishing materials to Plan participants in response to requests. (Dkt. 60-3, Ex. 1 at 13; Ex. 7 [Abend Dep. at 23:4-18]).

9.      Plaintiff received an SPD for the Plan on or about September 26, 2002. (Ex. 8 [Walker 4/8/2009 Dep. at 31:15-32:10])

10.      In the course of this litigation, Plaintiff produced a Plan SPD dated October 2003.  (Ex. 9 [PhRMA Retirement Plan SPD, October 2003]).

11.      Before and during this litigation, Plaintiff also received documents related to her dispute with PhRMA over her classification as an independent contractor from current and former PhRMA employees.  (Ex. 10 [Walker 5/28/09 Dep. at 53:12-15, 55:3-8, 110:13-16]).

12.      Since NYLIM began providing services to PhRMA, no Summary of Material Modifications ("SMM") has been prepared for the Plan.  (Ex. 11 [Abend Dep. at 18:4-6]; Ex. 12 [Morales 7/6/09 Dep. at 47:1-4]).

13.      One of the services NYLIM provided under the Agreement was to prepare the Summary Annual Report ("SAR") annually for the Plan.

14.      The SAR was a one-page document that identified, among other things, the number of Plan participants, the value of Plan assets, and how to request additional information.  (*See, e.g.*, Dkt. 62, Ex. 2 [2004 SAR for the Plan]).

15.      Each year, NYLIM sent the SAR to PhRMA along with instructions regarding how to distribute it.  (Ex. 13 [Abend Dep. at 46:2-8, 49:19-50:20]; Ex. 14 [Morales 7/6/09 Dep. at 49:12-20]; Dkt. 60-3, Ex. 1 at 22).  PhRMA distributed the SAR to active employees who were enrolled in the Plan.  (Ex. 15 [Morales 7/6/09 Dep. at

50:5-6]).  NYLIM believed that PhRMA would also distribute the SAR to retirees and "terminated vested" participants, unless PhRMA specifically asked NYLIM to do so. (Ex. 16 [Abend Dep. at 46:2-19, 80:14-81:1, 87:13-88:12]).[4]

16.     In 2005, PhRMA asked NYLIM to distribute the 2004 SAR to retirees and terminated vested participants.  (Ex. 17 [Abend Dep. at 24:16-25:4]).  This was the only time PhRMA asked NYLIM to distribute the SAR on its behalf.  (Ex. 18 [Abend Dep. at 25:5-7, 46:9-19, 88:7-12]).

17.     Pursuant to PhRMA's request, NYLIM mailed the 2004 SAR to Plaintiff's address in December 2005.  (Dkt. 62, Ex. 2; Ex. 19 [Abend Dep. at 27:1-15]).  Plaintiff received the 2004 SAR on or about December 9, 2005.  (See Dkt. 62, Ex. 2; Ex. 20 [Walker 4/8/09 Dep. at 49]).

18.     Plaintiff's monthly accrued benefit under the Plan, payable at normal retirement age, is $1,384.80 per month.  The amount of Plaintiff's benefit has not changed since she left PhRMA's employ in 1988.  (Ex. 21 [Walker 4/8/09 Dep. at 51:16-57:12]; Ex. 22 [Benefit Statement for B. Walker as of 12/31/08]).

19.     NYLIM provides Plan participants with annual benefit statements. (Ex. 23 [Abend Dep. at 27:16-28:3]).

20.     According to NYLIM's records, it mailed a benefit statement to Plaintiff's address for the years ending December 31, 2005, December 31, 2006, December 31, 2007, and December 31, 2008.  The statements were not returned to NYLIM.  (Ex. 24 [Abend Dep. at 55:11-56:2]).

---

[4] Retirees are participants (or their beneficiaries) who are receiving benefits under the Plan.  Terminated vested participants are individuals who have left PhRMA's employ but have a vested right to a benefit under the Plan when they reach retirement age.

21.     In discovery, Plaintiff produced an annual benefit statement for the year ending December 31, 2008.  (Ex. 22).

22.     Plaintiff has not communicated with NYLIM about the Plan or her benefits thereunder except in connection with this litigation.  (Ex. 4 [Pl.'s Response to NYLIM's Request for Production No. 5(D)]).

## LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact" and when "viewing the evidence in the light most favorable to the nonmoving party, the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Beckett v. Air Line Pilots Ass'n*, 995 F.2d 280, 284 (D.C. Cir. 1993); *Kifafi v. Hilton Hotels Ret. Plan*, No. 98-1517-CKK, 2009 WL 1353541, *12 (D.D.C. May 15, 2009).  The moving party must identify the portions of the record – including "the pleadings, the depositions, answers to interrogatories, and admissions on file" – which demonstrate an absence of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  In order to determine which facts are "material," a court must look to the substantive law on which each claim rests.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In response, a party opposing a motion for summary judgment is required to "go beyond the pleadings" and identify specific facts which show that there is a genuine issue for trial.  *Id.* at 324; *Kifafi*, 2009 WL 1353541 at *12.  The non-moving party "may not rest on the mere allegations or denials of the adverse party's pleading, but [the opposing party's] response, by affidavits or as otherwise provided in this rule, must set forth

specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Heller v. Fortis Benefits Ins. Co.*, 142 F.3d 487, 492 (D.C. Cir. 1998). Although facts must be viewed in the light most favorable to the non-moving party, the mere existence of a factual dispute does not bar summary judgment for Defendants. *Anderson*, 477 U.S. at 248-50 ("[i]f the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted"). Rather, a sufficient issue of fact must be *genuine* and *material* – "[t]o be material, the factual assertion must be capable of affecting the substantive outcome of the litigation; to be genuine, the issue must be supported by sufficient admissible evidence that a reasonable trier-of-fact could find for the nonmoving party." *Kifafi*, 2009 WL 1353541 at *13 (citing *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987)).

Moreover, "mere allegations and denials in the adverse party's pleadings are insufficient to defeat an otherwise proper motion for summary judgment." *Williams v. Callaghan*, 938 F.Supp. 46, 49 (D.D.C. 1996); *Greene v. Dalton,* 164 F. 3d 671, 675 (D.C. Cir 1999) (proof beyond allegations, conclusory statements or "a mere scintilla of evidence" in support of the non-moving party's position is required). Summary judgment should be granted to the moving party if the non-moving party cannot present specific facts that would enable a reasonable fact-finder to find in its favor. *Anderson*, 477 U.S. at 249-50.

## ARGUMENT

I.   **NYLIM Cannot Be Liable For Statutory Penalties Under ERISA § 502(c) Because Plaintiff Never Made A Request For Documents To NYLIM and Because NYLIM Was Not The "Plan Administrator"**

   A.   **Plaintiff Did Not Make A Request For Documents To NYLIM**

ERISA § 104(b)(4) provides, in relevant part, that

> The *administrator* shall, *upon written request* of any participant or beneficiary, furnish a copy of the latest updated summary plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated.

29 U.S.C. § 1024(b)(4) (emphasis added).  ERISA § 502(c) provides the enforcement mechanism for this requirement, stating in relevant part that

> Any *administrator*…who fails or refuses to comply *with a request* for any information which such administrator is required by this title to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days of such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of $100 a day[5] from the date of such failure or refusal.

29 U.S.C. § 1132(c)(1) (emphasis added).   Thus, the plain text of ERISA § 104(b)(4) and § 502(c) require a request for documents by a participant or beneficiary.  Plaintiff has conceded in her responses to NYLIM's discovery requests and in her deposition that she has *never* requested plan-related documents from NYLIM other than in connection with discovery in this case (and NYLIM complied with its discovery obligations).  *See* Statement of Undisputed Material Facts ("SUMF"), *supra*, ¶ 6.  No issue of material fact exists about this.  Plaintiff's failure to make a request on NYLIM plainly precludes any

---

[5] Federal regulations have increased the maximum daily statutory penalty from $100 to $110 per day for violations occurring after July 29, 1997.  *See* 29 C.F.R. § 2575.502c-1.

finding of liability against NYLIM under ERISA § 104(b) and § 502(c) for alleged failure

to provide her with documents.  As a matter of law, NYLIM is entitled to judgment.

> **B.   NYLIM Is Not the Plan Administrator And Therefore**
> **Has No Responsibility Under Section 104(b)(4) to Furnish**
> **Documents In Response To Written Requests**

Plaintiff faces an additional (and equally insurmountable) obstacle:  NYLIM is

not the Plan administrator.  By their very terms, ERISA § 104(b)(4) and § 502(c)(1) place

disclosure obligations on plan administrators and *only* on plan administrators.[6]  *See Davis*

*v. Liberty Mutual Ins. Co.*, 871 F.2d 1134, 1138 n.5 (D.C. Cir. 1989) (finding that a

fiduciary who was neither an administrator nor a plan sponsor had no duty to provide

summary plan information:  "Congress has specifically articulated [duties under ERISA

§§ 104(b)(4) and 502(c)(1)] by imposing liability on the 'administrator'").  And it is

settled law that only plan administrators are subject to statutory penalties under § 502(c).

*See American Medical Ass'n v. United Healthcare Corp.*, Nos. 00-2800/7246, 2001 U.S.

Dist. LEXIS 10818, *40 (S.D.N.Y. July 31, 2001) ("Recovery under [ERISA] § 502(c),

however, is limited to penalties assessed against plan administrators"); *Player v.*

*Northrop Grumman Corp.*, No. 2:05CV753DAK, 2006 U.S. Dist. LEXIS 62521, **5-7

(D. Utah Aug. 31, 2006) ("Only the Plan Administrator can be subject to the statutory

penalty for failing to provide the requested documents"); *Brucks v. Coca-Cola Co.*, 391

F. Supp. 2d 1193, 1211 (N.D. Ga. 2005) ("[ERISA § 502(c)], by its plain language,

addresses only an administrator's failure or refusal to provide information 'which [the]

---

[6] ERISA § 3(16)(A) defines "administrator" as "the person specifically so designated by the terms of the
instrument under which the plan is operated" or, if an administrator is not so designated, the plan sponsor.
29 U.S.C. § 3(16)(A).

administrator is required by this subchapter to furnish to a participant or beneficiary'" (quoting § 502(c) of ERISA)); *Boone v. Leavenworth Anesthesia, Inc.*, No. 90-2156-V, 1992 U.S. Dist. LEXIS 13895, *14 (D. Kan. Aug. 25, 1992) ("[ERISA 502(c)], by its express language, provides for a civil penalty to be imposed only upon the plan administrator").

There is no dispute that the PhRMA Retirement Committee is the Plan's administrator. First, Plaintiff alleged in her amended complaint that the Retirement Committee is the Plan administrator, and NYLIM admitted the allegation. (*See* Dkt. 86 Am. Compl. ¶ 12; Dkt. 88, Answer ¶ 12). Second, the Individual PhRMA Defendants have admitted that the Retirement Committee is the specific entity designated by the company to be Plan administrator. (*See* Ex. 25 [Individual Defendants' Answers and Objections to Plaintiff's First Request for Admissions, First Interrogatories, and Second Request for Production of Documents, Answers to Request for Admission No. 3 and Interrogatory No. 4]). Third, the Court has already held that PhRMA is the Plan administrator. (Dkt. 82 at 15 ("PhRMA was the plan administrator pursuant to the Service Agreement")). Finally, the Agreement governing NYLIM's provision of services to the Plan specifically states that the Plan administrator is *not* NYLIM. (Dkt. 60-3, Ex. 1 at 4 ["Status of NYLIM"]). There is no material factual dispute that NYLIM is *not* the Plan administrator.

Nor is there any legal basis to claim that NYLIM is the "de facto" Plan administrator and thus liable for failing to provide documents. As this Court recognized in its prior decision, the D.C. Circuit has rejected the de facto administrator theory. *See Davis*, 871 F.2d at 1138 n. 5 (rejecting plaintiff's request to hold insurer to plan – who

was not designated as plan administrator – liable for alleged failure to provide summary plan description); Dkt. 82 at 15 (where this Court noted that *Davis* "declin[ed] to recognize de facto plan administrators").[7]

The law and facts are clear: the obligation to provide documents upon request under ERISA § 104(b)(4) lies with the plan administrator, penalties for violation of § 502(c) can only be assessed against the plan administrator, and it is undisputed that NYLIM is not the administrator of the Plan.  NYLIM is entitled to judgment on these grounds as well.[8]

## II.    NYLIM Did Not Violate Any Other Disclosure Obligations of ERISA

NYLIM likewise cannot be held liable for failing to make "automatic" disclosures to Plaintiff.[9]  First and foremost, the plain text of ERISA § 502(c) – the only statutory penalty provision for non-disclosure of plan documents – does not allow for such a result. In *Meyer v. Phillip Morris., Inc.*, 575 F. Supp. 1232 (E.D. Mo. 1983), the plaintiff sought damages for the plan administrator's alleged violation of the "automatic" disclosure requirements of ERISA § 104(b).  The court held that "the statutory damages provisions of [ERISA § 502(c)] and the exclusion from coverage of the 'automatic' duties contained

---

[7] *Davis* is consistent with decisions from other jurisdictions rejecting the de facto plan administrator concept.  *See McKinsey v. Sentry Ins.*, 986 F.2d 401, 404 (10th Cir. 1993) (rejecting *de facto* plan administrator argument by holding that ERISA § 3(16)(A) "provides that if a plan specifically designates a plan administrator, then that individual or entity is *the* plan administrator…[t]he statutory language is clear and unambiguous, and admits of no other interpretation"); *Jones v. UOP*, 16 F.3d 141, 146 (7th Cir. 1994) (rejecting *de facto* administrator theory and holding that "the statute is clear and ought not be stretched…"); *Moran v. Aetna Life Ins. Co.*, 872 F.2d 296, 299-300 (9th Cir. 1989) ("We believe that the rationale and policies articulated by the [Supreme Court] in [*Mass. Mutual Life Ins. Co. v.*] *Russell* require us to limit liability under [ERISA § 502(c)] to targets expressly identified by Congress in [ERISA § 3(16)]").

[8] Not only is NYLIM outside § 502(c)'s coverage, but any § 502(c) claim asserted by Plaintiff against the Individual PhRMA Defendants is barred by a one-year statute of limitations.  NYLIM incorporates by reference the arguments set forth in the Individual PhRMA Defendants' motion for summary judgment, due to be filed today.

[9] As used herein, "automatic" disclosures are those that must be made under ERISA absent a participant request.

in [ERISA § 104] implies an intent not to impose any financial liability (*i.e.*, legal remedies) on administrators for violations of those duties." *Id.* at 1235.  The Court explained:  "Congress was capable of expressly providing such relief but did not do so. [J]udicial restraint is especially warranted here where the right involved was created by Congress as part of a very complex statutory framework." *Id.* at 1236.  *Meyer* is directly on point.

Second, the automatic disclosure provisions of ERISA, when applied to the facts of this case, preclude liability against NYLIM.[10]  Plaintiff claims that she was not provided four types of documents related to the Plan:  Summary Plan Description ("SPD"), Summary of Material Modifications ("SMM"), Summary Annual Report ("SAR"), and benefit statement.  As explained below, these documents were either sent to Plaintiff, did not exist, or NYLIM was under no legal obligation to furnish the documents during the relevant period.

**A.    SPD**

The automatic disclosure rules for SPDs are set forth in ERISA § 104(b)(1), 29 U.S.C. § 1024(b)(1) (emphasis added):

> [Initially]:  The *administrator* shall furnish each participant, and each beneficiary receiving benefits under the plan, a copy of the summary plan description and all modifications and changes referred to in section 102(a)–
>
> (A)    within 90 days after he becomes a participant or, (in the case of a beneficiary) within 90 days after he first receives benefits, or

---

[10] To the extent Plaintiff argues that she brings her remaining claims against NYLIM under ERISA § 502(a)(3), this must fail as well.  In *Kifafi*, this Court held that a breach of fiduciary duty claim for alleged failures to provide plan documents "must be dismissed because a plan participant cannot proceed with a breach of fiduciary duty claim under Section 502(a)(3) when relief is available under other remedial sections of ERISA."  2009 WL 1353541 at *29.  Plaintiff's only possible avenue of relief is ERISA § 502(c).

(B)     if later, within 120 days after the plan becomes subject to this part.

[Thereafter]:  The *administrator* shall furnish to each participant, and each beneficiary receiving benefits under the plan, every fifth year after the plan becomes subject to the part an updated summary plan description . . . which integrates all plan amendments made within such five-year period, except that in a case where no amendments have been made to a plan during such five-year period this sentence shall not apply.  Notwithstanding the foregoing, the administrator shall furnish to each participant, and to each beneficiary receiving benefits under the plan, the summary plan description described in section 102 every tenth year after the plan becomes subject to this part.

Plaintiff's claim based on failure to provide the SPD must fail because:

- The disclosure obligation is imposed on the administrator (*i.e.*, the PhRMA Retirement Committee).

- Under the Agreement, the responsibility to distribute SPDs to Plan participants (absent a request through the Benefits Complete website) was PhRMA's.  (Dkt. 60-3, Ex. 1 at 13-14; Ex. 26 [Abend Dep. at 20:24-21:23, 23:4-18, 87:2-5]; Ex. 6 [Morales 6/8/09 Dep. at 52-53]).

- Plaintiff admittedly received two SPDs relating to the Plan.  (*See* SUMF ¶ 9-10).

**B.     SMM**

The automatic disclosure rules for SMMs are set forth in ERISA § 104(b)(1), 29

U.S.C. § 1024(b)(1) (emphasis added):

The *administrator* shall furnish….[i]f there is a modification or change described in section 102(a)…a summary description of such modification or change shall be furnished not later than 210 days after the end of the plan year in which the change is adopted to each participant, and to each beneficiary who is receiving benefits under the plan.

*See also* 29 C.F.R. § 2520.104b-3.  However, the obligation to furnish the SMM to terminated vested participants like Plaintiff is limited to modifications that affect the participant's rights under the plan:

> (c) Summary of material modifications or changes. A summary description of a material modification to the plan or a change in the information required to be included in the summary plan description need not be furnished to a retired participant, a vested separated participant or a beneficiary receiving benefits under the plan, within the time prescribed in section 104(b)(1) of the Act and § 2520.104b-3 for furnishing summary descriptions of such modifications and changes, if the material modification or change in no way affects such retired participant's, vested separated participant's, or beneficiary's rights under the plan. . . .

29 C.F.R. § 2520.104b-4(c).

Once again, the Plan administrator (not NYLIM) is charged with distributing SMMs.  Moreover, it is undisputed that PhRMA did not issue any SMMs affecting Plaintiff's benefit rights during the relevant period.  (*See* SUMF ¶ 12).

**C.     SAR**

The automatic disclosure rules for SARs (for plan years beginning on or before December 31, 2007) are set forth in ERISA § 104(b)(3), 29 U.S.C. § 1024(b)(3) (emphasis added):

> Within 210 days after the close of the fiscal year of the plan, the *administrator* shall furnish to each participant, and to each beneficiary receiving benefits under the plan, a copy of the statements and schedules, for such fiscal year, described in subparagraphs (A) and (B) of section 103(b)(3) and such other material . . . as is necessary to fairly summarize the latest annual report.

Effective January 1, 2008, the SAR is no longer required for defined benefit plans such as the Plan.  (*See* ERISA § 104(b)(3), 29 U.S.C. § 1024(b)(3); *see also* Ex. 27 [Abend Dep. at 50:22-23, 51:13-18]).

NYLIM prepared the SAR on an annual basis and sent it to PhRMA with instructions regarding distribution (SUMF ¶ 16), and it was the obligation of the PhRMA Retirement Committee as Plan administrator to ensure the SAR was distributed.  NYLIM believed that PhRMA would mail the SAR to terminated vested participants such as Plaintiff unless PhRMA asked NYLIM to do so, as PhRMA did in 2005.  (SUMF ¶ 16). Whether or not NYLIM's good-faith belief was correct or reasonable, any possible failure to distribute the SAR (and none is conceded here) cannot give rise to liability because, as previously explained, (1) NYLIM is not the Plan administrator, and (2) ERISA does not provide a remedy for violation of "automatic" disclosure provisions.

Nor can Plaintiff demonstrate any prejudice from not receiving the SAR.  The SAR contains general information about the Plan's assets, liabilities and funding status and does *not* contain individualized information that would be material to Plaintiff in ascertaining the amount of her benefit.  Indeed, the amount of Plaintiff's monthly benefit under the Plan has been fixed since 1988; this benefit amount (and her dispute with its calculation) was the very reason she brought this lawsuit in the first place.  Thus, even if Plaintiff did not receive the SAR after 2005, she was not prejudiced in her rights under the Plan and suffered no detriment.

### D.    Benefit Statement

The automatic disclosure rules for benefit statements for defined benefit plans like the Plan are contained in ERISA § 105(a)(1)(B), 29 U.S.C. § 1025(a)(1)(B), which was amended effective after December 31, 2006 and provides (emphasis added):

> (B) DEFINED BENEFIT PLAN.—The *administrator* of a defined benefit plan (other than a one-participant retirement plan described in section 101(i)(8)(B)) shall furnish a pension benefit statement—
>
> (i) at least once every 3 years to each participant with a nonforfeitable accrued benefit and *who is employed by the employer maintaining the plan at the time the statement is to be furnished*, and
>
> (ii) to a participant or beneficiary of the plan *upon written request*.

Not only does the disclosure duty rest on the Plan administrator, but Plaintiff was not entitled to receive an annual benefit statement.  Plaintiff has not been a PhRMA employee since 1988, and she never submitted a written request to NYLIM for benefit statements.  As such, she had no statutory right to a benefit statement.  In any event, NYLIM mailed Plaintiff an annual benefit statement for the years ending December 31, 2005, December 31, 2006, December 31, 2007, and December 31, 2008, to Plaintiff's address of record, and Plaintiff received the 2008 statement.  (Ex. 24 [Abend Dep. at 55:11-56:2]).  Although Plaintiff maintains that she did not receive the 2005-2007 statements, NYLIM has no record of these statements being returned.  Under the "mailbox rule," Plaintiff is presumed to have received the benefit statements.  *See Schikore v. Bankamerica Supplemental Ret. Plan*, 269 F.3d 956, 961-65 (9th Cir. 2001); *Hussey v. Chase Manhattan Bank*, 418 F. Supp. 2d 702, 717 (E.D. Pa. 2005).

## <u>CONCLUSION</u>

For the reasons set forth above, the Court should grant summary judgment to Defendant New York Life Investment Management, LLC, on all of Plaintiff's remaining claims.

Respectfully submitted,

Dated:  August 10, 2009

_____/s/_____

Christopher A. Weals, DC Bar No. 414754
Simon J. Torres, DC Bar No. 973898
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC  20004
Telephone:      202.739.3000
Facsimile:      202.739.3001

*Attorneys for Defendant New York Life
Investment Management, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I certify that true and correct copies of Defendant New York Life Insurance

Company LLC's Motion for Summary Judgment and Memorandum of Points and

Authorities in Support of its Motion for Summary Judgment were filed via the Court's

Electronic Case Filing system on August 10, 2009, and thereby served on Plaintiff and

counsel for the PhRMA Defendants.


_____/s/_____
Simon J. Torres