# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BARBARA J. WALKER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No.: 04-01991 (RMU) |
| | ) Judge Ricardo M. Urbina |
| | ) Magistrate Judge John M. Facciola |
| PHARMACEUTICAL RESEARCH AND | ) |
| MANUFACTURERS OF AMERICA *et al*, | ) |
| | ) |
| Defendants | ) |

## PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HER MOTION FOR SUMMARY JUDGMENT

Barbara J. Walker, *Pro Se*
311 Prince Street
Alexandria, VA 22314
(703) 836-0260

August 10, 2009

## TABLE OF AUTHORITIES

**Page No.**

### FEDERAL CASES

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986)          7

*Bartling v. Fruehauf Corp.*, 29 F.3d 1062, 1070 (6th Cir. 1994)          17, 31

*Bixler v. Central Pennsylvania Teamsters Health & Welfare Fund*,

      12 F.3d 1292, 1300 (3d Cir. 1993)          8

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986)          6

*Central States, Southeast & Southwest Areas Pension Fund v. Central*

      *Transport, Inc.,* 472 U.S. 559, 570 (1985)          8, 20

*Cress v. Wilson*, No. 06 Civ. 2717 (S.D.N.Y. 12/29/2008)          8

*Crotty v. Cook*, 121 F.3d 541 (9th Cir. 1997)          40, 41

*Davis v. Featherstone*, 97 F.3d 734, 737 (4th Cir. 1996)          17, 19

*Davis v. Liberty Mutual Ins. Co.* 871 F.2d 1134, 1139 (D.C. Cir. 1989)          27, 31, 41

*Diamond v. Atwood,* 43 F.3d 1538, 1540 (D. C. Cir. 1995)          6

*Donovan v. Bierwirth*, 680 F.2d 263, 271 (2d Cir. 1982)          8

*Eaton v. D'Amato,* 581 F.Supp. 743 (D.D.C. 1980)          37, 39

*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 118 (1989)          17, 31

*Fischer v. Philadelphia Elec. Co.,* 994 F.2d 130, 135 (3d Cir.)          9, 33

*Flanigan v. Gen. Elec. Co.*, 242 F.3d 78, 86 (2d Cir. 2001)          8

*Foley v. IBEW Local Union 98 Pension Fund,* 91 F. Supp.2d 797

      (E.D. Pa. 2000)          36

*Green v. Dalton,* 164 F.3d 671, 675 (D. D. Cir. 1999)          7, 21

*Hughes Salaried Retirees Action Comm. v. Admin. of Hughes*

    *Non-Bargaining Retirement Plan*, 72 F.3d 686, 690 (9th Cir. 1995)  17

*In re 0Enron Corp. Sec., Derivative & ERISA Litig.*, 284 F.Supp. 2d

    511, 569. (S.D. Tex. 2003)             11, 12

*Landry v. Air Line Pilots Ass'n Inter. AFL-CIO,* 901 F.2d 404, 408

    (5th Cir. 1990)                10, 12

*Lowe v. McGraw-Hill Companies, Inc.,* 361 F.3d 335 at 338

    (7th Cir. 2004)                4

*Harding v. Gray,* 9 F.3d 150, 154 (D.C. Cir. 1993)    7, 21

*Kascewicz v. Citibank, N.A.,* 837 F.Supp.1312 (S.D.N.Y 1993)  22, 42, 44

*Moench v. Robertson*, 62 F.3d 553, 560 (3d Cir. 1995)    10, 12

*Mondry v. American Family Mutual Insurance Company*, No.

    07-1109 at 23 (7th Cir. 3/5/2009)       18

*Nelson v. IPALCO Enterprises, Inc.,* 480 F. Supp.2d 1061, 1095

    (S.D. Ind. 2007)               9

*Nereida-Gonzalez v. Tirado-Delgado*, 990 F.2d 701, 701

    (1st Cir. 1993)                6

*Sage v. Automation Inc. Pension Plan & Trust,* 845 F.2d 885, 894 n.4

    (10th Cir. 1988)              41

*Sandlin v. Iron Workers Dist. Council Pension Plan,* 716 F.Supp. 571,

    574 (N.D. Ala. 1988),            42

*Stewart v. Thorpe Holding Co. Profit Sharing Plan*, 207 F.3d 1143

    (9th Cir. 2000)                10, 12

*Varity Corp. v. Howe,* 516 U.S. 489, 512 (1996)                                38

Worldcom 263 F.Supp.2d 758                                                       8

## RULES AND STATUTES

Fed. R. Civ. P. 56(c)                                                            6

29 CFR §2509.75-8, Q FR-17                                                    34, 35

29 CFR §2560.503-1(h)(2)(iii)                                                    21

ERISA § 3(16)(A)                                                                 18

ERISA §3(21)                                                                 11, 12, 13

ERISA §101(a)                                                                  16, 22

ERISA §102(a)                                                                    16

ERISA §103(a)(1)                                                                 16

ERISA §104(b)(4)                                                       16, 17, 26, 27, 40, 41

ERISA §105(c)                                                                  11, 16

ERISA § 404                                                          5, 6, 7,8,10,15,16, 21, 28

                                                                              29,34,39

ERISA § 405(c)(1)(B)                                                             13

ERISA (§§401-414)                                                                8

ERISA § 409                                                                      10

ERISA § 502                                                         6,18, 38,39,41, 44,45

ERISA § 510                                                                     5, 6

## TREATISES

Restatement (Second) of Trusts § 173 (1959)                                      8

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BARBARA J. WALKER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vi. | ) Civil Action No.: 04-01991 (RMU) |
| | ) Judge Ricardo M. Urbina |
| | ) Magistrate Judge John M. Facciola |
| PHARMACEUTICAL RESEARCH AND | ) |
| MANUFACTURERS OF AMERICA *et al*, | ) |
| | ) |
| Defendants | ) |

**PLAINTIFF'S MEMORANDUM OF POINTS AND**
**AUTHORITIES IN SUPPORT OF HER**
**MOTION FOR SUMMARY JUDGMENT**

The Plaintiff submits this memorandum in support of her motion for summary

judgment against the Individual Defendants[1] and Defendant New York Life Investment

Management[2] (hereinafter "NYLIM").

**BACKGROUND**

Plaintiff Barbara Walker filed this action on November 15, 2004 asserting claims

against three groups of defendants under ERISA §§404, 502 and 510, and under common

---

[1] The Individual defendants consist of approximately 57 current and former individual members of the Pharmaceutical Research and Manufacturers of America ("PhRMA") Board of Directors or Retirement Committee.

[2] The original New York Life defendants were New York Life Insurance Company and its affiliate New York Life Investment Management.  Mrs. Walker voluntarily dismissed her claims against New York Life Insurance Company.

law theories of abuse of right, estoppel and breach of contract.  The Court granted

summary judgment in favor of the PhRMA defendants on all claims on July 16, 2006. On

August 7, 2008 the Court denied the New York Life defendants' motion for summary

judgment.  In the same Opinion the Court dismissed Mrs. Walker's §502(a)(1)(B) and

§510 claims against the Individual defendants, but denied the Individual defendants

motion to dismiss with regard to Mrs. Walker's claims under §§502(a)(2) and (a)(3) and

§404.  Plaintiff's surviving claims arise under ERISA § 404, alleging that the Individual

defendants and the New York Life defendants breached their fiduciary duties by failing

to provide her with certain plan-related documents, and that Individual defendants who

are current or former members of the PhRMA Board of Directors failed to review and

monitor the activities of the Retirement Committee and other plan fiduciaries.


**STANDARD FOR SUMMARY JUDGMENT**

The Federal Rules of Civil Procedure provide that summary judgment is

appropriate when "the pleadings, depositions, answers to interrogatories, and admission

on file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of law."  Fed.

R. Civ. P. 56(c), *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986);  *Diamond v.*

*Atwood,* 43 F.3d 1538, 1540 (D. C. Cir. 1995).  A material fact is one that has "the

potential to affect the outcome of the suit under applicable law." *Nereida-Gonzalez v.*

*Tirado-Delgado*, 990 F.2d 701, 701 (1st Cir. 1993).The Court must draw all justifiable

inferences in the nonmoving party's favor and accept the nonmoving party's evidence as

true.  The nonmoving party must present specific facts that would enable a reasonable

jury to find in its favor.  *Green v. Dalton,* 164 F.3d 671, 675 (D. D. Cir. 1999);  *Harding v. Gray,* 9 F.3d 150, 154 (D.C. Cir. 1993).    However, a nonmoving party must establish that there is more than the "mere existence of a scintilla of evidence" in support of its position.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986).  A moving party may therefore succeed on summary judgment by pointing to the **absence** of evidence proffered by the nonmoving party. *Celetex* at 322.


## LEGAL ARGUMENT

### I.   ERISA Fiduciary Duty

Under ERISA, a fiduciary must:

discharge his duties with respect to a plan solely in the interest of the participants and their beneficiaries; and —

> (A) for the exclusive purpose of:
>
> > (i) providing benefits to participants and their beneficiaries; and
> >
> > (ii) defraying reasonable expenses of administering the plan;

(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

(C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and

(D) in accordance with the documents and instruments governing the plan ....

ERISA § 404(a)(1).

Section 404(a)(1) of ERISA thus imposes three "overlapping standards" on fiduciaries: to act "solely in the interests of the participants and beneficiaries," to act "for the exclusive purpose" of providing benefits to them, and to act with the care of a "prudent man." *Cress v. Wilson*, No. 06 Civ. 2717 (S.D.N.Y. 12/29/2008) (quoting *Donovan v. Bierwirth*, 680 F.2d 263, 271 (2d Cir. 1982)). These duties, which are drawn from the common law of trusts, have been described as "the highest known to the law." Worldcom, 263 F.Supp.2d at 758 (quoting Flanigan v. Gen. Elec. Co., 242 F.3d 78, 86 (2d Cir. 2001)). ERISA fiduciaries must manage the plan with "an eye single" to the interests of the plan's participants and beneficiaries. Worldcom, 263 F.Supp.2d at 758 (quoting Donovan, 680 F.2d at 271).

Part 4 of ERISA (§§401-414) sets forth the responsibilities of ERISA fiduciaries in great detail. Those duties invoke the common law of trusts. "At common law, trustees have a duty to give beneficiaries upon request 'complete and accurate information as to the nature and amount of the trust property.' Restatement (Second) of Trusts § 173 (1959). And beneficiaries are 'always entitled to such information as is reasonably necessary to enable [them] to enforce [their] rights under the trust or to prevent or redress a breach of trust.' *Id*. cmt. c." *Central States, Southeast & Southwest Areas Pension Fund v. Central Transport, Inc.,* 472 U.S. 559, 570 (1985). Further, trustees have a duty not to misinform beneficiaries. *Bixler v. Central Pennsylvania Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1300 (3d Cir. 1993)

## II.  Defendants Are Fiduciaries Under ERISA

### a.  Members of the PhRMA Retirement Committee Are ERISA Fiduciaries

The Retirement Committee is the named fiduciary in the PhRMA Retirement

Plan[3].  Exhibit 1, Walker/Ind Defs[4] Ex. 9 at 6; Exhibit 2, Walker/Ind Defs Ex. 14 at 10.

The Deferred Savings Plan confers fiduciary status on the Retirement Committee. Exhibit

3, Walker/Ind Defs Ex. 17 at 20 (giving the Retirement Committee "full discretionary

power and authority" over the plan.   The Individual defendants who are current or

former members of the Retirement Committee are also fiduciaries under ERISA, at least

to the extent they acted in their roles as members of the Committee.  *Nelson v. IPALCO

Enterprises, Inc.,* 480 F. Supp.2d 1061, 1095 (S.D. Ind. 2007);  *Fischer v. Philadelphia

Elec. Co.,* 994 F.2d 130, 135 (3d Cir.).  Although Mrs. Walker's claims against the

Retirement Committee as a body were dismissed by the Court,  Mem Op., Dkt 33 (July

2006), the Individual defendants who are or were members of the Retirement Committee

can be held individually liable for breach of fiduciary duty.  ERISA expressly assigns

fiduciary responsibility to any "person . . . to the extent (i) he exercises any discretionary

authority or discretionary control respecting management of such plan or exercises any

authority or control respecting management or disposition if its assets."  ERISA §

3(21)(A).  Because the statute defines "person" to include an "individual" as well as a

corporation, *Id.* § 3(9), it is clear that individuals who meet the definition of fiduciaries

---

[3] There have been at least 9 different versions of the Retirement Plan produced during discovery.  The plans vary in some respects from version to version.  This memo will cite primarily to the 1984 plan and to the 1999 plan.  The 1984 plan was in effect on May 2, 1988.  Exhibit 4, Morales dep. #2 at 24, line 18 through 27, line 3.  That was the date on which Mrs. Walker left the PhRMA payroll.  Mrs. Walker's claim for benefits for the years 1988 through 2002 when she was a contract employee was denied by the Retirement Committee.  If her claim for benefits in this litigation is unsuccessful, the 1984 plan will govern her benefits.  The 1999 plan was the plan in effect when Mrs. Walker made her claim for benefits to the PhRMA Retirement Committee.

[4] Mrs. Walker's deposition by counsel for the Individual defendants on May 28, 2009.

are liable as such if they breach their duties.  *See also* ERISA § 409 (imposing individual liability on any breaching fiduciary).  Numerous cases have recognized that members of boards of directors or committees that were fiduciaries may themselves be sued as individuals.  *See Stewart v. Thorpe Holding Co. Profit Sharing Plan*, 207 F.3d 1143,1156 (9th Cir. 2000); *Landry v. Air Line Pilots Ass'n Inter. AFL-CIO,* 901 F.2d 404, 408 (5th Cir. 1990); *Moench v. Robertson*, 62 F.3d 553, 560 (3d Cir. 1995); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 284 F.Supp. 2d 511, 569. (S.D. Tex. 2003).

**b. Members of the PhRMA Board of Directors Are ERISA Fiduciaries**

The PhRMA Board of Directors is a fiduciary pursuant to the terms of the plans. Numerous plan provisions describe the Board as a fiduciary.  "The fiduciaries under the Plan . . . shall be the Board of Directors . . ." Exhibit 5, Walker/Ind defs Ex. 10 at 46; "Neither the Retirement Committee, Board of Directors, nor any other fiduciary shall be liable . . . " Exhibit 6, Walker/Ind defs Ex. 12 at 39, Exhibit 3, Walker/Ind defs Ex. 17 at 20.

In addition, ERISA provides that a person is a "fiduciary" to the extent that:

(i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets,

(ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or

(iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 1105(c)(1)(B) of this title." ERISA §3(21).

The role given to the Board of Directors under the plans allows the Board of Directors to exercise discretionary authority and discretionary responsibility in the administration of the plans. Exhibit 3, Walker/Ind defs Ex. 17 at 20. The Retirement Plan gives the Board of Directors the responsibility for selection, retention and removal of members of the Retirement Committee, who are plan fiduciaries.  Exhibit 1, Walker/Ind defs Ex. 9 at 26; Exhibit 2, Walker/Ind Defs Ex. 14 at 48; Exhibit 7, Persinger dep., p 17, line 10 – 16.  Members of the Retirement Committee are "subject to removal" by the Board, Exhibit 1, Walker/Ind defs Ex. 9, § 9.1; Exhibit 9, Persinger Ex 1; serve "at the pleasure" of the Board, §9.1(a), p. 42, Exhibit 10, Morales Ex. 29, § 9.1(a) at 26 and Exhibit 11, Morales Ex. 7 § 9.1(a) at 42 ; "The Board of Directors is responsible for the selection, removal and replacement of the . . . Retirement Committee . . .The Board of Directors may also appoint, remove and replace such other Plan fiduciaries or advisors as it deems appropriate for the proper administration of the Plan . . ." Exhibit 10, Morales Ex. 29, § 9.3(a) at 29 and Exhibit 11, Morales Ex. 7, § 9.3(a) at 48.

The 1999 Retirement plan allows the Board of Directors to delegate responsibility for the selection, retention, removal or replacement of the Trustee, investment managers and investment advisors to a committee of the Board or the Investment Committee. Exhibit 2, Walker/Ind Defs Ex. 14 at 48, section 9.3(c).  But there is no similar authority to delegate responsibility for selection, retention, removal or replacement of members of the Retirement Committee.  Instead, the plan provides that:

9.3(b) The Board of Directors may designate a committee or committees of the Board of Directors to review the activities of Plan fiduciaries and advisors and to recommend to the Board of Directors the selection, retention, removal or replacement of the Trustee, investment managers, members of the Retirement Committee, members of the Investment Committee and other fiduciaries and advisors.

Exhibit 2, Walker/Ind Defs Ex. 14 at 48, § 9.3(b).  Clearly the responsibility for overseeing the activities of the Retirement Committee remains squarely with the Board of Directors under the plans.

Similarly, the Deferred Savings plans give the "Association" the authority to appoint a Retirement Committee, to abolish or suspend it, or to appoint any of its members as responsible for the operation of the plan.  Exhibit 12, Walker/Ind Defs Ex. 15 at 30, section 3.01.  As the governing body of "the Association", the Board of Directors is charged with this authority.

Like members of the Retirement Committee, the Individual Defendants who are or were members of the PhRMA Board of Directors are also fiduciaries within the meaning of ERISA §3(21).  Although Mrs. Walker's claims against the Board of Directors as a body were dismissed by the Court, Mem Op., Dkt 33 (July 2006)**,** the Individual defendants who are or were members of the Board of Directors can be held individually liable for breach of fiduciary duty.  *See Stewart*, *supra*; *Landry, supra*; *Moench*, *supra*; *Enron*, *supra.*

### c. NYLIM is an ERISA Fiduciary

NYLIM is also a fiduciary with respect to the PhRMA Retirement Plan.  As discussed above, ERISA provides that a person is a "fiduciary" with respect to a plan to the extent that he "exercises any discretionary authority or discretionary control respecting management" of the plan or "has any discretionary authority or discretionary responsibility in the administration" of the plan.  ERISA §3(21).  Section 3(21) also provides that the term fiduciary "includes any person designated under section [405(c)(1)(B)] of this title."  That section provides:

> (c)(1) The instrument under which a plan is maintained may
>
> expressly provide for procedures
>
> > (A) for allocating fiduciary responsibilities (other than
> >
> > trustee responsibilities) among named fiduciaries, and
> >
> > (B) for named fiduciaries to designate persons other than
> >
> > named fiduciaries to carry out fiduciary responsibilities
> >
> > (other than trustee responsibilities) under the plan.

ERISA §405(c)(1).  The PhRMA plan instruments specifically provide for such delegation of Retirement Committee responsibilities.  Section 9.1of the 1984 Retirement Plan states:

> (c) The Retirement Committee shall appoint a chairman from among its
>
> members, and shall appoint a secretary and such other agents and
>
> representatives as it may deem advisable (who may, but need not, be
>
> members of the Retirement Committee) to keep its records or assist it
>
> in doing any other act to be performed by the Retirement Committee.

13

(d)  The Retirement Committee shall employ an actuary at such times as
are necessary and may retain or consult counsel and may employ such
clerical, medical, accounting, and actuarial services as it deems expedient
in carrying out the Plan.

Exhibit 1, Walker/Ind defs Ex. 9 at 26-27.   In addition, the plan specifically provides for
delegation of the Committee's fiduciary duties.  Section 9.2 "Fiduciary Duties" states:

(a)  the Retirement Committee shall have the following powers, duties,
and responsibilities, **which it may retain or delegate** among the below-
mentioned bodies:

(1)  **Powers, duties, and responsibilities of administration,
delegable to the administrator.**

(2) Powers, duties and responsibilities of custody and disburse-
ment, delegable to the Trustee, the administrator, or an insurance
company, and

(3) Powers, duties, and responsibilities of investment, delegable
to the Trustee, an investment advisor, or an insurance company.

The Retirement Committee **may appoint an administrator**, an
investment advisor, or an insurance company, **and review or
redelegate the exercise of these powers, duties and responsibilities**
at any time.  *Id.* at 27 (emphasis added).

The 2009 Retirement Plan provides:

9.1 (e)  With the approval of the President of PhRMA, the
Retirement Committee may employ or appoint agents, legal counsel,

accountants, actuaries and such other advisors as the Retirement

Committee may deem necessary or convenient to assist it in the

administration of the Plan.

       (f) The Retirement Committee may delegate responsibility

for repetitive or other ministerial functions to employees of PhRMA

or other persons.

Exhibit 2, Walker/Ind Defs Ex. 14 at 44.

Under DB Complete Service Agreement, the Retirement Committee delegated

some of its fiduciary duties to NYLIM.  Exhibit 13, Walker/NYLIM[5] Ex. 1.  Among

other duties under the contract, NYLIM was given the responsibility for distribution of

the Summary Annual Reports for the Retirement Plan.

### III.  The Individual Defendants Who Are of Were Retirement Committee Members Breached Their Fiduciary Duty to Plaintiff

#### a.  Members of the Retirement Committee Failed to Exercise Their Fiduciary Responsibilities

As named plan administrator in the PhRMA plans, Ind. Def's Answer at 3, ¶ 12

(Dkt 111); NYLIM's Answer at 14, ¶ 67 (Dkt. 112), the Retirement Committee and its

members have a fiduciary duty under ERISA §404(a) to discharge their responsibilities

with respect to the plan solely in the interests of plan participants and beneficiaries for the

exclusive purpose of providing benefits to participants and beneficiaries and of defraying

reasonable expenses of administering the plan.  *Id.,* §404(a)(1)(A).  They are require to

exercise their duties with the prudent man standard of care, *id.,* §404(a)(1)(B) and in

accordance with plan documents.  ERISA §404(a)(1)(D), 2nd Am.Compl. ¶ 64.  Members

---

[5] Mrs. Walker's deposition by NYLIM on April 8, 2009.

of the Retirement Committee breached these duties by (1) failing to provide Plaintiff with plan documents which she requested and which she was entitled to under ERISA §104(b)(4), 2nd Am.Compl. ¶ 68, 71, and 72, (2) failing to provide Plaintiff with plan documents which were required to be provided to her on a regular basis without request under ERISA §101(a), 102(a), 103(a)(1), 104(b)(1),(2) and (3), and 105(c) *Id.* and (3) failing to communicate complete and accurate information regarding the plans to plan participants. *Id.*, ERISA § 404(a)(1)(D).

**1. Members of the Retirement Committee failed to provide Mrs. Walker with plan documents which she requested.**

Mrs. Walker has made four separate requests for plan documents: (1) her request of August 26, 2002 to the Retirement Committee for various plan documents in connection with her appeal of the Committee's denial of her request for benefits; (2) her request of August 2003 to Deb Barnes for copies of the 2002 summary annual reports; (3) her Request to Produce Documents and Tangible Things dated December 10, 2008 directed to counsel to the Retirement Committee, Exhibit 14; and (4) her request for plan documents in her Request for Admissions, First Interrogatories, and Second Request for Documents dated April 29, 2009 directed to counsel to the Retirement Committee, Exhibit 15**.** In spite of these repeated efforts, the Retirement Committee has failed to provide to Mrs. Walker with certain plan documents, while others were provided months or years after her requests. In addition to being breaches of their fiduciary duty to Mrs. Walker, these actions violate the obligations set forth in ERISA §104(b)(4), making defendants liable for civil penalties under ERISA §502(c)(1)(B).

Pursuant to ERISA § 104(b)(4), the administrator of a plan has an obligation to produce to a plan participant certain documents upon her request:

> The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary[ ] plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated. The administrator may make a reasonable charge to cover the cost of furnishing such complete copies. The Secretary [of Labor] may by regulation prescribe the maximum amount which will constitute a reasonable charge under the preceding sentence.

The purpose of this disclosure provision is to "ensure[ ] that `the individual participant knows exactly where he stands with respect to the plan[.]'" *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 118 (1989) (quoting H.R. Rep. 93-533, p.11 (1973), U.S. Code Cong. & Admin. News 1978, p. 4649).  Knowing where one stands with respect to a plan includes having the information necessary to determine one's eligibility for benefits under the plan, *Davis v. Featherstone,* 97 F.3d 734, 737 (4th Cir. 1996), to understand one's rights under the plan, *Bartling v. Fruehauf Corp*., 29 F.3d 1062, 1070 (6th Cir. 1994), to identify the persons to whom management of plan funds has been entrusted, *Hughes Salaried Retirees Action Comm. v. Admin. of Hughes Non-Bargaining Retirement Plan*, 72 F.3d 686, 690 (9th Cir. 1995)(en banc) (quoting S. Rep. No. 93-127, 93d Cong., 2d Sess. (1974), *reprinted in* 1974 U.S. Code Cong. & Admin. News 4838, 4863), and to ascertain the procedures one must follow in order to obtain benefits. *Id.*

"Teeth are given to this obligation by [ERISA §104 (c)(1)(B], which renders a non-compliant administrator liable for fines in the event he fails to timely produce

requested plan documents." *Mondry v. American Family Mutual Insurance Company*,
No. 07-1109 at 23 (7th Cir. 3/5/2009):

> Any administrator . . . who fails or refuses to comply with a request
> for any information which such administrator is required by this subchapter
> to furnish to a participant or beneficiary (unless such failure or refusal
> results from matters reasonably beyond the control of the administrator)
> by mailing the material requested to the last known address of the
> requesting participant or beneficiary within 30 days after such request may
> in the court's discretion be personally liable to such participant or
> beneficiary in the amount of up to $100 a day from the date of such failure
> or refusal, and the court may in its discretion order such other relief as it
> deems proper. For purposes of this paragraph,... each violation described
> in subparagraph (B) with respect to any single participant or beneficiary[ ]
> shall be treated as a separate violation.

ERISA §502(c)(1)(B)[6].

Both the duty to produce and liability for the failure or refusal to produce
plan documents are placed on the "administrator," which, as that term is defined, includes
the PhRMA Retirement Committee and its members.  The term "administrator" is defined
in ERISA § 3(16)(A) to mean:

> (i)      the person specifically so designated by the terms of the
> instrument under which the plan is operated;
>
> (ii)      if an administrator is not so designated, the plan sponsor; or
>
> (ii)      in the case of a plan for which an administrator is not designated
> and a plan sponsor cannot be identified, such other person as the Secretary
> may by regulation prescribe.

---

[6] By regulation, the maximum permissible penalty under that section has been increased to $110 per day.
29 C.F.R. § 2575.502c-3.

**Request of August 26, 2002**

There is no dispute that Mrs. Walker made requests to the Retirement Committee for plan documents relating to the Retirement Plan and the Deferred Savings Plan in two letters dated August 26, 2002.  Exhibit 16, Persinger Ex. 2 and Exhibit 17, Persinger Ex. 3.  Included in the list of documents Mrs. Walker requested were "copies of each of the PhRMA Retirement Plans in effect for the period 1988 through 2001 and the Summary Plan Descriptions for such plans", *Id.* Ex. 2 at 1, and "copies of each of the PhRMA Deferred Savings Plans in effect for the period 1988 through 2001 and the Summary Plan Descriptions for such plans." *Id.* Ex. 3 at 1.   She also requested copies of each of the PhRMA employee manuals in effect for the period 1988 through 2001[7]. Exhibit 16, Persinger Ex. 2 at 2, Exhibit 17, Persinger Ex. 3 at 2.

The Court should bear in mind the reason Mrs. Walker was requesting these documents.  At the time she was asking the Retirement Committee to determine her status with regard to the plans during a 14-year period, 1988 through 2001.  Clearly, the validity of a claim for benefits under an ERISA plan is likely to turn on the interpretation of terms in the plan at issue.  The information she sought was necessary to determine her eligibility for benefits under the plans.  *Davis,* supra.  As the summary plan descriptions for the Retirement Plan state, "the provisions of the Plan can be determined accurately only by consulting the Plan itself."  Exhibit 18, Walker Ex. 30 at 1.

The terms of the plans had varied over the years.  It would have been impossible for Mrs. Walker – or for the Retirement Committee -- to make an accurate determination of her eligibility for benefits during that time period without taking into consideration the

---

[7] The employee manuals contain information about the plans, including summary plan descriptions. Exhibit 19, Walker/Ind defs Ex. 4, Exhibit 20, Walker/Ind defs Ex. 6;Exhibit 21,  Morales Ex. 38.

terms of all of the plans during those14 years.  As a participant she was entitled to such

information as was reasonably necessary to enable her to enforce her rights, *Central

States, Southeast & Southwest Areas Pension Fund v. Central Transport, Inc.* supra, yet

the Retirement Committee failed to supply it.

      Although the Retirement Committee was in receipt of her claim for benefits and

knew the information she would need to support her claim on appeal, they withheld from

her numerous plan documents that she had requested, including the key documents in

effect in May 1988.  Exhibit 22, Morales Ex. 2 at 9 – 13, as well as other plan documents

and the employee manuals[8].  Significantly, the restatements of both plans and the

summary plan descriptions for both plans in effect on May 2, 1988 were ***not*** provided.

*Id.* at 10, #3(e) and #4(b); at 11, #5(c) and at 12, #6(g)[9]. Yet it was the Committee's

position that Mrs. Walker ceased to be an employee on that date.  If that were the case,

these were the very documents that would have governed her rights and benefits under

the plans, including whether she was entitled to participate in the plans when she began

working under contract.

      The Individual Defendants state that all documents relied on or considered by the

Retirement Committee were provided to Mrs. Walker on or about September 26, 2002,

Exhibit 23, Morales Ex. 1 at 14, Ind. Def's Answer to Request for Admissions, yet have

provided no evidence to support their position.  In the course of three separate

---

[8] Mrs. Walker was entitled to the employee manuals under ERISA § 104(b)(1) and (b)(4) because they contained SPDs.

[9] The Deferred Savings Plan in effect on May 2, 1988, its SPD, and the SPD for the 1984 Retirement Plan have not been provided to Mrs. Walker by the Individual defendants, either before or during the course of this litigation.  Only during discovery did the Individual defendants produced the 1984 Retirement Plan, a copy of the document which Mrs. Walker had previously provided to them in discovery, which contained her name and hand-written notes.  Exhibit 1, Walker/Ind defs Ex. 9.

depositions PhRMA's Rule 30(b)(6) witnesses, Mr. Persinger and Ms. Morales, were unable to confirm that a single document requested by Mrs. Walker on August 26, 2002 had been provided to her. Exhibit 7, Exhibit 4 and Exhibit 24.  Mrs. Walker, however, kept a file of documents received, and has provided the Individual defendants with a list of exactly which documents she did – and did not – receive from the Committee.  Exhibit 22, Morales Ex. 2 at 9 – 12.  In light of the evidence provided by Mrs. Walker and the lack of evidence provided by the Individual defendants, the Court may disregard the Individual defendants assertion that all requested documents were provided.  *See Green v. Dalton,* supra and *Harding v. Gray, supra* (to survive a motion for summary judgment a party must present specific facts that would enable a reasonable jury to find in its favor.)

Whether or not the Retirement Committee provided Mrs. Walker with all the documents that were relied on or considered by the Retirement Committee, members of the Committee breached their fiduciary duty to Mrs. Walker either way.  A `failure of the Retirement Committee to consider the applicable documents for ***all*** of the years in question would, in itself, be a breach of the Committee members' fiduciary duty to Mrs. Walker to discharge their duties solely in the interest of participants and for the purpose of  providing benefits to participants and their beneficiaries.  ERISA § 404(A)(1)[10].  If the documents were considered but were simply not provided to Mrs. Walker, members of the Committee breached their fiduciary duty to her to administer the plans in compliance with ERISA §404, 29 C.R.F §2560.503-1(h)(2)(iii), and with the terms of the plan documents.  *See,* e.g., Exhibit 25, Walker/Ind defs Ex. 19 at 14. In addition, Mrs.

---

[10] Any allegation by the Individual defendants that her claim was decided *without* consideration of the key documents in effect in 1988 should be considered an admission that the Committee breached this fiduciary duty.

Walker was entitled to each of the documents she requested under ERISA §§101(a) and 104(b), regardless of whether they had been relied on or considered in the Committee's deliberations.  In either case the failure to provide these and other documents requested by Mrs. Walker constitutes a breach of the fiduciary duty owed to her by members of the Retirement Committee. It also violated the plan administrator's duties under ERISA §104(b).

### Mrs. Walker's Request of August 2003

In August 2003 Mrs. Walker sent an email request to Deborah Barnes, PhRMA Controller, requesting a copies of the 2002 summary annual reports.  Exhibit 26, Decl. of Barbara J. Walker at 1, Dkt. 48.  In response, on or about August 27, 2003, she received copies of the summary annual reports for the 2001 plans with a cover memo from Deb Barnes.[11]  Exhibit 27, Walker/Ind defs Ex. 31.  When she inquired as to why she had not received the 2002 SPDs which she requested she was told that they were not yet available.  This may have been true, but the fact that the documents were not currently available did not absolve the Individual defendants of the duty to provide them when they became available.  *See Kascewicz v. Citibank, N.A.,* 837 F.Supp.1312 (S.D.N.Y 1993)(failure to create an SPD was no excuse for failing to produce it on request of a participant).

During discovery the Individual defendants provided Mrs. Walker with a cover letter from Deb Barnes dated December 18, 2003 transmitting the 2002 SARs to "All

---

[11] ERISA § 104(b)(3) requires that SARs be provided to plan participants within 210 days after the close of the fiscal year of the plan.  As the PhRMA plans fiscal year is the calendar year, the SARs were due to be sent to Mrs. Walker – without request – no later than **July 30, 2002**.  Mrs. Walker's written request was made more than one year past the date on which she should have received these documents without request.

Staff".  Exhibit 28, Morales Ex. 11 at WALKER812.  Ms. Morales testified that database

for "all staff" includes current employees, but not terminated vested employees.  Exhibit

24, Morales dep. #1 at 70, lines 1 – 10.  However, despite her letter to Ms. Barnes

specifically requesting these documents only four months earlier, the 2002 SARs were

not provided to Mrs. Walker when they became available and were distributed to "all

staff".  Moreover, the 2002 SARs have **never** been provided to Mrs. Walker, even during

the course of this litigation. Exhibit 22, Morales Ex. 2 at 6 and Exhibit 28, Morales Ex.

11 at WALKER812.

      Neither the Individual defendants nor Mrs. Walker have copies of the email

exchange between Mrs. Walker and Ms. Barnes[12].  However, the August 27, 2003

postmark on the envelope mailing the 2001 SARs to Mrs. Walker clearly indicates that

the mailing was in response to her request.  Since it came over one year past the due date

for distribution of the 2001 SARs and only four months prior to distribution of the 2002

SARs, it was obviously not distributed as part of the normal mailing cycle for routine

distribution of the SARs.  Exhibit 4, Morales dep.#2 at 60, line 16 through 61, line 18.  In

addition, Mrs. Walker had not previously received SARs from PhRMA on a routine basis

without request.  The first routine mailing of SARs which she received did not come until

2005, after PhRMA entered into its contract with NYLIM and belatedly provided

NYLIM with a list of terminated vested participants.  Exhibit 26, Decl. of Barbara J.

Walker at 2, Dkt. 48

---

[12] Pursuant to PhRMA's email retention/destruction policy, the email between Mrs. Walker and Ms. Barnes
would have been deleted from Ms. Barnes computer.  Exhibit 8 at  Mrs. Walker's computer subsequently
died, and the saved email was lost.

### Mrs. Walker's Requests During this Litigation

During the course of this litigation Mrs. Walker had made two requests for documents from the defendants.  First, Mrs. Walker served her Request to Produce Documents and Tangible Things, or to Enter Onto Land Under Rule 34 on December 10, 2008[13]. Exhibit 14.  Second, Mrs. Walker requested documents in her First Requests for Admission, First Interrogatories, and Second Request for Production of Documents to Individual Defendants dated April 29, 2009[14]. Exhibit 15. In addition, defendants were required to produce certain documents in their Initial Disclosures under Rule 26(a) of the Federal Rules of Civil Procedure[15].  Defendants have thus had three opportunities to provide Mrs. Walker with plan documents which she requested. However, despite voluminous production by the Individual defendants and substantial production by NYLIM, there are still plan documents which were required to be provided to Mrs. Walker either on a routine basis or on written request which have not been provided. Exhibit 22, Morales Ex. 2 at 9 – 15.  These include the documents that were identified in Mrs. Walker's Answer to the Individual defendants' Requests for Admission.  Exhibit 22, Morales Ex. 2.

The fact that Mrs. Walker is currently engaged in litigation with the defendants does not change her status as a participant in the PhRMA plans.  As such she is entitled to certain plan documents under ERISA.  The circumstance of this litigation does not suspend the defendants' obligation to provide plan documents on request.  In fact, if

---

[13] Mrs. Walker received the Individual defendants' response on January 16, 2009 and NYLIM's response on January 12, 2009.

[14] Mrs. Walker received the Individual defendants' response on June 3, 2009 and NYLIM's response on June 1, 2009.

[15] Mrs. Walker received the Individual defendants' Initial Disclosures on October 20, 2008 and NYLIM's Initial Disclosures on October 31, 2008.

anything, the Federal Rules of Civil Procedure heighten, rather than diminish, defendants' obligations to respond to Mrs. Walker's requests.  For the duration of this litigation Mrs. Walker is, of course, prohibited from direct contact with the opposing parties, including the Retirement Committee.  She is therefore required to make any requests for documents through opposing counsel rather than directly to the Committee. Undoubtedly defendants' counsel has conferred with their clients to obtain any documents requested by Mrs. Walker.  Any failure of defendants' counsel to respond to Mrs. Walker's requests represents a violation of the ERISA disclosure rules attributable to the defendants themselves, and a breach of their fiduciary duty to Mrs. Walker.

> **2. Retirement Committee members failed to provide Plaintiff with plan documents which were required by ERISA to be provided to her on a regular basis without request**

The ERISA disclosure rules require that the administrator provide certain plan documents to participants on a routine basis, **without request**.  §104(b)(1) – (3).  Section 104(b)(1) requires that summary plan descriptions be provided to plan participants within 90 days of their becoming a participant in the plan, or within 120 after the plan becomes subject to ERISA.  Further, this section provides:

> The administrator shall furnish to each participant . . . every
>
> fifth year. . . an updated summary plan description  . . which
>
> integrates all plan amendments made within such five-year
>
> period.

*Id.* §(b)(1). If no amendments have been made to the plan, the administrator must still furnish a summary plan description to each participant every tenth year.  Despite these clear requirements in the statute, Mrs. Walker received **no** summary plan descriptions from defendants prior to her August 26, 2002 request to the Retirement Committee[16]. Exhibit 26, Decl. of Barbara Walker.

If there is a modification or change in the plan, a summary of the modification must be furnished within 210 days after the end of the plan year. *Id.*  According to the testimony of PhRMA's rule 30(b)(6) witnesses, no summaries of modifications have ever been written or distributed by the Retirement Committee, despite numerous amendments to the plans over the years.  Exhibit 7, Persinger dep. at 38, lines 17-20; Exhibit 4, Morales dep. #2 at 47, lines 2-4.

Summary Annual Reports, which describe the financial condition of the plans, are also required to be distributed on a regular basis **without** written request.  ERISA requires that SARs be distributed within 210 days after the close of the fiscal year. *Id.* §(b)(3).  In PhRMA's case, that would be by the end of July each year.

Certain other plan documents, including the latest updated SPD, the latest annual report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan was established or is operated, must be made available for examination by plan participants. *Id.* §(b)(2).

ERISA §104(b)(4) lists documents which the administrator must furnish on the ***written request*** of the participant.  These include the latest SPD, the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other

---

[16] The Retirement Committee provided Mrs. Walker with the July 1999 SPD for the Retirement Plan in response to her August 26, 2002 request.  NYLIM provided Mrs. Walker with the 2004 SPD for the Retirement Plan on January 12, 2009.

instruments under which the plan is established or operated.  With the exception of one addition, the "terminal report", the documents listed in § (b)(4) are identical to those listed in §(b)(2).  The list does not include the "summary annual report"; instead, this section lists the "annual report", which is a full report rather than its summary.  The annual report is a lengthy document plan sponsors must file annually with the Secretary of Labor on Form 5500.  ERISA §103; Exhibit 29, Walker/NYLIM Ex. 5.  This is not the same document as the summary annual report.  With the exception of the SPD, the documents for which a written request is required are not the same as those which are required to be furnished to participants on a routine basis ***without*** request.

In *Davis v. Liberty Mutual Ins. Co.* the D.C. Court of Appeals found that ***no*** written request was required for summary plan descriptions under § 104(b)(1).  As the Court found, "the most natural reading of these two provisions [§§ 104(b)(1) and 104(b)(4)] is that section [104(b)(4)] imposes a duty on the administrator to furnish a plan description upon the occurrence of certain events . . . whereas section [104(b)(4)] speaks to the administrator's responsibilities with respect to requests for information that the administrator is not obligated to provide under section [104(b)(1)] . . . [S]ection [104(b)(1)], which imposes no written request requirement, creates a duty distinct from that imposed by section [104(b)(4)].  871 F.2d 1134, 1139 (D.C. Cir. 1989).  Although *Davis* did not raise any questions regarding summary annual reports required to be furnished under § 104(b)(3), the same analysis the court used would apply to those documents.  That section imposes a duty on the administrator to furnish a summary annual report at a certain time annually, a duty distinct from that imposed by §104(b)(4).

Based on this reading of the disclosure requirements, it is clear that the plan administrator was required, at the times specified in §104(b), to furnish Mrs. Walker with summary annual reports, summary plan descriptions, and summaries of plan modifications regardless of whether she requested them or not.  The Retirement Committee's failure to do so subjects the current and former members of the Committee who are Individual defendants to liability for breach of their fiduciary duty to Mrs. Walker under ERISA §404.

### 3. NYLIM failed to provide Plaintiff with plan documents which were required by ERISA to be provided to her on a regular basis without request

With regard to the summary annual reports, NYLIM has conceded that it was responsible for distribution of some documents. Op. at 12, Dkt. 82.  Indeed, under the DB Complete Service Agreement between PhRMA and NYLIM, the fiduciary responsibility for providing SARs was delegated by the Retirement Committee to NYLIM beginning in 2005.  Such delegation is allowed under the terms of the PhRMA plans.  While Mrs. Walker received a summary annual report for the Retirement Plan for the 2004 plan year in 2005, after NYLIM entered into its contract with PhRMA, no further reports were received until 2007?  No summary annual reports for plan years 2005 and 2006 were provided to Mrs. Walker by NYLIM (or by PhRMA).  As discussed above with regard to the Retirement Committee, to the extent that NYLIM did not provided SARs to Mrs. Walker  for plan years 2005 and 2006, they are also liable for breaching their fiduciary duty to her.

### 3. Retirement Com members failed to provide plan participants with accurate and complete information about the plans.

The evidence uncovered in discovery has shown that the Retirement Committee has been derelict in its duties to provide plan participants with accurate and complete information about the plans as required by ERISA.  Am. Compl. ¶ 68, ERISA §404(a)(1)(D).   In fact, the evidence demonstrates significant mismanagement of the plans by the Retirement Committee.

First, all the evidence in this case demonstrates that prior to this litigation[17] PhRMA never sent required plan documents to terminated vested participants in the plans.  This failure goes back at least as far as May 1988, when Mrs. Walker went off the PhRMA payroll and became, in PhRMA's eyes, a "terminated vested employee".  Defendant New York Life Investment Management entered into a contract to provide retirement plan services to PhRMA in 2005.  Ms. Abend testified that NYLIM sent Welcome Packets to retirement plan participants when their contract with PhRMA began in early 2005.  However, NYLIM did not send such information to terminated vested participants.  Exhibit 30, Abend dep. at 40, lines 13 – 18.  She testified that NYLIM was not given a list of terminated vested participants at the same time it received the list of other participants in the PhRMA plans.  *Id.* at lines 19-20.  In fact, PhRMA advised NYLIM not to send Welcome Packets to terminated vested participants.  *Id.* at 41, lines 2 – 12.  While the Welcome Packets were not documents required under ERISA to be sent to plan participants, the fact that NYLIM did not receive a list of terminated vested participants until March of 2005 suggests that there was no list of terminated vested

---

[17] As of 2009 Mrs. Walker has been receiving routine notifications and documents from the Retirement Committee.

participants readily available at the time. *Id.* at line 2.   Had terminated vested participants

been receiving plan communications previously on a regular basis, either PhRMA or its

prior third party administrator would have had such a list of such participants.   The delay

in getting the names of terminated vested employees to NYLIM suggests that no such list

existed, and that, as a result, no mailings were previously being sent to terminated vested

participants.

   This explanation is consistent with the fact that until this litigation began Mrs.

Walker has not received routine plan documents since she was classified as a terminated

vested participant in 1988.   Over the years Mrs. Walker has received no Summary Plan

Descriptions from PhRMA, despite the fact that ERISA requires that SPDs be sent every

5 years if there have been amendments to the plan and every 10 years even if there have

been no amendments.   ERISA §104(b)(1).   Nor has Mrs. Walker received any summaries

of modifications that are required to be sent to plan participants within 210 days after the

end of the plan year in which such changes were adopted. *Id.*   In addition, Mrs. Walker

has not receive the summary annual reports which are required to be sent to plan

participants annually.   ERISA §104 (b)(3).   Walker Decl. at 2, Dkt. 48.

   Second, the limited information that has been provided Mrs. Walker about her

accrued benefit under the Retirement Plan has been confusing and contradictory.   She

received one figure verbally from an accounting staff member who had been told that she

could not provide the information to Mrs. Walker.   *Id.*   It appears that the Retirement

Committee's actuary prepared a tentative calculation of Mrs. Walker's benefit as of April

11, 1988, prior to her leaving the staff, but this document was never provided to Mrs.

Walker.   Exhibit 31, Walker/NYLIM Ex. 12.   Moreover, there is no evidence that a final

computation was ever done based on her "actual earnings" which the actuary requested. *Id.* at 2.  In addition, the figure calculated by the actuary was less than the accrued benefit[18] provided to Mrs. Walker in 1985, three years prior to her leaving the payroll. Exhibit 32, Morales Ex. 24 at 2.  Although Mrs. Walker's counsel requested in writing a detailed calculation of how Mrs. Walker's benefit was determined, she was never provided with such a document. Exhibit 33, WALKER994-997.

The 1984 plan also required the Retirement Committee to provide participants with notice of their right to elect certain forms of benefits nine months before they reached age 55 and became eligible for early retirement.  Exhibit 1, Walker/Ind defs Ex. 9, Second Amendment at 3.  Mrs. Walker has never received this notification, and PhRMA's 30(b)(6) witnesses stated that no such notices are given. Exhibit 4, Morales dep. #2 at 132, lines 14-18.; Exhibit 30, Abend dep. at 57, lines 3 – 22.  Needless to say the information that has – and has not – been provided has been confusing, and has prevented Mrs. Walker from understanding clearly her benefits under the Retirement Plan.  Yet allowing participants to understand their benefits is one of the very reasons ERISA requires plan fiduciaries to provide them with accurate information about the plans.  This requirement is designed to "ensure[ ] that `the individual participant knows exactly where he stands with respect to the plan[.]'"  *Firestone*, supra. at ?.  Knowing where one stands with respect to a plan includes having the information necessary to determine one's eligibility for benefits under the plan, *Davis,* supra, and to understand one's rights under the plan. *Bartling,* supra at 1070.

---

[18] An "accrued benefit" is the benefit earned up to any given point in time, and cannot be reduced thereafter.

Mismanagement of the PhRMA plans extends also to basic recordkeeping.  The Retirement Committee lacks accurate and complete records, including copies of the essential plan documents, such as plan restatements, summary plan descriptions, and summary annual reports.  Exhibit 4, Morales dep. #2 at 34, line 15 through 38, line 10. Yet the Retirement Committee is required by the terms of the plans to maintain full and complete records, including records of all relevant data pertaining to individual Participants and their rights under the plans.  *See* Exhibit 5,  Walker/ Ind defs Ex 10 at 43.  In spite of this, the Individual defendants were unable to produce copies of any of the summary annual reports for plan years prior to 2003.  The only copy of the 1984 Retirement Plan provided by the defendants in this litigation has been a reproduction of a plan that Mrs. Walker had given them previously in discovery.  Exhibit 1, Walker/Ind defs Ex. 9.  The same is true of several other documents introduced as exhibits to depositions in this case.  Copies of the other key documents in effect in May 1988 have never been produced, and the PhRMA witnesses were unable to say whether PhRMA even has them.  Exhibit 4, Morales dep. #2 at 32, lines 7 – 17.

The Master List of plan documents kept in the PhRMA Human Resources Department files indicates that the Retirement Committee still, after 5 years of litigation, is missing the following plan documents: Retirement Plan restatements for 1984, 1989, 1990, 1994, 1998, 2002 and 2005, as well as certain versions of the 1996 and 1999 plans; SPDs for the Retirement Plans for 1984, 1989, 1994, 1996, 1999, 2002 or 2004.[19] Exhibit 34.  Nor does NYLIM have a comprehensive set of retirement plan documents. Ex. 30, Abend dep.  Yet as Ms. Abend testified, a copy of the plan document in effect

---

[19] The lack of the 2002 and 2004 SPDs for the Retirement Plan could explain why Mr. Morales is still distributing copies of the out-of-date 1999 SPD to new employees. Exhibit 24,  Morales dep.  #1 at 49, lines 8 – 15, 117, lines 16-17, and 118, lines 1 – 8.

when a participant leaves the payroll – as well as any subsequent amendments to the plan

-- is essential to understanding the terms of the plan as they apply to that individual.

Exhibit 30, Abend dep. at 72-73.

        In addition to failing to keep records of existing plan documents, the

Retirement Committee has never prepared a summary of material modifications, even

though this document is required whenever changes have been made to the plans, and the

PhRMA plans have been changed many times over the years.  ERISA § 104(b)(1),

Persinger dep. at 38, lines 17-20; Exhibit 4, Morales dep. #2 at 47, lines 2-4.

And when such changes have been made, the Retirement Committee has failed to provide

plan participants with accurate information regarding those amendments to the plans.  For

example, the Retirement Plan was amended in 2002 to delay the date when the spouse of

a participant who died before reaching early retirement could obtain benefits from when

the participant would have reached age 55 (early retirement date) to age 62 (normal

retirement date).  This was a significant amendment, in that it delayed the start of benefits

for a widow or widower by as much as seven years.  However, the Retirement Committee

did not notify participants through distribution of a summary of modifications within 120

days of the amendments' adoption.  ERISA § 104(b).  Worse, PhRMA published two

summary plan descriptions following the amendment which incorrectly stated that the

age for beginning preretirement spousal death benefits was still age 55, thus providing

participants with inaccurate information.  *See* Exhibit 24, Morales dep. #1 at p. 92, line 4

– 22 through p 105, line 14, Ex. 19[20].  Making this misrepresentation constitutes a breach

of the Individual defendants' fiduciary duty.  *Fischer,* supra, at 135  (holding that "[a]

_____

[20]After this problem was called to PhRMA's attention and discussed at length during Ms. Morales
deposition of June 8, 2009, the Retirement Committee adopted a new 2009 restatement of the plan which
reverses the 2002 amendment.

plan administrator may not make affirmative material misrepresentations to plan participants about changes to an employee pension benefit plan".)

Finally, while PhRMA's offices moved in 2006, participants were not notified of the changed address to be used for contacting the Retirement Committee until this year. Prior mailings to plan participants since PhRMA moved have contained the old address, Exhibit 35, Abend Ex. 21;  Exhibit 4, Morales Dep. #2, p. 62 line 8 though p. 64, line 4.

These problems in management of the plans range from minor (no change of address notice) to major (lack of notice of change in benefits for the spouse of a participant who died before age 55).  But the sheer number of problems and the length of time over which they have occurred clearly indicates mismanagement of the plans by the Retirement Committee.  This, in itself, is a breach of the Individual defendants' fiduciary duty to plan participants.  And clearly, the lack of oversight of plan administration by the Board of Directors is responsible for allowing these problems to continue for years.  This situation underscores the reason ERISA requires appointing fiduciaries to maintain constant vigilance over the activities of plan fiduciaries they have appointed.  29 CFR §2509.75-8, Q FR-17.

### a.  Members of the Board Failed to Exercise Their Fiduciary Responsibility

Members of the Board of Directors breached their fiduciary duty to Plaintiff and other plan participants under ERISA § 404(a) by failing to review the performance of the Retirement Committee and those to whom the Retirement Committee delegated its fiduciary duties.  The Board's responsibility for selection and retention of fiduciaries

includes the fiduciary responsibility for reviewing the performance of those fiduciaries to ensure that their performance has been in compliance with the terms of the plan and statutory standards.  That responsibility is explained in 29 CFR §2509.75-8, Q FR-17:

> "Q:  What are the ongoing responsibilities of a fiduciary who has appointed trustees or other fiduciaries with respect to these appointments?
>
> A:  At reasonable intervals the performance of trustees and other fiduciaries should be reviewed by the appointing fiduciary in such manner as may be reasonably expected to ensure that their performance has been in compliance with the terms of the plan and statutory standards, and satisfies the needs of the plan."

In spite of this requirement, members of the PhRMA Board of Directors failed to exercise their fiduciary responsibility for reviewing the performance of the Retirement Committee and others to whom the Retirement Committee delegated fiduciary responsibilities.  In fact, the Board appears to have taken pains to divorce itself from any opportunity to exercise that authority.  Del Persinger, one of PhRMA's Rule 30(b)(6) witnesses, testified that the Board of Directors "does not play a role in the plans", Exhibit 7, Persinger dep. at 15, line 17, or in the administration of the plans, *Id.* at 17, lines 6 – 9. Once Retirement Committee members are appointed, the Board has no further involvement with the Committee.  *Id.* at 23, lines 12-17.

Although the plan restatements clearly give the Board the responsibility for appointing, removing and replacing members of the Retirement Committee and other fiduciaries, Persinger tries to suggest that the Board does not even play that role.  Instead, he testified that membership of the Retirement Committee is "defined in its charter".  *Id.*

at 15, line 19-22 to 16, line 2[21]. In recent plans the Board has designated PhRMA employees holding certain positions or titles to serve on the Retirement Committee, Exhibit 7, Persinger dep. at 19, lines 6 – 15.  However, even if the Board avoids naming individuals to the Retirement Committee by designating employees holding certain titles, this does not absolve them of the responsibility for oversight and review, which is the fiduciary responsibility given to them in the plan document. *See*, *e.g.,* Exhibit 3, Walker/Ind Defs Ex. 17 at 20 (giving the Retirement Committee "full discretionary power and authority" over the plan.

The PhRMA witnesses also testified that the Board has delegated its responsibilities set forth in the plan. Exhibit 7, Persinger dep. at 17, lines 6 – 9.  Yet such delegation does not strip the Board of its fiduciary duties.  The Board must possess fiduciary responsibilities if they are given the power to delegate them.  *See Foley v. IBEW Local Union 98 Pension Fund,* 91 F. Supp.2d 797 (E.D. Pa. 2000).

PhRMA's 30(b)(6) witnesses also testified that the Board of Directors has not availed itself of provisions in the plan documents which authorizes the Board to designate a committee to review the activities of plan fiduciaries and advisors and to recommend to the Board the selection, retention, removal or however, replacement of . . .the members of the retirement Committee. Exhibit 9, 1999 Retirement Plan at 44; Exhibit 7, Persinger dep. at 18, line 4 – 17.  Although the Finance Committee and Nominations and Compensation Committee of the Board of Directors handle plan investments, they do not deal with the administration of the plans. *Id.* at 24, lines 2 – 21, Exhibit 4, Morales dep. #2 at 72, line 3 to 73, line 6, 73 at 19 – 22, 74 at 1 – 10. Those are the only Board

---

[21] The "charter" Persinger referred to is currently in draft form, so it could not affect the fiduciary duty of Board members for the selection and removal of Retirement Committee members or other fiduciaries during the time period in question in this case.  *See* Exhibit 36, WALKER1135-1136.

committees that would handle issues pertaining to the plans.  Exhibit 7, Persinger dep. at 29, line 22 to 30, line 15.

In addition, the full Board receives no information regarding the administration of the plans, Exhibit 4, Morales dep #2 at 74, lines 11 – 22, 75, line 1.  Nor does anyone ever report to the Board of Directors regarding plan administration.  Mr. Persinger and Ms. Morales testified that they had made no such reports, nor had anyone else.  Exhibit 7, Persinger dep. at 24, line 22 to 25, lines 1-18, 26, line 17 – 21, 29 at 1 – 4, Exhibit 24, Morales 1st dep. at 43, lines 3 – 18.  It appears that the Board has not even discussed the PhRMA plans in many years. Exhibit 7, Persinger dep. at 29, lines 1 – 4,  Exhibit 24, Morales 1st dep., at 43, line 12 – 18.

 Taken as a whole, the testimony of PhRMA's 30(b)(6) witnesses suggests that the Board of Directors has taken pains to distance itself from any responsibility for supervision of the Retirement Committee activities or of how the Retirement Committee was administering the plans.  Members of the Board of Directors cannot absolve themselves of fiduciary status merely by putting membership on the Retirement Committee on "autopilot" and abdicating their fiduciary obligations to plan participants to review the appointed fiduciaries to ensure that their performance has been in compliance with the terms of the plan and statutory standards.  As this Court said in *Eaton v. D'Amato*, Congress enacted ERISA as a comprehensive remedial statute, and a liberal construction is warranted to effect the statute's remedial purpose. 581 F.Supp. 743 (D.D.C. 1980). "Applying a restrictive judicial gloss to the term 'fiduciary' itself would, in effect, enable trustees to transfer important responsibilities to a largely immunized

'administrative' entity.  A clear congressional desire to expand the scope of fiduciary standards of conduct should not be so undermined."  *Id.* at 746.

**Relief Requested**

In *Varity Corp. v. Howe* the Supreme Court clarified that plaintiffs may state individual claims for breaches of fiduciary duty under ERISA. § 502(a)(3). 516 U.S. 489, 512 (1996).   Under the civil enforcement section of ERISA, that subsection provides that a civil action may be brought:

> (a)(3)  by a participant, beneficiary, or fiduciary
>
> (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or
>
> (B) to obtain other appropriate equitable relief
>
> (i)      to redress such violations or
>
> (ii)      to enforce any provisions of this subchapter or the terms of the plan.

ERISA §502(a)(3).  The Court noted that the language of Section 502(a)(3) was "broad enough to cover individual relief for breach of a fiduciary obligation." *Id.*  As was the case in *Varity* Mrs. Walker cannot proceed under section of 502(a)(1)(B), which allows participants to recover benefits due under the terms of the plan.  Her claim for benefits under the plan was tied to her claims that she had been erroneously classified as a contract worker and as a result had been denied benefits under the plans for the time worked under contract. That claim was dismissed by this Court.  Dkt. 82 at 15.  Because the Court determined that Mrs. Walker was not an employee during the period in

question, she is no longer entitled to seek "benefits due" in this litigation.  However, with

regard to her other claims – that defendants breached their fiduciary duty under ERISA §

404 – she may proceed under § 502(a)(3).

Mrs. Walker's remaining claims for relief for breach of fiduciary duty include

equitable relief, punitive damages, Eaton v. D'Amato, supra at 747, reasonable damages,

statutory penalties under ERISA §502(a)(1)(c), legal interest, attorneys' fees and costs of

this litigation under ERISA §502(g)(1), and any other general, legal or equitable relief  as

the Court may find appropriate.

### a.   Civil Penalties

In addition to being liable for breach of fiduciary duty to Mrs. Walker, the

Individual defendants who are or were members of the Retirement Committee, as the

plan administrator, are liable for civil penalties under § 502(c).

Mrs. Walker is entitled to civil penalties of up to $110 per day from the Individual

defendants who are or were members of the Retirement Committee, as the plan

administrator, for their failure to provide her with documents requested. She is also

entitled to "such other relief as [the Court] deems proper."  ERISA § 502(c)(1)(B).  That

section  provides that:

(1) Any administrator

(B) who **fails or refuses** to comply with a request for **any**

**information which such administrator is required by**

**this subchapter to furnish to a participant** or beneficiary

(unless such failure or refusal results from matters reasonably

beyond the control of the administrator) by mailing the

material requested to the last known address of the requesting

participant or beneficiary within 30 days after such request

may in the court's discretion be personally liable to such

participant or beneficiary in the amount of up to [$110][22] a day

from the date of such failure or refusal, and the court may in

its discretion order such other relief as it deems proper.  For

purposes of this paragraph, each violation described in

subparagraph (A) with respect to any single participant, and

each violation described in subparagraph (B) with respect to

any single participant or beneficiary, shall be treated as a

separate violation.

This section does **not** require a "written request."   The written-request requirement of

§ 104(b)(4) applies only to requests for information made under that section, not to

requests for information required by other ERISA sections.  Precisely this point was

made by the Ninth Circuit in *Crotty v. Cook*, 121 F.3d 541 (9th Cir. 1997).   In that case it

was held that an oral request is sufficient to trigger civil penalties for an administrator's

failure to provide information when the participant relies on a section other than §

104(b)(4). *See* 121 F.3d at 547-48. In *Crotty,* the participant orally requested the plan to

send him its SPD; the plan did not provide this document within ninety days of Crotty's

becoming a participant, even though this obligation is imposed on all plans by §

104(b)(1). Because subsection (b)(1) — unlike (b)(4) — does not require that a request

be made in writing before the SPD is provided, the Ninth Circuit held that the failure to

provide the SPD, in violation of subsection (b)(1), triggered the $100-a-day penalty. *See*

---

[22] The statutory penalty of $100 per day was increased to $110 per day in 1997.  29 CFR 2575.502c-1.

*id.; Davis v. Liberty Mutual Ins. Co.,* supra.  ("[S]ection [104(b)(1)], which imposes no written request requirement, creates a duty distinct from that imposed by section [104(b)(4)]."). Thus the Retirement Committee's failure to comply with any oral request for information that ERISA requires the plan to provide is sufficient to trigger statutory damages, provided that the Act does not explicitly state that the request for the relevant documents or information must be made in writing. *See Crotty,* 121 F.3d at 548.  While Mrs. Walker's request of August 2003 request to Deb Barnes for summary annual reports required to be provided by § 104(b)(3) **was** in writing, the evidence of that email exchange has been lost by both parties.  Clearly, though, a request was made as evidenced by the mailing to Mrs. Walker on August 27, 2003.  Should the Court find that Mrs. Walker's request was not in writing, the Individual defendants would still be subject to the penalty provision of § 1132(c) pursuant to an oral request.

The evidence in this case is such that Mrs. Walker believes she should be awarded the maximum civil penalty.  While the statute provides no guidance as to the determination of the amount to be awarded under ERISA § 502(c)(1)(B), the courts have considered such factors as bad faith on the part of the employer and prejudice to the plaintiff in making such awards. However, prejudice is not a prerequisite to an award of civil penalties.  *Curry,* 891 F.2d at 847.  *See also Sage v. Automation Inc. Pension Plan & Trust,* 845 F.2d 885, 894 n.4 (10th Cir. 1988) ("[w]hen plan representatives are completely indifferent to reasonable requests for plan and benefit information, a district court, in its discretion, may impose a penalty, even absent 1) a showing of bad faith on the part of plan representatives, and 2) a showing of prejudice caused by a lack of prompt disclosure.")

In *Kascewicz,* the court found that "prejudice is just one factor, albeit a significant one. . . Another factor that we find at least equally significant is the conduct of the plan administrator in responding to the participant's request for plan documents required by ERISA . . . The statutory penalty provision 'is in the nature of punitive damages designed more to punish the intransigent administrator and to teach ERISA fiduciaries a needed lesson than to compensate the [plan participant] for actual loss.' *Sandlin v. Iron Workers Dist. Council Pension Plan,* 716 F.Supp. 571, 574 (N.D. Ala. 1988), aff'd without opinion, 884 F.2d 585 (11th Cir. 1989)." *Kascesicz,* supra at 1322.

In the instant case, Mrs. Walker *has* been prejudiced.  She was forced to retain counsel and initiate this lawsuit in order to determine her rights under the plans.  *Id.  See also Curry,* 891 F.2d at 847 n. 10 (need to retain counsel may constitute prejudice).  She has been unable to engage in long-range retirement planning as she is uncertain about her benefits under the plans.  And she has suffered physical and emotional distress and loss of professional time based on the need to engage in this prolonged litigation.

The Individual defendants have shown bad faith throughout this case.  In 2002, they failed to provide Mrs. Walker with the very plan documents that were in effect when she went off the payroll in 1988 and which would be dispositive of her rights and benefits under the plans.  The failure to supply some of the documents requested may have been an oversight, but the failure to provide the documents effective in 1988, which were critical to her case, appears to have been a deliberate attempt to prevent Mrs. Walker from effectively appealing the Retirement Committee's denial of her claim to benefits.

In addition, the Individual defendants have gone out of their way throughout this case to avoid confirming which version of the plan governs her benefits.  Exhibit 4,

Morales #2, p 42, line 3 – 22 and page 43, line 1-2; Exhibit 24, Morales #1, p 25, line 18.

As plan administrator the members of the Retirement Committee should have no

difficulty in ascertaining which plans apply to Mrs. Walker's benefits.  In their Answer to

Mrs. Walker's Request for Admissions the Individual defendants finally conceded that

Mrs. Walker's benefits "would have been calculated under the plan documents in effect

when she terminated employment in May 1988." Exhibit 23, Morales Ex. 1 at 4.

However, while stating that those documents "have previously been produced to

Plaintiff", *id.* at 5, that has not been the case.  As Mrs. Walker has testified, of the four

plan documents in effect in 1988[23] only one -- the 1984 Retirement Plan – has surfaced in

this case.  That document was located by Mrs. Walker through sources outside of

PhRMA.

The Individual defendants have also refused to give her an accurate statement of

her benefit under the Retirement Plan, or a calculation showing how her benefit was

determined.  As documents provided to Mrs. Walker just recently show, PhRMA failed to

provide such a calculation when it was requested by Mrs. Walker's counsel in 2005[24].

Exhibit 33.  A calculation of this benefit was apparently provided to the Retirement

Committee by NYLIM. Exhibit 30, Abend dep.

Finally, bad faith is demonstrated by the Individual defendants failure to provide

documents required by ERISA to plan participants at least since November 15, 1998[25]

---

[23] The four documents in question are the 1984 Retirement Plan, its SPD, the Deferred Savings Plan in effect in 1988 and its SPD.

[24] If such a document does exist, it has not been produced in this litigation.

[25] In its Order of August 7, 2008 the Court held that Mrs. Walker's claims for breach of fiduciary duty prior to November 15, 1998 are time barred.  Dkt. 82 at 15.

and probably as far back as 1988.  This failure was clearly more than an oversight.

PhRMA is one of the largest and most sophisticated trade associations in Washington,

D. C.  It employs almost 200 people, and employs outside pension counsel as well as an

outside administrator for its retirement plan. Its annual budget is "upwards of $200

million", and its Human Resources Department has an annual budget of $20 million.

Exhibit 4, Morales dep. #2, 92 at 4-12.  It certainly has the staff and resources to run it

retirement benefit plans in an orderly and efficient manner that complies with both

ERISA and the terms of its plans.  Like other such employers, "[i]t certainly knows how

to comply with ERISA's requirements".  *Kascewicz* at 1323.  The Retirement

Committee's failure to provide plan documents both requested and required by ERISA to

be provided on a regular basis, as well as its mismanagement of the plans, "cannot be due

to the lack of resources for processing document requests expeditiously."  *Lowe v.

McGraw-Hill Companies, Inc.,* 361 F.3d 335 at 338 (7th Cir. 2004).   Given that the

Individual defendants have no excuse for their failures in this case, Mrs. Walker urges the

Court to impose the maximum civil penalty of $110 per day.  ERISA §502(c)(1).

### b.  Equitable Relief

Mrs. Walker is entitled to equitable relief under ERISA § 502(b).  She requests

that the Court enter an order against the Retirement Committee enjoining them from

reducing her benefit under the Retirement Plan to any amount less than the benefit

amount provided to her on her Benefit Statement of 1985.  The anti-cutback rule makes it

impossible for her benefit to have been reduced after it was accrued.  In fact, due to three

additional years of employment following that statement, Mrs. Walker's benefit should

be higher than the amount the Retirement Committee reported to her at that time.  It is

unclear why the benefit amount reported to her in 1985 is higher than the amount currently reported on her benefit statement through NYLIM's Benefits Complete website.

However, given the defendants' poor recordkeeping, it may be virtually impossible to accurately recalculate Mrs. Walker's benefit as of the date she went off the payroll, May 2, 1988.  Clearly, the benefit amount set forth in the letter from PhRMA's actuaries in April of 1988 is inaccurate because, as the actuary states, it is a preliminary calculation not based on final payroll numbers.  Exhibit 37, Walker/NYLIM dep. Ex. 12. Given that difficulty and in the interests of resolving this lawsuit without further delay, Mrs. Walker requests that the Court enjoin defendants from reducing her benefit from the benefit set forth in the her 1985 Benefit Statement.

### c.  Other relief

Mrs. Walker requests any other general, legal or equitable relief as the Court may find appropriate, including  punitive damages, reasonable damages, legal interest, attorneys' fees and costs under ERISA §502(g)(1) and any other relief the Court may deem appropriate.

Respectfully submitted,

/s/ Barbara J. Walker
Barbara J. Walker

August 10, 2009

45