UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| BARBARA J. WALKER, </br></br>    Plaintiff, </br></br>    v. </br></br>PHARMACEUTICAL RESEARCH AND MANUFACTURERS OF AMERICA, </br></br>et al., </br></br>    Defendants. | Case No. 1:04CV01991 </br> Judge: Ricardo M. Urbina |

### INDIVIDUAL DEFENDANTS' LOCAL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS

Pursuant to Local Rule 56.1, the Individual defendants submit this statement of undisputed material facts in support of their motion for summary judgment.

**A.   The PhRMA Retirement and Deferred Savings Plans.**

1. The Pharmaceutical Research and Manufacturers of America ("PhRMA") Retirement Plan is a defined benefit pension plan sponsored by PhRMA for the benefit of its employees. (*See*, *e.g.*, Exs. 1.A & 1.B.) PhRMA adopted the Retirement Plan effective April 1, 1962, and has amended and restated the Plan from time to time through the present day. (*See* Ex. 1.B, 2009 Retirement Plan § 1.1 at WALKER1205.)

2. The PhRMA Deferred Savings Plan is a defined contribution retirement plan sponsored by PhRMA for the benefit of its employees. (*See*, *e.g.*, Ex. 1.C.) PhRMA adopted the Deferred Savings Plan effective January 1, 1986, and has amended and restated the Plan from

time to time through the present day.  (*See* Ex. 1.C, 1998 Deferred Savings Plan § 1.1 at WALKER235.)

3. The PhRMA Retirement Committee is the plan administrator for the Retirement Plan and the Deferred Savings Plan (collective, the "Plans"), and has "full discretionary power and authority for control and administration" of the Plans.  (*See*, *e.g.*, Ex. 1.A, 1996 Retirement Plan § 9.1(d) at WALKER388; Ex. 1.C, 1998 Deferred Savings Plan § 9.1(d) at WALKER254.  *See also* Dkt. 86, Am. Compl. ¶ 12.)

4. Consistent with the terms of the Plan, the Summary Plan Description ("SPD") for the Retirement Plan provides further that the Retirement Plan "is administered by the Retirement Committee according to the Plan document."  (*See*, *e.g.*, Ex. 1.D, 1996 Retirement Plan SPD at BJW01473.)  The SPD for the Deferred Savings Plan similarly identifies the Retirement Committee as the plan administrator.  (*See*, *e.g.*, Ex. 1.F, 1996 Deferred Savings Plan SPD at WALKER211.)

5. The terms of the Plans also allocate fiduciary responsibility for statutory disclosures and participant communication to the Retirement Committee.  (*See*, *e.g.*, Ex. 1.A, 1996 Retirement Plan § 9.1(d) at WALKER388; Ex. 1.C, 1998 Deferred Savings Plan § 9.1(d) at WALKER254.)

6. By contrast, PhRMA's Board of Directors is *not* the plan administrator for either the Retirement Plan or the Deferred Savings Plan and has not ever been the plan administrator for either Plan.  (*See* Ex. 2, Pl.'s Resp. RFA Nos. 2 & 4.)  The terms of the Plans also *do not* allocate any fiduciary responsibility for statutory disclosures and participant communication to the Retirement Committee.  (*See*, *e.g.*, Ex. 1.A, 1996 Retirement Plan § 9.3 at WALKER393; Ex. 1.C, 1998 Deferred Savings Plan § 9.3 at WALKER256-57.)

### B. Plaintiff's Employment with PhRMA

7. Plaintiff Barbara Walker is a former PhRMA employee who began her employment with the legal department of PhRMA's predecessor organization, the Pharmaceutical Manufacturers' Association in December 1977, as Regional Director for State Government Relations.  (Ex. 16 at 27:18-21.)  Plaintiff was subsequently promoted to the positions of Staff Attorney, Assistant General Counsel, and Associate General Counsel.  (*Id.* at 27:22-28:16.)

8. Plaintiff worked continuously for PhRMA as a full-time employee between December 1977 and May 1988.  (*See* Dkt. 15, PhRMA Defs.' Mot. Summ. J., Powell Decl. Exs. 1-6.)  While employed by PhRMA as a full-time employee, plaintiff was an employment law specialist for PhRMA and had primary responsibility for reviewing PhRMA's employment-related matters.  (*Id.*, Powell Decl. ¶¶ 4-5.)

9. Plaintiff also worked on a number of employee benefit matters while employed by PhRMA as a full-time employee.  For a "couple of years," plaintiff was responsible for updating PhRMA's employee handbook, including the handbook's descriptions of the various benefits offered to employees.  (Ex. 16 at 30:2-31:3.)  Plaintiff also recalls working with PhRMA's outside pension counsel, Russ Gadreaux at Ropes & Gray, on a project related to the Retirement Plan.  (*Id.* at 31:4-17.)

### C. Plaintiff's Work for PhRMA as an Independent Comtractor.

10. Plaintiff left the PhRMA payroll effective May 2, 1988, but her resignation as a full-time employee did not end her relationship with PhRMA.  (*See* Dkt. 15, PhRMA Defs.' Mot. Summ. J., Powell Decl. Ex. 8.)  Between May 1988 and June 2002, plaintiff entered into a series of one-year agreements whereby she continued to provide legal services to PhRMA as an independent contractor.  (*Id.*)

3

11. While retained under these agreements, plaintiff continued to perform labor and employment legal work for PhRMA.  This work included a number of matters that required her to review the Retirement and Deferred Savings Plans, and she was provided with copies of the Plans to perform those matters.  (*See* Ex. 16 at 34:14-16.)

12. For example, in 1991, plaintiff authored a comprehensive memorandum for PhRMA's General Counsel, Bruce Brennan, regarding the eligibility of part-time employees for benefits under the terms of the Retirement and Deferred Savings Plans.  (*See* Ex. 11.)  In preparing this memorandum, plaintiff reviewed the both the Retirement Plan and the Deferred Savings Plan.  (*See* Ex. 16 at 48:11-13, 49:15-16.)

13. Plaintiff also continued to be responsible for preparing, updating, and correcting the employee benefit provisions of PhRMA's employee handbooks, which also attached the SPDs for the Retirement and Deferred Savings Plans.  (*See*, *e.g.*, Ex. 16 at 51:10-17, 57:7-8, 62:15-20.  *See also* Ex. 17 at 42:20-43:4.)  Plaintiff recalls revising the June 1997 and July 1998 versions of the employee handbook, and her handwritten annotations and edits appear in the provisions of those handbooks relating to benefits under the Retirement and Deferred Savings Plans.  (*See* Exs. 9 & 10; Ex. 16 at 54:14-58:11.)

14. In 1997, plaintiff authored a memorandum analyzing PhRMA's use of consultants and independent contractors, and the tax and other legal issues, including pension obligations, arising from those work arrangements.  (*See* Dkt. 15, PhRMA Defs.' Mot. Summ. J., Powell Decl. ¶ 6.)

15. During the time period between May 1988 and June 2002, plaintiff also became "generally familiar" with the provisions of the Retirement and Deferred Savings Plans "so that she could respond to basic questions from PhRMA employees" about the Plans.  (*See*

Ex. 12 at WALKER818 n.12.)  Walker "looked at the summary plan descriptions" for the Plans and became generally familiar with the plan documents in order to answer employee questions regarding the Plans' eligibility requirements, how participants' benefits were calculated under the Plans, and the Plans' vesting requirements.  (*See* Ex. 16 at 39:15-41:13.)

        **D.**        **Plaintiff's Participation in the Retirement and Deferred Savings Plans.**

16. While employed by PhRMA as a full-time employee between 1977 and 1988, plaintiff was eligible to participate in the Retirement Plan and, starting with its adoption in January 1986, the Deferred Savings Plan.  (*See*, *e.g.*, Ex. 1.A, 1996 Retirement Plan §§ 3.1-3.2 at WALKER361; Ex. 1.C, 1998 Deferred Savings Plan § 3.1 at WALKER254.)

17. PhRMA's long-standing practice and procedure is to provide Plan participants with all notices, disclosures, and other correspondence required by the ERISA statute.  (*See*, *e.g.*, Ex. 19 at 49:21-50:7 (summary annual reports), 95:12-96:3 (summary plan description).)

18. Plaintiff does not recall whether or not she received SPDs or regular benefit statements for the Retirement Plan while employed by PhRMA as a full-time employee between 1977 and 1988.  (*See* Ex. 16 at 66:4-12.)  Plaintiff does recall "occasionally" receiving summary annual reports during that time period.  (*Id.* at 66:13-19.)

19. Plaintiff does not recall ever receiving any SPDs, benefit statements, or summary annual reports for the Deferred Savings Plan while employed by PhRMA as a full-time employee between 1977 and 1988.  (*See* Ex. 16 at 69:1-10.)

20. Upon terminating employment with PhRMA in 1988, plaintiff received a statement explaining her accrued benefit in the Retirement Plan.  (*See* Ex. 13.)  Plaintiff's benefit statement indicated that her accrued benefit was an age-65 annuity that would provide her with a monthly benefit payment of $1,384.80.  (*Id.*)

21. Plaintiff remained a participant in the Retirement Plan after she terminated employment with PhRMA in May 1988, and remains a participant in the Retirement Plan today. (*See*, *e.g.*, Ex. 15.)

22. Plaintiff claims that she was also a participant in the Deferred Savings Plan, but neither PhRMA nor the Plan's third-party administrator has any record that plaintiff participated in the Deferred Savings Plan at any time after she terminated employment with PhRMA in May 1988. (*See* Morales Decl. ¶¶ 3-4.)

23. Plaintiff recalls receiving, without request, certain notices, disclosures, and other communications relating to the Retirement Plan between May 1988 and the present day. For example, plaintiff acknowledges that she received a summary annual report for the Retirement Plan in 2005. (*See* Ex. 17 at 46:22-47:17.) Plaintiff also received, in early 2009, a statement of her Retirement Plan benefit as of December 31, 2008, which indicated that her accrued benefit was an age-65 annuity that would provide her with a monthly benefit payment of $1,384.80. (*See* Ex. 15.) And plaintiff also received an "annual funding statement" for the Retirement Plan in April 2009. (*See* Ex. 17 at 47:22-48:7.)

**E.     Plaintiff's August 2002 Document Request.**

24. In 2002, plaintiff filed two administrative claims with the Retirement Committee, asserting that she was entitled to benefits under the Retirement and Deferred Savings Plans for the period between 1988 and 2002 when she performed services for PhRMA as an independent contractor. The Retirement Committee denied plaintiff's initial administrative claims on July 15, 2002. (*See generally* Exs. 3 & 4.)

25. On August 26, 2002, plaintiff submitted two letters to the Retirement Committee requesting documents pertinent to her administrative appeal the Committee's adverse benefit determinations. (*See* Exs. 3 & 4.) Plaintiff titled one letter "Re: My Claim for Benefits

Under the PhRMA Retirement Plan." (Ex. 3.)  Plaintiff titled her other letter "Re: My Claim for Benefits Under the PhRMA Deferred Savings Plan."  (Ex. 4.)

26. Plaintiff's letters cited and mirrored the Department of Labor's regulation setting forth the administrative requirements for a "full and fair review" of an adverse benefit determination.  (*See* Exs. 3 & 4.)  Plaintiff's letters also attempted to describe the scope of the administrative record, but plaintiff's descriptions identified a number of documents that were not in the administrative record.  (*Id.*)

27. On September 5, 2002, the Retirement Committee wrote to plaintiff in an effort to clarify her August 26 letters, which the Committee viewed as "ambiguous."  (*See* Ex. 5.)  The Committee explained that it intended to respond to plaintiff's letters by producing the administrative record for her claims, but the Committee also invited plaintiff to submit a further request if she wished to receive documents from beyond the administrative record.  (*Id.*)  Plaintiff did not respond to the Committee's September 5 letter.

28. On September 26, 2002, the Retirement Committee produced the administrative record for plaintiff's benefit claims.  (*See* Ex. 6.)  The record included, among other documents, the 1994 and 1999 restatements of the Retirement Plan, 1989 restatement of the Deferred Savings Plan, the 2002 SPD for the Retirement Plan, and the 1996 SPD for the Deferred Savings Plan.  (*See* Ex. 2, Pl's Resp. Interrog. No. 8.)

29. Plaintiff first believed that the Retirement Committee had not produced all documents responsive to her August 26 requests when she "received their response" in September 2002. (Ex. 16 at 124:6-11, 133:19-22.)  She thought that this "may have been an innocent oversight" by the Retirement Committee. (*Id.* at 135:7-9.)

7

30. Plaintiff did not ever contact the Retirement Committee in an effort to obtain the documents that she believed the Committee had failed to produce. (Ex. 16 at 135:10-15.) Instead, beginning in September 2002, plaintiff obtained these documents from "other sources," including "a number of former coworkers" at PhRMA. (*Id.* at 132:4-7, 135:16-136:9.)

### F. Plaintiff's August 2003 Document Request.

31. Plaintiff claims that on an unspecified date in August 2003, she e-mailed PhRMA's controller, Deborah Barnes, to request copies of the summary annual reports for the Retirement and Deferred Savings Plans for the 2002 plan year. (Dkt. 75 at 9-10.)

32. Plaintiff has been unable to produce any record of this alleged request. (*See* Ex. 2, Pl's Resp. Interrog. No. 6.)

33. On August 27, 2003, the Retirement Committee provided plaintiff with copies of the summary annual reports for the Retirement and Deferred Savings Plans for the 2001 plan year. (Ex. 7.)

34. The documents provided by the Retirement Committee were the most recently issued summary annual reports available for the Plans at the time of plaintiff's alleged request. PhRMA did not prepare the Plans' 2002 summary annual reports until December 2003. (Ex. 8.)

### G. Plaintiff's Claims for Statutory Penalties and Damages.

35. Plaintiff's most recent calculation of damages, produced pursuant to Fed. R. Civ. P. 26(a)(1)(A)(iii), claims that she is entitled to at least $1,292,100 in statutory penalties for the Individual defendants' alleged failure to respond fully to her August 2002 and August 2003 requests. (Ex. 21.)

36. Plaintiff claims that she is entitled to at least $450,000 in damages for the Individual defendants' alleged failure to produce other plan-related notices and disclosures that plaintiff did not ever request from the Retirement Committee. (Ex. 21.)

|  |  |
|---|---|
|  | /s/ Frederick G. Sandstrom<br>Jeffrey G. Huvelle (#227769)<br>Frederick G. Sandstrom (#495069)<br>COVINGTON & BURLING LLP<br>1201 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20004-2401<br>202-662-5499<br>202-778-5499 (Facsimile) |
| August 10, 2009 | *Attorneys for the Individual defendants* |