**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                    )
**BARBARA J. WALKER,**                   )
                                                    )
            **Plaintiff,**                        )
                                                    )
      **v.**                                        )          **Case No.  1:04CV01991**
                                                    )          **Judge:  Ricardo M. Urbina**
**PHARMACEUTICAL RESEARCH AND**  )
**MANUFACTURERS OF AMERICA,**   )
                                                    )
                                                    )
**et al.,**                                         )
                                                    )
            **Defendants.**                     )
_____)

### INDIVIDUAL DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

The Individual defendants submit this memorandum in support of their motion for summary judgment on plaintiff's two remaining claims in this "lengthy litigious saga." (Dkt. 82 at 1.)  Through those claims, plaintiff asks the Court to award statutory penalties and other damages in excess of $1,742,000 for the Individual defendants' allegedly insufficient response to two requests for ERISA plan documents in August 2002 and August 2003, and the Individual defendants' alleged breach of fiduciary duty in not providing other plan-related disclosures that plaintiff did not request.  Summary judgment is appropriate on plaintiff's statutory penalty claims because those claims are time-barred by a one-year statute of limitations and, alternatively, fail on the merits.  Summary judgment is appropriate on plaintiff's breach of fiduciary duty claims because ERISA does not, absent a specific document request, create a substantive remedy for disclosure violations and, alternatively, because plaintiff cannot establish that she was harmed by an alleged failure to disclose.

## BACKGROUND FACTS

Defendants hereby incorporate their statement of undisputed facts, submitted pursuant to Local Rule 56.1.

## PROCEDURAL HISTORY

Plaintiff commenced this litigation on November 15, 2004, when she filed her original complaint against PhRMA, the PhRMA Retirement and Deferred Savings Plans ("Plans"), the PhRMA Retirement Committee, and 12 members of PhRMA's Board of Directors. (Dkt. 1.)  Plaintiff subsequently amended her complaint to add two institutional defendants, New York Life Insurance Company and New York Life Investment Management, and 45 additional individual defendants, consisting of current and former members of either PhRMA's Board or the Retirement Committee.  (Dkt. 13.)  Plaintiff asserted three causes of action under ERISA §§ 404, 502(a)(1)(B), and 510, and two causes of action under District of Columbia common law.

Plaintiff served her complaint first on the "PhRMA defendants" (PhRMA, the Plans, and the Retirement Committee), who moved for summary judgment in October 2005. (Dkt. 15.)  The Court granted the PhRMA defendants' motion in July 2006, holding that all of plaintiff's ERISA claims were time-barred and that ERISA preempted plaintiff's common law claims.[1]  (Dkt. 33.)

Plaintiff thereafter served her complaint on the Individual defendants (the 57 members of PhRMA's Board or Retirement Committee), who moved to dismiss, and the two New York Life defendants, who moved for summary judgment.  (Dkt. 38, 39.)  Both motions asserted that the Court's prior summary judgment decision foreclosed plaintiff from pursuing her

---

[1] Plaintiff moved for reconsideration of the Court's July 2006 summary judgment decision, which the Court denied in November 2006.  (Dkt. 52.)

claims against other defendants.  The Court agreed, and in August 2008 dismissed plaintiff's claims against the Individual and New York Life defendants to the extent that they mirrored her prior claims against the PhRMA defendants.  (Dkt. 82.)  However, the Court "stay[ed] its hand" with respect to one part of a new argument that plaintiff had devised – that the Individual and New York Life defendants "defaulted in their obligations to provide information to her as a former employee and plan participant."  (*Id.* at 12.)  To the extent that plaintiff sought to pursue this new argument through a breach of fiduciary duty theory under ERISA § 404, the Court allowed plaintiff to proceed with claims that accrued on or after November 15, 1998.  (*Id.* at 14-15.)

Following the Court's opinion, plaintiff moved to again amend her complaint to clarify that ERISA § 502(c) provided a second and separate basis for her disclosure allegations. (Dkt. 98-2 at ¶ 8.)  The Individual and New York Life defendants both opposed plaintiff's motion on futility grounds, arguing the plaintiff did not possess an actionable § 502(c) claim. (Dkt. 99, 101.)  The Court permitted plaintiff's proposed amendment, explaining that the defendants' challenges to plaintiff's new § 502(c) allegations were "more appropriately lodged in a motion to dismiss" or other dispositive motion.  (Dkt. 108 at 8.)

## PLAINTIFF'S SURVIVING CLAIMS

Plaintiff's surviving claims seek more that $1,742,000 in penalties and damages from the Individual defendants under two separate theories.  First, plaintiff asserts that the Court should exercise its discretion to award statutory penalties under ERISA §§ 502(a)(1)(A) and 502(c) based on the Individual defendants' response to two written document requests – one that she submitted to the Retirement Committee in August 2002, and another that she claims to have e-mailed to a representative of the Retirement Committee in August 2003.  Second, plaintiff

asserts that the Individual defendants breached their fiduciary duties under ERISA § 404 by failing to provide her with other documents that she did not request, but claims she was entitled to receive under ERISA's notice and disclosure provisions.

The Individual defendants now move for summary judgment.

## SUMMARY JUDGMENT STANDARD

Summary judgment should be granted with respect to a claim or defense where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Heller v. Fortis Benefits Ins. Co.*, 142 F.3d 487, 492 (D.C. Cir. 1998).  In assessing whether a material fact is subject to a genuine dispute, a court should employ a standard essentially identical to that governing a Motion for a Directed Verdict under Rule 50(a).  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  A party opposing summary judgment "may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); *Heller*, 142 F.3d at 492.  If a rational fact finder could not find in favor of the non-moving party, summary judgment should be granted to the moving party.  *Anderson*, 477 U.S. at 250-51.

## LEGAL ARGUMENT

I.   **Summary Judgment is Appropriate on All of Plaintiff's Claims Relating to the PhRMA Deferred Savings Plan Because She Was Not a Plan Participant.**

ERISA's civil enforcement provision, § 502(a), limits statutory standing to plan "participants" and "beneficiaries," as well as (in limited circumstances) plan fiduciaries and the Secretary of Labor.  *See* 29 U.S.C. § 1132(a).  *See also Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 27 (1983) ("ERISA carefully enumerates the parties entitled to seek relief under § 502; it does not provide anyone other than participants, beneficiaries, or fiduciaries

with an express cause of action[.]").  Plaintiff cannot maintain any of her surviving claims insofar as they relate to the Deferred Savings Plan because she is not a participant in that Plan. *See* ERISA § 3(7), 29 U.S.C. § 1002(7).[2]

To have "participant" standing under ERISA, plaintiff must either be an active participant in the Deferred Savings Plan, or have a "colorable claim" to benefits under the terms of the Plan. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117-18 (1989).  Plaintiff fails both prongs of this test.  Plaintiff is not currently a participant in the Deferred Savings Plan, and records maintained by PhRMA and the Plan's benefits administrator confirm that, at a minimum, Plaintiff has not participated in the Plan at any time since she terminated employment with PhRMA in 1988.  (Ex. 1, Morales Decl. ¶¶ 3-4.)  Plaintiff also does not have any colorable claim to benefits under the Plan; the Court has already dismissed her benefit claims as time-barred. (Dkt. 33 at 5-7.)

Statutory standing is an indispensable prerequisite to any ERISA claim, including plaintiff's claims for statutory penalties and breach of fiduciary duty.  *See Chuck v. Hewlett-Packard Co.*, 455 F.3d 1026, 1038-39 (9th Cir. 2006).  Because plaintiff does not have standing under ERISA § 502(a), the Court should grant summary judgment to the Individual defendants on all of plaintiff's surviving claims that relate to the Deferred Savings Plan.

## II.   Summary Judgment is Appropriate on Plaintiff's Claims Under ERISA § 502(c).

Plaintiff first asks the Court to award more than $1,200,000 in statutory penalties under ERISA §§ 502(a)(1)(A) and 502(c) based on the Individual defendants' response to two

---

[2]  In fact, plaintiff's second amended complaint does not anywhere allege that she ever was a participant in the Deferred Savings Plan.  (*See* Dkt. 86, 109.)  Plaintiff also does not, and cannot, assert that she is a beneficiary under the Deferred Savings Plan. *See* ERISA § 3(8), 29 U.S.C. § 1002(8).

requests to plan documents that she allegedly made in August 2002 and August 2003.[3]

Summary judgment is appropriate on these claims for three separate reasons.  *First*, plaintiff's

claims are subject to a one-year statute of limitations and are therefore time-barred.  *Second*,

plaintiff cannot state a § 502(c) claim against the individual "Board" defendants who were not

members of the plan administrator, the Retirement Committee.  *Third*, plaintiff's claims fail on

the merits because the undisputed facts do not support any discretionary penalty under § 502(c).

### A.    Plaintiff's § 502(c) Claims Are Time-Barred by the One-Year D.C. Code § 12-301(5) Statute of Limitations.

Because federal law does not contain a statute of limitations for ERISA § 502(c)

claims, the Court must look to the limitations period for the most analogous claim under the law

of the forum state.  *Connors v. Hallmark & Son Coal Co.*, 935 F.2d 336, 341 (D.C.Cir. 1991).

*See also Iverson v. Ingersoll-Rand Co.*, 125 Fed. App'x 73, 76 (8th Cir. 2004).  The rule across

the federal courts is clear that "section 502(c)(1) is of a penal rather than a compensatory

nature."  *Iverson*, 125 Fed. App'x at 77.  *See also Bartling v. Fruehauf Corp.*, 29 F.3d 1062,

1068 (6th Cir. 1994) (the "purpose of [§ 502(c)] was to induce administrators to timely provide

participants with requested plan documents and to *penalize* failures to do so") (emphasis added);

*Groves v. Modified Ret. Plan*, 803 F.2d 109, 117 (3d Cir. 1986) (§ 502(c) "is a penal provision").

"Because § 502(c)(1) is penal in nature, the most analogous statute must involve an action for a

civil penalty and/or forfeiture."  *Gregorovich v. E. I. DuPont De Nemours*, 602 F. Supp. 2d 511,

517 (D. Del. 2009).  *See also Tritt v. ADP, Inc. LTD Plan Admin.*, No. 3:06 CV 2065 (CFD),

2008 U.S. Dist. LEXIS 41208, at *23-24 (D. Conn. May 27, 2008) (collecting cases and finding

that "numerous district courts have concluded that Section 502(c) is most analogous to civil

---

[3]  Section 502(c), enforced through § 502(a)(1)(A), provides that the Court may hold an ERISA plan administrator liable for a discretionary penalty of up to $110 per day if the administrator fails to respond to a participant's request for certain plan documents within 30 days of the date of the request.  *See* 29 U.S.C. § 1132(c).  *See also* 29 C.F.R. § 2575.502c-3 (2009).

penalty statutes").[4]  The District of Columbia, like most states, has a one-year statute of limitations for claims seeking "a statutory penalty or forfeiture."  D.C. Code § 12-301(5).[5]

Although District of Columbia law provides the statute of limitations for plaintiff's § 502(c) claims, federal common law governs the date when plaintiff's cause of action accrued.  *Connors*, 935 F.2d at 341.  On this point, the plain language of the statute is unambiguous: "Section 502(c) explicitly provides that an administrator's failure to respond to a plan participant's document request within thirty days is actionable."  *Tritt*, 2008 U.S. Dist. LEXIS 41208, at *26-27.  Accordingly, "[a] claim for civil penalties for unreasonable delay in providing pension documents accrues when (1) a plaintiff makes a demand for information to which he is entitled under ERISA; and (2) the defendant fails to supply the requested information within thirty days of the demand."  *Gregorovich*, 602 F. Supp. 2d at 517.  *Accord Tritt*, 2008 U.S. Dist. LEXIS 41208, at *26 (§ 502(c) claim accrued "thirty days after [plaintiff] made [her] request"); *Adams v. Cyprus Amax Mineral Co.*, 44 F. Supp. 2d 1126, 1140 (D. Colo. 1999) (same).

---

[4]  *Accord Valentino v. Continental Cas. Co.*, No. 99-1101, 2000 U.S. Dist. LEXIS 20596, at *6-8 (W.D. Pa. June 29, 2000) (collecting cases); *Adams v. Cyprus Amax Mineral Co.*, 44 F. Supp. 2d 1126, 1140 (D. Colo. 1999) ("the most analogous state law claim to a § 1132(c) ERISA claim is one for civil penalties pursuant to a penal statute"); *Harless v. Research Inst. of Am.*, 1 F. Supp. 2d 235, 240 (S.D.N.Y. 1998) (section 502(c) claim is "analogous to an action for civil statutory penalties").

[5]  *Accord Iverson*, 125 Fed. App'x at 76-77 (affirming district court holding that § 502(c) claim is time-barred under North Dakota statute of limitations for "actions upon a statute for a penalty or forfeiture").*Gregorovich*, 602 F. Supp. 2d at 517 (borrowing one-year Delaware "civil forfeiture" statute of limitations) ; *Tritt*, 2008 U.S. Dist. LEXIS 41208 at *22-23 (borrowing one-year Connecticut limitations period "for actions to recover civil statutory penalties"); *Kumar v. Higgins*, 91 F. Supp. 2d 1119, 1123-24 (N.D. Ohio 2000) (borrowing one-year Ohio statute of limitations for "an action upon a statute for penalty or forfeiture"); *Adams*, 44 F. Supp. 2d at 1138-40 (borrowing one-year Colorado limitations period for "actions for any penalty or forfeiture").

Plaintiff's § 502(c) claims are therefore time-barred under D.C. Code § 12-301(5). Plaintiff's cause of action based on her August 2002 requests accrued in September 2002, and plaintiff's cause of action based on her August 2003 requests accrued in September 2003.  *See Gregorovich*, 602 F. Supp. 2d at 518 (§ 502(c) claims accrue "at the latest thirty days from" the date of a participant's request and "[t]he one year statute of limitations for each claim expires on the anniversary date of the accrual date").  However, plaintiff did not file her initial complaint until November 11, 2004, more than two years after the statute of limitations began to run on her August 2002 cause of action accrued and 14 months after August 2003 cause of action accrued. (Dkt. 1.)  Accordingly, all of the Individual defendants are entitled to summary judgment on all of plaintiff's § 502(c) claims.

### B.      Plaintiff Cannot State a § 502(c) Claim Against the Board Defendants.

Apart from the untimeliness of plaintiff's § 502(c) claims, she also cannot assert her claims against the 41 individual "Board" defendants who were not members of the Retirement Committee.[6]  "It is well established that only plan administrators are liable for statutory penalties under § 1132(c)," *Caffey v. UNUM Life Ins. Co.*, 302 F.3d 576, 584 (6th Cir. 2002), and plaintiff admits that PhRMA's Board of Directors "was not the Plan Administrator" for the Retirement Plan or the Deferred Savings Plan "at any time" between November 15, 1998 and the present day, *see* Ex. 2, Pl.'s Resp. RFA Nos. 2 & 4.  *Accord*, *e.g. Mondry v. Am. Family Mut. Ins. Co.*, 557 F.3d 781, 794 (7th Cir. 2009) ("liability under section 1132(c)(1) is confined to the plan administrator").

---

[6]  Plaintiff's second amended complaint names 47 Board members as individual defendants. (Dkts. 86, 109.)  One of those Board member defendants, Alan Holmer was also a member of the Retirement Committee and is named twice as a defendant.  Plaintiff failed to serve five other Board member defendants – Ernesto Bertarelli, David Ebsworth, Soburo Hamanaka, Carl-Gustaf Johansson, and Kanichi Nakamura – and subsequently agreed to dismiss them from her action. (Dkt. 110.)  The remaining 41 Board member defendants were not members of the Retirement Committee.

The terms of the Plans confirm plaintiff's admission. A plan's "administrator" is "the person specifically so designated by the terms under which the plan is operated." ERISA § 3(16)(A)(i), 29 U.S.C. § 1002(16)(A)(i). *Accord Davis v. Liberty Mut. Ins. Co.*, 871 F.2d 1134, 1138 (D.C. Cir. 1989). The Retirement and Deferred Savings Plans state plainly that the Retirement Committee "shall be charged with and shall have full discretionary power and authority for and control of the administration of the plan." *See* Morales Decl. Ex. 1.A, 1996 Retirement Plan § 9.1(d), at WALKER388; *id.*, Ex. 1.C, 1998 Deferred Savings Plan § 9.1(d), at WALKER254.[7] The Plans' summary plan descriptions ("SPDs") are equally clear that the Retirement Committee is the plan administrator for both Plans. *See, e.g., id.*, Ex. 1.D, 1996 Retirement Plan SPD at BJW01473 (Retirement Plan SPD: Plan "is administered by the Retirement Committee according to the Plan document.")[8]; *id.*, Ex. 1.F, 1996 Deferred Savings Plan SPD at WALKER211 (Deferred Savings Plan SPD: "The Plan Administrator is responsible for the administration of the Plan. The name . . . of the Plan Administrator is: Pharmaceutical Research and Manufacturers of America, Retirement Committee.").[9]

Plaintiff's own pleadings and filings similarly recognize that the Retirement Committee, and not PhRMA's Board, is the plan administrator for both Plans. Plaintiff's amended complaint alleges that the "Retirement Committee . . . at all times pertinent and material hereto, served as the Plan Administrator for the various PhRMA pension and welfare benefit plans including the Retirement Plan and the Deferred Savings Plan." (Dkt. 86 at ¶ 12.) *See also* Dkt. 89, Indiv. Defs.' Answer ¶ 12 ("Defendants admit that the Retirement Committee is the Plan Administrator for the Retirement and Deferred Savings Plans[.]"). In opposing the

---

[7] *Accord* Morales Decl., Ex. 1.B, 2009 Retirement Plan § 9.1(d) at WALKER1227.
[8] *Accord* Morales Decl., Ex. 1.E, 2003 Retirement Plan SPD at BJW01422.
[9] *Accord* Morales Decl., Ex. 1.G, 1999 Deferred Savings Plan SPD at BJW00361.

Individual defendants' motion to dismiss, plaintiff asserted that the "Retirement Committee and its individual members are plan 'administrators'" under ERISA § 3(16)(A).  (Dkt. 75 at 7 n.6.) And plaintiff made the same assertion in support of her motion for leave to file a second amended complaint: "Both the PhRMA Retirement Committee and its individual members are the 'plan administrators' under the [Retirement Plan]."  (Dkt. 104 at 1.)

Accordingly, the "Board" defendants are entitled to summary judgment on the alternative grounds that PhRMA's Board of Directors is not the plan administrator for the Retirement and Deferred Savings Plans.  *See Davis*, 871 F.2d at 1138 (affirming dismissal of § 502(c) claims against non-administrator defendants).  *Accord McKinsey v. Sentry Ins.*, 986 F.2d 401 (10th Cir. 1993) (same); *Crocco v. Xerox Corp.*, 137 F.3d 105, 107-08 (2d Cir. 1998) (same).

**C.      Plaintiff's § 502(c) Claims Also Fail on the Merits.**

All of the Individual defendants are also entitled to summary judgment for the additional reason that plaintiff's allegations and the undisputed facts confirm that she is not entitled to any award of statutory penalties under § 502(c).  Plaintiff's August 2002 requests did not seek documents under ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4), or any of the statute's other disclosure provisions, and therefore cannot create liability under § 502(c).  Moreover, the Retirement Committee provided plaintiff with all of the documents that she would have been entitled to receive if she had requested them under § 104(b)(4).  The Retirement Committee's response to plaintiff's alleged August 2003 request also complied with the requirements § 104(b)(4).

     **1.**       **Plaintiff is not Entitled to Any Statutory Penalties for her August 2002 Requests.**

      Plaintiff first asserts that she is entitled to statutory penalties for the Retirement Committee's allegedly incomplete response to two identically worded letters that she mailed on August 26, 2002.  (Dkt. 109 at ¶ 75; Dkt. 75 at 8-10.)  *See also* Exs. 3 & 4.  Plaintiff submitted those letters, titled "Re: My Claim for Benefits Under the PhRMA Retirement Plan" and "Re: My Claim for Benefits Under the PhRMA Deferred Savings Plan," shortly after the Retirement Committee's July 15, 2002 denial of her administrative benefit claims.  (Rule 56.1 Statement ¶¶ 24-25.)  Plaintiff's letters requested two categories of documents pertinent to her administrative appeal:

> In connection with the preparation of my appeal, I request that you provide the following documents for my review within ten (10) days of your receipt of this letter:
>
> 1.  All documents, records, or other information relied on, submitted, considered, or generated in the course of making the determination regarding my benefits, including, but not limited to the following: . . . [and]
>
> 2.  All documents, records, or other information which demonstrate PhRMA's compliance with the administrative processes and safeguards required by 29 C.F.R. Section 2560.503-1(b)(5), including, but not limited to, copies of PhRMA's claims procedures for the PhRMA Retirement Plan.

(Exs. 3 & 4.)

      Plaintiff's letters both cited and mirrored the Department of Labor's regulation setting forth the administrative requirements for a "full and fair review" of participant benefit claims pursuant to ERISA § 503, 29 U.S.C. § 1133.  *See* 29 C.F.R. § 2560.503-1.  Using the same language as plaintiff's letters, the regulation states that "upon request," a benefit claimant is entitled to receive all documents "*relied upon*" or "*submitted, considered, or generated in the course of making the* benefit *determination*" and all documents that demonstrate "compliance

with the administrative processes and safeguards required pursuant to [29 C.F.R. § 2560.503-1(b)(5)]."  *Id.* § 2560.503-1(h)(2)(iii) & (m)(8) (emphases added).

        Consistent with the regulation, plaintiff's request sought the entire administrative record for her benefit claims.  *See Hurley v. Life Ins. Co. of N. Am.*, No. 04-252 (CKK), 2006 U.S. Dist. LEXIS 48835, at *18-19 (D.D.C. July 9, 2006) (record consists of "every document submitted, considered, or generated in the course of making the benefit determination") (quotation omitted).  In a series of lettered paragraphs, plaintiff herself attempted to describe the documents that she believed may have been the record, including, for example: "copies of [her] invoices to PhRMA for the period 1988 through 2001"; "copies of each of the PhRMA Retirement Plans [and Deferred Savings Plans] in effect for the period 1988 through 2001 and the Summary Plan Descriptions for such plans"; and "all documents reflecting prior benefit determinations by the PhRMA Retirement Committee for any PhRMA consultants or contractors."  (Exs. 3 & 4.)

        However, many of the documents that plaintiff identified were *not* in the administrative record.  The Retirement Committee therefore responded to plaintiff on September 5, 2002, in an effort to clarify the "ambiguous" scope of plaintiff's requests.  (*See* Ex. 5.)  The Committee confirmed that it had "no objection" to providing plaintiff with all "documents which [she was] legally entitled under ERISA," or for which she had "a reasonable, good faith need in connection with [her] appeal."  (*Id.*)  But the Committee noted that plaintiff's description of the administrative record differed from the actual record complied during the Committee's review of her benefit claims.  (*Id.*)  The Committee accordingly explained that it intended to respond to plaintiff's requests by producing the "documents that the Committee relied on in denying [plaintiff's] claim."  (*Id.* at WALKER590.)  It also expressly invited plaintiff to submit a further

request if she wished to receive additional documents not contained in the administrative record.

(*Id.*)

Plaintiff did not respond to the Retirement Committee's September 5 letter, and the Committee timely produced the administrative record on September 26, 2002.  (*See* Ex. 6.) A cover letter described the scope of the Committee's production:

> Please find enclosed copies of materials that you requested for the preparation of your appeal to the Retirement Committees for the PhRMA Retirement Plan and the PhRMA Deferred Savings Plan.  *You will find copies of the plan documents and summary plan descriptions*, copies of several of your contracts with PhRMA (although there may be others, we could not locate copies) and the minutes of the meeting of the Retirement Committees where your claims for additional benefits were considered.

*Id.* (emphasis added).  As indicated in the cover letter, the Committee's production included copies of numerous plan documents and SPDs, including the Retirement Plan's 2002 SPD and restatements of the Retirement Plan issued by PhRMA in 1994 and 1999.  *See* Ex. 2, Pl's Resp. Interrog. No. 8.[10]

Plaintiff never informed the Committee that its September 2002 production was in any way deficient.  (Ex. 16 at 135:10-15.)  Nevertheless, she now asserts that the Committee violated ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4), because it did not produce "all of" the versions of the Plans, SPDs, and PhRMA employee handbooks that were in effect for the period between 1988 and 2002, regardless of whether the Committee considered those documents in reviewing her administrative claims.  (Dkt. 75 at 8-10.)  Even if plaintiff's allegations are correct (and the Individual defendants do not admit that they are), the Court should not award any statutory penalty under ERISA § 502(c).

---

[10]  Plaintiff also admits that she received the Deferred Savings Plan's 1996 SPD and PhRMA's 1989 restatement of the Deferred Savings Plan.  *See* Ex. 2, Pl's Resp. Interrog. No. 8.

*First*, plaintiff's administrative record request under ERISA § 503 and 29 C.F.R. § 2560.503-1 does not, as a matter of law, give rise to liability under ERISA § 502(c). As the Seventh Circuit has explained, "section 1133 . . . cannot authorize the Secretary [of Labor] to impose any obligations on the plan administrator or to establish that those obligations are enforceable through the sanctions of section 1132(c)." *Wilczynski v. Lumbermans Mut. Casualty Co.*, 93 F.3d 397, 406-07 (7th Cir. 1996). This is the case regardless of whether the administrative record contains, or is thought to contain, plan documents, SPDs, or other materials that a participant could also request under ERISA § 104(b)(4). *See, e.g., Cortez v. Prudential Ins. Co.*, No. 1:08-CV-315, 2008 U.S. Dist. LEXIS 93891, at *8, *12 (W.D. Mich Sept. 19, 2008) (ERISA § 502(c) does not apply to alleged failure to provide full response to request for administrative record under 29 C.F.R. § 2560.503-1); *Ranke v. Sanofi-Synthelabo*, No. 04-1618, 2004 U.S. Dist. LEXIS 22427, at * (E.D. Pa. Nov. 2, 2004) ("Plaintiffs may not bring a civil cause of action under ERISA § 502(c) for the [defendants'] alleged failure to provide plan documents as required by § 503(2) and 29 C.F.R. § 2560.503-1(h)(2)(iii)."), *aff'd*, 436 F.3d 197 (3d Cir. 2006).

*Second,* § 502(c) statutory penalties are not justified even if plaintiff's letters could be construed as requests under ERISA § 104(b)(4). "As a penalty provision section 1132(c) must be strictly construed" against liability for ambiguous or unclear requests. *Fisher v. Metro. Life Ins. Co.*, 895 F.2d 1073, 1077 (3d Cir. 1990) (rejecting § 502(c) claim). Consistent with this rule of lenity, § 502(c) penalties are inappropriate where a plan administrator makes a "good faith" effort to comply with "ambiguous" document requests. *Draper v. Baker Hughes*, 892 F. Supp. 1287, 1297-1300 (E.D. Cal. 1995). Here, there is no question that the Retirement Committee responded in good faith to plaintiff's requests: the Committee timely and proactively

contacted plaintiff regarding the ambiguity in her requests; the Committee informed plaintiff of its interpretation of her requests; plaintiff did not question the Committee's interpretation; and plaintiff did not until years later challenge the Committee's decision to produce the administrative record. *See Crosby v. Rohm & Haas Co.*, 480 F.3d 423, 432 (6th Cir. 2007) (no § 502(c) penalty where plaintiff "did not . . . indicate that [the administrator's] response was inadequate" and administrator "had no reason to doubt the sufficiency of its responses"). Indeed, plaintiff herself believes that the Committee's alleged failure to respond fully to August 2002 requests "may have been an innocent oversight." (Ex. 16 at 135:7-9.)[11] Under these undisputed facts, "the purpose of the disclosure penalty would not be advanced" and the Court should not exercise its discretion to impose any penalty under § 502(c). *Byars v. Coca-Cola Co.*, 517 F.3d 1256, 1271 (11th Cir. 2008). *Accord Graeber v. Hewlett Packard Co.*, 421 F. Supp. 2d 1246, 1257 (N.D. Cal. 2006) (declining to award § 502(c) penalty where administrator "made a good faith effort" and "provided plaintiff with many of the documents he requested"), *aff'd*, 281 Fed. App'x 679, 681 (9th Cir. 2008).

       Moreover, statutory penalties are also not appropriate because plaintiff cannot show any prejudice from the Retirement Committee's alleged failure to provide a complete response. *See Bartling v. Fruehauf Corp.*, 29 F.3d 1062, 1068-69 (6th Cir. 1994) ("Many courts have refused to impose any penalty at all under § 1132(c)(1)(B) in the absence of a showing of prejudice or bad faith."). *Accord Kifafi v. Hilton Hotels Ret. Plan*, 616 F. Supp. 2d 7, 38-39 &

---

[11]  Naomi Morales, PhRMA's Vice President of Human Resources and Administration and a current member of the Retirement Committee, is responsible for overseeing administration of PhRMA's ERISA benefit plans. Ex. 18 at 15:25-17:15. Consistent with plaintiff's own testimonty, Ms. Morales testified that she has never knowingly denied a participant's request for a plan document or SPD. *Id.* at 125:19-126:2. Ms. Morales testified further that, if informed that a participant had inadvertently received the incorrect version of a plan document or SPD, "as a matter of course" she would "send the correct copy" of a plan document or SPD. *Id.* at 126:3-8.

n.29 (declining to award § 502(c) penalty where non-production was the "result of a mistake and not bad faith," and did not "appear to have harmed [plaintiff] in any way"); *De Nicola v. Adelphi Acad.*, No. CV-05-4231, 2006 U.S. Dist. LEXIS 73301, at *27-28 (E.D.N.Y. Sept. 29, 2006) ("[A] number of courts have opted to forgo awarding statutory damages unless there has been a bad faith action by the defendant resulting in severe prejudice to the plaintiff.").  Plaintiff cannot establish, and does not claim, that the Committee's response affected her substantive benefit claims.  The Court has held on three separate occasions that plaintiff's benefit claims accrued in March 1988 were therefore time-barred more than a decade prior to August 2002.  (*See* Dkt. 33 at 5-7; Dkt. 52 at 5-9; Dkt. 82 at 16-17.)  Furthermore, plaintiff herself obtained *all* of the plan documents and SPDs that she now maintains the Committee should have produced in response to her August 2002 requests.  (Ex. 16 at 131:18-132:7, 135:16-136:9.)

        *Third*, none of the documents that plaintiff claims the Committee failed to produce is covered by the written request provisions of ERISA § 104(b)(4), and the Committee's alleged failure to produce those documents therefore cannot support a § 502(c) penalty.  Section 104(b)(4) requires a plan administrator to produce, on written request, "a copy of the latest updated summary plan description," "other instruments under which the plan is established or operated," as well as certain other documents set forth in the statute.[12]  Courts have overwhelmingly rejected efforts to expand § 104(b)(4) beyond the specific documents identified

---

[12]  Section 104(b)(4) states in full: "The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated.  The administrator may make a reasonable charge to cover the cost of furnishing such complete copies. The Secretary may by regulation prescribe the maximum amount which will constitute a reasonable charge under the preceding sentence."  29 U.S.C. § 1024(b)(4).

by the statutory text.  *See Moody v. Skaliy*, 289 Fed. App'x 361, 363 (11th Cir. 2008); *Faircloth v. Lundy Packing Co.*, 91 F.3d 648, 657 (4th Cir. 1996).

        Plaintiff does not dispute that the Committee's September 2002 production included "the latest updated summary plan description" for the Retirement Plan (issued in 1999), the latest version of the Plan document (the 1999 restatement), and at least one prior version of the Plan (the 1994 restatement).  *See* Ex. 2, Pl.'s Resp. Interrog. No. 8.  The other documents that plaintiff now identifies fall outside the scope of § 104(b)(4).  This includes PhRMA's employee handbooks.  *See*, *e.g.*, *Black v. Pitney Bowes, Inc.*, No. 05 Civ. 108 (GEL), 2008 U.S. Dist. LEXIS 65338, at *36 (S.D.N.Y. Aug. 26, 2008) ("An internal polices and procedures manual is not such a legal document" covered by § 104(b)(4)).  It also includes *prior* versions of the Retirement Plan's SPD.  *See*, *e.g.*, *Shields v. Local 705, Int'l Bhd. of Teamsters*, 188 F.3d 895, 903 (7th Cir. 1999) ("[O]utdated plan descriptions do not fall into any of the categories of documents a plan administrator must provide to plan participants under section 1024(b)(4).") (quotation omitted).  And, it includes prior versions of the Retirement Plan.  *See id.* (administrator not required to provide 1989 or 1967 versions of plan document in response to participant's 1994 request); *Roarty v. AFA Protective Sys., Inc.*, No. 06 CV 0152 (DRH)(WDW), 2008 U.S. Dist. LEXIS 75745, at *24-25 (E.D.N.Y. Sept. 30, 2008) ("Courts have rejected ERISA claims where the claims were based on requests for outdated plan documents or previous versions of a benefit plan.").[13]

---

[13]  Indeed, ERISA only requires a six-year retention period for plan documents and other benefit information.  *See* ERISA § 107, 29 U.S.C. § 1027.  At least one court has recognized that allowing statutory penalties for the failure to provide a prior version of a plan document "would create confusion over which documents a plan administrator must retain indefinitely and which may be discarded after six years."  *Shields v. Local 705, Int'l Bhd. of Teamsters*, No. 96 C 1928, 1996 U.S. Dist. LEXIS 15772, at *31, *aff'd*, 188 F.3d 895 (7th Cir. 1999).

**2.      Plaintiff is not Entitled to § 502(c) Penalties for her August 2003 Request.**

Plaintiff's second § 502(c) claim arises from an e-mail that she allegedly sent to PhRMA's controller, Deborah Barnes, in August 2003, requesting copies of Retirement and Deferred Savings Plans' summary annual reports ("SARs") for the 2002 plan year.  (*See* Dkt. 75 at 9-10.)  Whether plaintiff actually made this request is less than clear.  PhRMA does not have any record of plaintiff's alleged request, *see* Ex. 19 at 21:13-16, and plaintiff is unable to locate or produce a copy of the request, asserting that it "is located in files in a computer owned by Plaintiff that is no longer functioning," Ex. 2, Pl.'s Resp. Interrog. No. 6.  But even assuming, *arguendo*, that plaintiff can establish the existence and content of her alleged August 2003 request, her claim still fails.[14]

The Retirement Committee met its statutory obligation under § 104(b)(4) by timely providing plaintiff with "latest annual reports" for the Retirement and Deferred Savings Plans "within 30 days" of her request.  *See* 29 U.S.C. § 1024(b)(4).  Plaintiff acknowledges that she received copies of the Plans' SARs for the 2001 Plan year on August 27, 2003.  *See* Ex. 16 at 128:11-18.  *See also* Ex. 7.  Those were the "latest annual reports" available for both Plans in August 2003.  Consistent with Department of Labor regulations, PhRMA did not prepare the Plans' 2002 SARs for distribution to participants until December 2003, four months after the date of plaintiff's request.  *See* Ex. 8.  *See also* 29 C.F.R. § 2520.104b-10(c)(1) & (2) (2009).[15]

---

[14]    *But see*, *e.g.*, *Kegel v. Brown & Williamson Tobacco Corp.*, No. 3:06-CV-00093-LRH-VPC, 2009 U.S. Dist. LEXIS 18386, at *38 (D. Nev. Mar. 30, 2009) (granting summary judgment: "Plaintiff has failed to provide any evidence indicating that he requested or was denied information from the plan administrator."); *Campbell v. Prudential Ins. Co.*, No. 01-5229, 2003 U.S. Dist. LEXIS 15544, at *5-6 (E.D. Pa. July 15, 2003) (same).

[15]   The Department of Labor requires a plan sponsor to prepare and distribute SARs by the *later* of "nine months after the close of the plan year" or two months after filing the plan's Form 5500 annual report.  *See* 29 C.F.R. § 2520.104b-10(c)(1) & (2) (2009).  PhRMA filed the Plans' Form 5500 reports for the 2002 plan year in October 2003.

**III.    Summary Judgment is Appropriate on Plaintiff's Claims Under ERISA § 404.**

Plaintiff's breach of fiduciary duty claims seek a second bite at the same apple. She asserts that, in addition to violating §§ 104(b)(4) and 502(c), the Individual defendants breached their ERISA § 404 fiduciary duties because "she has not received from the individual defendants any of the communications required by ERISA" following her 1988 reclassification as an independent contractor.  (Dkt. 75 at 5-8.)  Plaintiff contends that these communications include SARs, SPDs, summaries of material modifications, and benefit statements.  *Id.* at 7-8.

Three separate reasons also support summary judgment on these claims.  *First*, absent extraordinary circumstances not present here, ERISA does not provide a substantive remedy beyond § 502(c) for notice and disclosure violations.[16]  *Second*, plaintiff cannot establish a required element of her § 404 claim because she was not harmed by any alleged breach of fiduciary duty.  *Third*, plaintiff once again cannot maintain her claims against the 41 "Board" defendants.

**A.    ERISA Does Not Provide a Substantive Remedy For Notice and Disclosure Violations.**

ERISA is a "comprehensive and reticulated statute," and the "six carefully integrated civil enforcement provisions found in § 502(a) of the statute . . . provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly."  *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146 (1985) (quotation omitted).  ERISA *does not* contain any express provision for a substantive remedy for general

---

[16]  As the Individual defendants have explained, plaintiffs claims under § 502(c) are both time-barred and provide no basis for the Court to award any statutory penalty.  Because plaintiff does not assert that she ever presented the Retirement Committee with a request for any other document, her remaining notice and disclosure allegations cannot support § 502(c) liability.  *See*, *e.g.*, *Bannistor v. Ullman*, 287 F.3d 394, 407 (5th Cir. 2002) (affirming judgment dismissing disclosure claim based on failure to issue plan of SPD: "Section 502(c)(1) requires Appellees to make a request for such plan description before liability may be imposed, and Appellees did not make such a request.").

notice and disclosure violations not subject to statutory penalty provisions of §§ 502(a)(1)(A) and 502(c).  *See generally Hozier v. Midwest Fasteners, Inc.*, 908 F.2d 1155, 1169 (3d Cir. 1990) ("a participant aggrieved by any reporting and disclosure violation has an available, though limited, remedy under section 502(a)(1)(A)" and § 502(c)).  Accordingly, courts "have repeatedly held that under ordinary circumstances defects in fulfilling the reporting and disclosure requirements of ERISA do not give rise to a substantive remedy other than that provided for in section 502(a)(1)(A) of the Act."  *Ackerman v. Warnaco, Inc.*, 55 F.3d 117, 124 (3d Cir. 1995).  *Accord Watson v. Deaconess Waltham Hosp.*, 298 F.3d 102, 113 (1st Cir. 2002) (affirming summary judgment on breach of fiduciary duty claim: "Technical violations of ERISA's notice provisions generally do not give rise to substantive remedies outside § 1132(c) unless there are some exceptional circumstances, such as bad faith, active concealment, or fraud."); *Hines v. Mass. Mut. Life Ins. Co.*, 43 F.3d 207, 210-11 (5th Cir. 1995) (same).

Plaintiff cannot establish any "extraordinary circumstance" sufficient to pursue her disclosure claims outside the confines of §§ 502(a)(1)(A) and 502(c).  Extraordinary circumstances require "a showing of affirmative acts of fraud or similarly inequitable conduct by an employer," such as a "network of misrepresentations" over an "extended course of dealing" that prevent a participant from pursuing a substantive ERISA claim.  *Kurz v. Philadelphia Elec. Co.*, 96 F.3d 1544, 1553 (3d Cir. 1996).  Thus, "[i]n order to have standing to complain of Defendants' reporting and disclosure violations, [plaintiff] must show some significant reliance on, or possible prejudice flowing from these reporting and disclosure violations."  *United Paperworkers Int'l Union v. Int'l Paper Co.*, 777 F. Supp. 1010, 1019 (D. Me. 1991) (rejecting breach of fiduciary duty claim).  *Accord Watson*, 298 F.3d at 113 ("[A] technical violation in and

of itself cannot be considered a fiduciary breach. Rather, some other circumstance must be present.").

      Here, plaintiff concedes that she timely received at least some plan-related disclosures after her conversion to independent contractor status in 1988.  *See* Rule 56.1 Statement ¶ 23.  More importantly, plaintiff's responsibilities throughout her service to PhRMA as an independent contractor often required her to review the terms of the Retirement and Deferred Savings Plans, and the Plans' SPDs, and she had regular access to those documents. *See* Ex. 16 at 34:14-16 ("If I were given an assignment to do that might have some reference to the plan, I would have been given a copy of the plan.").  For example, plaintiff was responsible for preparing, updating, and correcting the employee benefit provisions of PhRMA's 1997 and 1998 employee handbooks, which provided brief summaries of the Retirement and Deferred Savings Plans and attached the SPDs for those plans.  *See* Exs. 9 & 10.  *See also* Ex. 16 at 51:10-17, 57:7-8.[17]  And in 1991, plaintiff prepared a comprehensive chart for the Retirement Committee summarizing benefit eligibility standards under the Plans, another project that required her to review the terms of the Plans.  *See* Ex. 11.  *See also* Ex. 16 at 48:11-13, 49:15-16.

      In the words of her former attorney, plaintiff during this same time period also "became generally familiar with the plans so that she could respond to basic questions from PhRMA employees."  *See* Ex. 12 at WALKER818 n.2.  Walker herself explained that she "looked at the summary plan descriptions" during her work as an independent contractor and became "generally familiar with the plans" so that she could respond to employees' questions regarding such topics as the Plans' "eligibility requirements," "how the benefit was calculated,"

---

[17]  *See also* Ex. 17 at 42:21-43:4: "A couple of years I was responsible for writing or rewriting the employee handbook and there were sections in that that described some of the employee benefit plans.  On a couple of occasions I interfaced with PhRMA's outside benefits counsel that handled the pension plan."

and "how many years it took to vest in the plan."  Ex. 16 at 39:15-41:13.  Plaintiff was also aware of her own accrued benefit in the Retirement Plan from her years of prior employment with PhRMA, having obtained both written statements of her Plan benefits and the same information orally from a PhRMA employee.  *See* Ex. 13 (1988 benefit statement); Ex. 14 at 12 ("I received a retirement/pension calculation from the Human Resources staff that had been calculated as if I had ceased accruing benefits in May 1988.").  *See also* Ex. 16 at 72:10-75:6, 132:18-21.

Accordingly, plaintiff's breach of fiduciary duty allegations fail because she cannot obtain any substantive remedy for the alleged notice and disclosure violations of which she complains.  *See Kamenstein v. Jordan Marsh Co.*, 623 F. Supp. 1109, 1112 (D. Mass. 1985) ("In situations where the employee has actual knowledge of the provisions of the plan and the extent of his accumulated benefits, failure on the part of the employer to comply with ERISA's reporting and disclosure requirements does not give rise to a cause of action."); *Garavuso v. Shoe Corps. of Am. Indus.*, 709 F. Supp. 1423 (S.D. Ohio) (granting summary judgment on ERISA disclosure claims where "plaintiff had access" to documents describing plan terms), *aff'd*, 892 F.2d 79 (6th Cir. 1989).

**B.    Plaintiff Was Not Harmed By The Individual Defendants' Alleged Disclosure Violations.**

For similar reasons, plaintiff's breach of fiduciary duty claims also fail because she cannot demonstrate actual harm.  The elements of an ERISA breach of fiduciary duty claim are well-established: "In order to prevail on a claim for breach of fiduciary duty under ERISA, a plaintiff must prove (1) that defendants are plan fiduciaries; (2) that defendants breached their fiduciary duties; and (3) that their breach caused harm to the plaintiffs."  *Kannapien v. Quaker Oats Co.*, 507 F.3d 629, 639 (7th Cir. 2007).  *Accord Diduck v. Kaszycki & Sons Contractors,*

*Inc.*, 974 F.2d 270, 281-82 (2d Cir. 1992).  Here plaintiff did not suffer any injury from the Individual defendants' alleged failure to provide SARs, SPDs, summaries of material modifications, and benefit statements.  *See*, *e.g.*, *Dall v. Chinet Co.*, 33 F. Supp. 2d 26, 45 (D. Me. 1998) ("Generally, substantive remedies are not available under § 1132(a) for violations of ERISA's procedural requirements without a showing of harm, some significant reliance on, or possible prejudice flowing from these violations.").

Plaintiff does not claim that the Individual defendants' alleged disclosure violations prejudiced her benefit rights or understanding of the terms of the Plans.  Nor can she. Plaintiff was not harmed by her alleged non-receipt of the Plans' SPDs because she admittedly had access to, "looked at," and "became generally familiar" with the terms of the Plans and SPDs while she worked at PhRMA as an independent contractor.  *See* Ex. 12 at WALKER818 n.2; Ex. 16 at 39:15-41:13.  Moreover, plaintiff also obtained copies of the SPDs from "former coworkers" long before she ever asserted any breach of fiduciary duty claim.  *See* Ex. 16 at 132:4-7.  *See*, *e.g.*, *United Paperworkers*, 777 F. Supp. at 1019-21 (denying breach of fiduciary duty claim based on "failure to provide a summary plan description," "failure to file an annual report," and "failure to maintain a claims procedure" because plaintiffs had access to plan terms); *Garavuso*, 709 F. Supp. at 1429-30 (same).[18]

Plaintiff was not harmed by her alleged non-receipt of benefit statements because she was aware of her accrued benefit under the Retirement Plan, that benefit has not changed since she terminated employment with PhRMA in 1988, and she has received copies of both her 1988 and current benefit statements.  *See* Ex. 13 (1988 benefit statement indicating that plaintiff

---

[18]  Plaintiff also could not have been harmed by her alleged non-receipt of summaries of material modifications because PhRMA has never issued (and has never been required to issue) a summary of material modifications for either the Retirement Plan or the Deferred Savings Plan. *See* Ex. 19 at 47:2-14.

was entitled to receive a $1,384.80 monthly annuity at age-65); Ex. 15 (2008 benefit statement indicating that plaintiff was entitled to receive a $1,384.80 monthly annuity at age-65).  *See also* Ex. 16 at 132:18-21; Ex. 17 at 56:21-57:8.  Furthermore, ERISA does not require plan fiduciaries to distribute benefit statements to terminated vested participants, except upon request.  *See* ERISA § 105(a)(1)(B), 29 U.S.C. § 1025(a)(1)(B).

Lastly, plaintiff was not harmed by her alleged non-receipt of the Plan's SARs, which provide very basic information regarding the Plans' funding status,[19] because PhRMA has always funded the Plans adequately and the Plans have never been threatened with termination based on their funded status.  *See* Ex. 20 at 48:10-13.  Moreover, plaintiff acknowledges that she *did* receive SARs for the 2001 and 2004 Plan years.  *See* Ex. 17 at 50:4-11.  And she *has* received the Retirement Plan's April 2009 "annual funding statement," a new and more detailed funding disclosure that was mandated by the Pension Protection Act of 2006.  *See* ERISA § 101(f), 29 U.S.C. § 1021(f).  *See also Del Rio v. Toledo Edison Co.*, 130 Fed. App'x 746, 751 (6th Cir. 2005) (affirming summary judgment on claim that plan administrator failed to send SARs: "Though there is a factual dispute on this matter, even assuming that [defendant] failed to provide the information, we conclude that [plaintiff] does not have a remedy within the ERISA statutory scheme.").

## C.    Plaintiff Cannot Maintain Her Claims Against the Board Defendants.

Even if plaintiff does have an actionable breach of fiduciary duty claim (which the Individual defendants dispute), she may not pursue that claim against the 41 "Board" defendants because the Retirement and Deferred Savings Plans allocate all fiduciary responsibility for disclosure and participant communication to the members of the Retirement Committee, and not to the Board.  *See*, *e.g.*, Ex. 1.A, 1996 Retirement Plan § 9.1(d) at

---

[19]  *See* 29 C.F.R. § 2520.104b-10(d)(3) (2009) (describing content of SAR).

WALKER388; Ex. 1.C, 1998 Deferred Savings Plan § 9.1(d) at WALKER254; Ex. 1.G, 1999

Deferred Savings Plan SPD at BJW00361, BJW00377 (defining Retirement Committee as Plan

Administrator and describing disclosure and communication responsibilities of Retirement

Committee); Ex. 1.D, 1996 Retirement Plan SPD at BJW01473-77 (same).  Plaintiff admits this

undisputed fact.  *See*, *e.g.*, Dkt. 86, Am. Compl. ¶ 12 ("Under the terms of the PhRMA

Retirement Plan, the Retirement Committee has full power and control of the administration of

the Retirement Plan."); Dkt. 75 at 6 (alleging that the duty "to provide required plan

information" was delegated to the "members of the PhRMA Retirement Committee"); *id.* at 10

(alleging that "the individual members of the Retirement Committee refused to provide her with"

certain requested documents).

   For this reason, plaintiff may only bring her surviving breach of fiduciary duty

claims against the six Retirement Committee defendants.[20]  *See*, *e.g.*, ERISA § 405(c), 29 U.S.C.

§ 1105(c) (where a duty is allocated to one fiduciary, other plan fiduciaries are not responsible

for breaches of that duty); *Arakelian v. Nat'l Western Life Ins. Co.*, 680 F. Supp. 400, 404

(D.D.C. 1987) ("With the exception of the named fiduciary, ERISA ties the fiduciary status of an

entity to its responsibilities under the plan.").[21]  Conversely, plaintiff cannot state an actionable

claim against the individual Board of Directors defendants, who had no fiduciary responsibility

to provide her with plan disclosures and communications.  *See Gelardi v. Pertec Computer

Corp.*, 761 F.2d 1323, 1325 (9th Cir. 1985) (per curiam) (describing effect of allocation of

ERISA fiduciary duties); *Schultz v. Texaco, Inc.*, 127 F. Supp. 2d 443, 452 (S.D.N.Y. 2000)

---

[20]  Those six defendants are Alan Holmer, Del Persinger, Russel Bantham, Kurt Malmgren, John
T. Kelly, and Shannon Herzfeld.
[21]  The Retirement Committee is the "named fiduciary" of both the Retirement Plan and the
Deferred Savings Plan.  *See*, *e.g.*, Dkt. 7-2, Am. Compl. ¶ 10 (alleging that Retirement
Committee is "Named Fiduciary" of the Retirement Plan).

("Where, as here, a plan provides for the allocation of fiduciary responsibility, the person allocating the fiduciary responsibilities (allegedly Texaco or the members of its Board of Directors) is not liable for acts or omissions of the person to whom fiduciary responsibility is allocated . . . , except to the extent that the allocation itself is a breach of fiduciary duty.").[22]

## CONCLUSION

For the foregoing reasons, this Court should grant summary judgment to the Individual defendants on all of plaintiff's surviving claims.

/s/ Frederick G. Sandstrom _____
Jeffrey G. Huvelle (#227769)
Frederick G. Sandstrom (#495069)
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, N.W.
Washington, D.C.  20004-2401
202-662-5499
202-778-5499 (Facsimile)

August 10, 2009                              *Attorneys for the Individual defendants*

---

[22]  Plaintiff alleges that PhRMA's Board of Directors appointed the members of the Retirement Committee (*see* dkt. 7-2, Am. Compl. ¶ 10), but that allegation is insufficient to extend fiduciary liability on plaintiff's claims to the individual Board of Directors defendants.  *See Sommers Drug Stores Co. Employee Profit Sharing Pension Trust v. Corrigan Enters.*, 793 F.2d 1456, 1460 (5th Cir. 1986) ("For example, if an employer and its board of directors have no power with respect to a plan other than to appoint the plan administrator and the trustees, then their fiduciary duty extends only to those functions."); *Gelardi*, 761 F.2d at 1325; *Schultz*, 127 F. Supp. 2d at 452.