UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| BARBARA J. WALKER, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 04-1991 (RMU) |
| | : | | |
| v. | : | Re Document Nos.: | 117, 119, 135 |
| | : | | |
| PHARMACEUTICAL RESEARCH AND MANUFACTURERS OF AMERICA *et al.*, | : : | | |
| | : | | |
| Defendants. | : | | |

### MEMORANDUM OPINION

GRANTING DEFENDANT NEW YORK LIFE'S MOTION FOR SUMMARY JUDGMENT;
GRANTING THE INDIVIDUAL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT;
DENYING THE PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

### I. INTRODUCTION

In the final chapter of this lengthy litigious saga, the plaintiff, a former employee of the Pharmaceutical Research and Manufacturers of America[1] ("PhRMA"), seeks damages for alleged violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq*. The plaintiff alleges that the defendants violated ERISA's notice and disclosure requirements by failing to provide her with certain requested documents related to her retirement plan with PhRMA. Additionally, she asserts that in failing to meet their notice and disclosure obligations, the defendants also breached their fiduciary duties under ERISA § 404.

The matter is now before the court on the parties' cross-motions for summary judgment. As elaborated below, the court concludes that the plaintiff's claims related to her August 2002 request for documents are time-barred by the applicable one-year statute of limitations period.

---

[1] At the time that the plaintiff began her employment with the defendant, the association was known as the Pharmaceutical Manufacturers Association ("PMA"). *See* Pl.'s Statement of Material Facts in Support of Pl.'s Mot. for Summ. J. at 2.

With respect to the plaintiff's claims concerning her August 2003 request for documents, the court determines that the plaintiff failed to submit evidence from which a reasonable juror could conclude that an ERISA violation had occurred. Finally, the court concludes that claims regarding violations of ERISA's notice and disclosure obligations are not properly brought as a claim for breach of fiduciary duty under § 404. Accordingly, the court grants the defendants' respective motions for summary judgment and denies the plaintiff's cross-motion.

## II.  BACKGROUND

### A.  Factual Background

From 1977 to 1988, the plaintiff worked for PhRMA as a full-time attorney. Am. Compl. ¶¶ 15-17.[2] In 1988, the plaintiff began working for PhRMA as an independent contractor. *Id*. As part of her work in PhRMA's general counsel's office, the plaintiff performed labor and employment legal work, which included reviewing employees' Retirement and Deferred Savings plans. Individual Defs.' Mot., Ex. 16 at 34-40.

To maintain her employment arrangement as an independent contractor, the plaintiff and PhRMA have entered into an identically worded one-year employment agreement every year since 1988. Am. Compl. ¶ 27. In September 2001, the plaintiff and PhRMA signed a final employment agreement that provided notice to the plaintiff of PhRMA's intention to discontinue their relationship after June 30, 2002. Mem. Op. (July 17, 2006) at 3. After this final employment agreement was signed, the plaintiff, through an attorney, requested that PhRMA provide her with an accounting of the employment benefits to which she was entitled. Am.

---

[2]     In the plaintiff's second amended complaint, the plaintiff incorporates by reference certain paragraphs from her first amended complaint, specifically paragraphs 1-67, 69-71, 73-34a and 76-86. *See* 2d Amend. Compl. ¶¶ 1, 3, 5, 7, 9. Because the plaintiff fails to reassert these paragraphs in her second amended complaint, the court refers to the first amended complaint where applicable.

Compl. ¶ 43. In response, PhRMA informed the plaintiff that she was not entitled to any benefits since the time that she began working as an independent contractor. *Id*. ¶ 44. The plaintiff appealed that determination to PhRMA without success. *Id.* ¶ 45.

On August 26, 2002, after completing her final one-year work agreement, the plaintiff submitted a letter to PhRMA's Retirement Committee requesting documents related to the denial of her claim for benefits. Pl.'s Mot. at 17; Individual Defs.' Mot., Ex. 3. On September 5, 2002, the Retirement Committee responded to the plaintiff's letter, stating that it would provide her with documents to which she was legally entitled. PhRMA's Mot., Ex. 5. On September 26, 2002, the Retirement Committee provided her with several documents, including the 1994 and 1999 restatements of the Retirement Plan, the 1989 restatement of the Deferred Savings Plan, the 2002 Summary Plan Description ("SPD") for the Retirement Plan and the 1996 SPD for the Deferred Savings Plan. *Id.*, Ex. 6.

In August 2003,[3] the plaintiff emailed the Retirement Committee a request for copies of the Summary Annual Reports ("SARs") for the 2002 Retirement Plan and Deferred Savings Plan. Pl.'s Mot. at 22. On August 27, 2003, the Retirement Committee responded by providing the plaintiff with copies of the 2001 SARs for the Retirement and Deferred Savings Plans. *Id.*; Individual Defs.' Mot., Ex. 7. When the plaintiff inquired as to why she had not received the 2002 documents, the Retirement Committee notified her that those documents were not yet available. Pl.'s Mot. At 22. According to PhRMA, the 2002 SARs were not prepared until December 2003. Individual Defs.' Mot., Ex. 8.

---

[3] The exact date of this request is unspecified by the parties.

## B. Procedural History[4]

The plaintiff filed her original complaint in November 2004, seeking to recoup the retirement benefits that she claimed to be entitled to as an independent contractor. *See generally* Compl. The plaintiff amended her complaint in August 2005, *see generally* Am. Compl., and again in March 2009, *see generally* 2d Am. Compl. The only remaining claims at this juncture are those brought against individual members of the PhRMA Board of Directors and its Retirement Committee ("the individual defendants") and against New York Life Investment Management, LLC ("NYLIM"), the organization that provides administrative and actuarial services for the PhRMA Retirement Committee. Am. Compl. ¶ 12.

The plaintiff's claims revolve around the defendants' alleged failure to provide her with documents as required under ERISA. Pl.'s Mot. at 15-16. More specifically, the plaintiff asserts that the defendants violated the notice and disclosure requirements outlined in ERISA by failing to provide her with the documents that she requested in 2002 and 2003. *Id*. at 16, 22. Such violations, she argues, entitle her to "civil penalties" under ERISA § 502(c), codified at 29 U.S.C. § 1132(c). *Id.* The plaintiff further alleges that the defendants' notice and disclosure violations also give rise to a breach of fiduciary duty claim under ERISA § 404, codified at 29 U.S.C. § 1104. Pl.'s Mot. at 21-22, 25-27, 33.

---

[4] This case has a lengthy and convoluted procedural history. Because a recitation of this history is not necessary for purposes of this memorandum opinion, the court refers the reader to its previous memorandum opinions for further details. *See* Mem. Op. (July 17, 2006) (granting the defendants' motion for summary judgment because the plaintiff's claims were time-barred); Mem. Op. (Nov.15, 2006) (denying the plaintiff's motion to alter or amend judgment); Mem. Op. (Aug. 8, 2008) (dismissing the plaintiff's ERISA claims with the exception of those relating to disclosure violations); Mem. Op. (Mar. 10, 2009) (granting the plaintiff's motion for leave to file a second amended complaint).

The parties have now filed cross-motions for summary judgment.  *See generally* Pl.'s Mot.; Individual Defs.' Mot.; NYLIM's Mot.  With these motions now ripe for adjudication, the court turns to the parties' arguments and the applicable legal standards.

### III.  ANALYSIS

#### A.  The Court Grants the Defendants' Motions for Summary Judgment

##### 1.  Legal Standard for Summary Judgment

Summary judgment is appropriate when the pleadings and evidence show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  To determine which facts are "material," a court must look to the substantive law on which each claim rests.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A "genuine dispute" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action.  *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true.  *Anderson*, 477 U.S. at 255.  A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position.  *Id.* at 252.  To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.  By pointing to

5

the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment.  *Id.*

The nonmoving party may defeat summary judgment through factual representations made in a sworn affidavit if he "support[s] his allegations . . . with facts in the record," *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999) (quoting *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993)), or provides "direct testimonial evidence," *Arrington v. United States*, 473 F.3d 329, 338 (D.C. Cir. 2006).  Indeed, for the court to accept anything less "would defeat the central purpose of the summary judgment device, which is to weed out those cases insufficiently meritorious to warrant the expense of a jury trial."  *Greene*, 164 F.3d at 675.

### 2. The Plaintiff's Notice and Disclosure Claims

#### a. The Plaintiff's Claims Relating to Her August 2002 Request Are Barred by the Applicable One-Year Statute of Limitations

The plaintiff claims that she is entitled to relief under ERISA § 502(c) because the individual defendants provided an incomplete response to her August 2002 letter.  2d Am. Compl. ¶ 8; Pl.'s Mot. for Summ. J. at 16.  The individual defendants argue that, even if their response to the plaintiff's August 2002 request was deficient, the plaintiff's claim is barred by the applicable one-year statute of limitations.  Individual Defs.' Mot. at 6.  According to the individual defendants, the court should apply the District of Columbia's one-year statute of limitations for a civil penalty because the remedies contained within § 502(c) are penal in nature. *Id.*  The individual defendants further argue that the plaintiff's claims related to her August 2002 request should be dismissed because they were filed more than a year after her cause of action accrued.  *Id.* at 6-7.

In response, the plaintiff acknowledges that "some" federal courts have determined that § 502(c) is analogous to a penalty.  Pl.'s Opp'n to Individual Defs.' Mot. at 5.  Nevertheless, she

maintains that § 502(c) is more properly viewed as a remedial statute because it directly compensates plaintiffs. *Id.* The plaintiff therefore concludes that the District of Columbia's "catch-all" three-year statute of limitations should apply. *Id.* In the alternative, the plaintiff argues that her claim is not barred by the one-year statute of limitations because her cause of action only accrued once she began preparing for this litigation and realized that the 2002 plan documents were missing from PhRMA's response to her August 2002 request. Pl.'s Opp'n to Indiv. Defs.' Mot. at 3-4.

An ERISA § 502(c) claim accrues when "(1) a plaintiff makes a demand for information to which [she] is entitled under ERISA; and (2) the defendant fails to supply the requested information within thirty days of the demand." *Gregorovich v. E.I. du Pont de Nemours*, 602 F. Supp. 2d 511, 517 (D. Del. 2009); *see also* 29 U.S.C. § 1132(c)(1). Because ERISA does not include a limitations period, the court must "borrow the most closely analogous statute of limitations" from the jurisdiction in which the court sits. *Connors v. Hallmark & Son Coal Co.*, 935 F.2d 336, 341 (D.C. Cir. 1991). Although the D.C. Circuit has not opined on the issue, other jurisdictions have held that, in determining the most analogous statute of limitations, § 502(c) should be considered a statutory penalty. *See, e.g.*, *Iverson v. Ingersoll-Rand Co.*, 125 F. App'x 73, 77 (8th Cir. 2004) (stating that "section 502(c)(1) is of a penal rather than a compensatory nature"); *Pressley v. Tupperware Long Term Disability Plan*, 553 F.3d 334, 339 (4th Cir. 2009) (concluding that the plain language of § 502(c) is analogous to a penalty); *Gregorovich*, 602 F. Supp. 2d at 517 (holding that § 502(c)(1) "is penal in nature" and applying Delaware's one-year statute of limitations).

As a preliminary matter, this court has reviewed § 502(c) and agrees with those courts that have found it to be penal in nature. Under § 502(c), a plan administrator can be held

7

personally liable for up to $100 per day for failing to comply with ERISA's notice and disclosure obligations. 29 U.S.C. § 1132(c)(1). By imposing a fine, the provision aims to punish those administrators that do not timely disclose certain documents under ERISA. *Iverson*, 125 F. App'x at 77. As the applicable statute of limitations for a statutory penalty is one year in the District of Columbia, *see* D.C. CODE § 12-301(5), the court applies a one-year statute of limitations to the plaintiff's claims.

The court next turns to the plaintiff's argument that her claim did not accrue until she discovered the defendants' violations in the course of this litigation. In this Circuit, the plaintiff's claims would have accrued when she discovered or with due diligence should have discovered that the defendants provided her with an incomplete response to her August 2002 request. *Connors*, 935 F.2d at 341 (holding that the discovery rule applies in this Circuit and, therefore, a claim accrues when the plaintiff "discovers, or with due diligence should have discovered" the injury); *see also Gregorovich*, 602 F. Supp. 2d at 517 (holding that a claim accrues when a plaintiff demands information and a defendant does not reply within 30 days). On September 26, 2002, the plaintiff received PhRMA's response to her August 2002 request. Pl.'s Mot. at 20. The plaintiff concedes in her deposition that upon receiving this reply, she knew that PhRMA's response was deficient, but, as she explained it, she assumed that "[PhRMA] had provided [her] everything they were going to provide." Individual Defs.' Mot. for Summ. J., Ex. 16. Accordingly, the plaintiff's cause of action accrued on September 26, 2002, the date that she received the response and thereby discovered or should have discovered the alleged injury.

Applying the one-year statute of limitations, the plaintiff was therefore required to file her suit by September 2003. D.C. CODE § 12-301(5). Yet the plaintiff did not file this suit until

November 2004, more than two years after her original request for documents. *See generally* Compl. The plaintiff's claims related to her August 2002 request are thus barred by the District of Columbia's one-year statute of limitations for a civil penalty.

### b. The Plaintiffs' Claims Relating to Her August 2003 Request Fail Because a Reasonable Juror Could Not Conclude That the Individual Defendants Violated ERISA § 104(b)(4)

The plaintiff further claims that the individual defendants violated ERISA's disclosure requirements when, in August 2003, the plaintiff requested the 2002 SAR from PhRMA but received the 2001 SAR instead. Pl.'s Mot. at 22. The individual defendants argue that they met their statutory obligations under ERISA by providing the plaintiff with the "latest annual reports" in response to her 2003 request. Individual Defs.' Mot. at 18.

In response, the plaintiff acknowledges that on August 27, 2003, PhRMA provided her with the 2001 SAR and advised her that the 2002 SAR was not yet available. Pl.'s Opp'n to Individual Defs.' Mot. at 2. The plaintiff concedes that because the 2002 SAR had not been prepared, "no liability could have accrued against [the individual defendants] when [they] failed to provide the documents to [the plaintiff] in September 2003." *Id.* at 3. Nevertheless, the plaintiff argues, her August 2003 request "remained pending" and her "reasonable expectation was that she would be provided with the requested documents when they were published." *Id*. at 2.

ERISA § 104(b)(4) states, in part, that "[t]he [plan] administrator shall, upon written request of any participant or beneficiary, furnish a copy of the . . . latest [SAR] . . . under which the plan is established or operated." 29 U.S.C. § 1024(b)(4). The SAR must be completed within approximately seven months after the close of the plan year, *id*, and distributed "within nine months after the close of the plan year," 29 C.F.R. § 2520.104b–10.

9

Here, the plaintiff requested the 2002 SAR in August 2003, and the PhRMA Retirement Committee responded later that same month. Pl.'s Opp'n to Indiv. Defs.' Mot. at 2. In its response, the Retirement Committee not only provided the plaintiff with the 2001 SAR, but also advised the plaintiff that the 2002 SAR had not yet been completed. *Id.* at 2. Indeed, PhRMA had not prepared the 2002 SAR and would not prepare it until December 2003, more than three months after the plaintiff's request. Individual Defs.' Mot. for Summ. J., Ex. 8. The plaintiff has not suggested that the defendants' timeline for the preparation and distribution of its 2002 SAR violated ERISA or any applicable regulations. *See* 29 U.S.C. § 1024(b)(4) (requiring that the administrator file the annual report with the Secretary within 210 days after the close of the plan year); 29 C.F.R. § 2520.104b–10. Moreover, the plaintiff fails to point to any authority that would support her assertion that the Retirement Committee was statutorily required to continuously update its response and ultimately provide the desired 2002 SAR.[5] *See Groves*, 803 F.2d at 113.

Because PhRMA had not yet prepared the 2002 SAR at the time of the plaintiff's request and was not required to have done so, the court concludes that a reasonable juror could not find that the individual defendants had violated § 502(c) by failing to disclose the 2002 SAR. As a result, the court grants the individual defendants' motion for summary judgment with respect to the plaintiff's claims that stem from her August 2003 request for documents.

---

[5] Indeed, the plaintiff, as an attorney for PhRMA, would have been intimately familiar with the company's annual SAR disclosures, and was thus well aware that PhRMA would not distribute the 2002 SAR until December 2003. *See* Pl.'s Mot. for Summ. J., Ex. 28 (a letter addressed to all PhRMA retirees, dated December 11, 2001, in which PhRMA sent copies of the 2000 SAR, with a cover sheet stating, "[e]ach year at this time we send you information regarding PhRMA's Deferred Savings Plan and Retirement Plan.").

**c.  NYLIM Is Not Subject to Liability For the Plaintiff's 2002 and 2003 Requests**

NYLIM argues that it cannot be held liable for penalties related to disclosure requirements because the plaintiff never made a request for documents to NYLIM and because NYLIM was not the designated "plan administrator."  NYLIM Mot. for Summ. J. at 8.  NYLIM contends that penalties under ERISA § 502(c) can only be imposed on the plan administrator, which is the PhRMA Retirement Committee, and only after a plan participant makes a written request.  *Id.* at 9-10.  At no point does the plaintiff argue that her 2002 and 2003 requests for documents were directed at NYLIM.  *See generally* Pl.'s Opp'n to NYLIM Mot. for Summ. J.

Under ERISA § 104(b)(4), the plan administrator is responsible for responding to a written request by a plan participant or beneficiary.  29 U.S.C. § 1024(b)(4).  An administrator "who fails or refuses to comply with a request for any information" is subject to penalties under ERISA § 502(c).  29 U.S.C. § 1132(c)(1).  Here, the plaintiff's 2002 and 2003 requests were directed at PhRMA, and not at NYLIM.  Pl.'s Mot. for Summ J. 19-22.  The court, therefore, determines that NYLIM cannot be held accountable for the alleged ERISA § 502(c) violations, and grants NYLIM's motion for summary judgment regarding the plaintiff's notice and disclosure claims.

### 3.  The Plaintiff's ERISA § 404 Claims

The plaintiff argues that the defendants breached their fiduciary duties under ERISA § 404 by violating ERISA's notice and disclosure requirements.[6]  Pl.'s Mot. at 15-16.  These alleged violations include the aforementioned alleged failure by the defendants to provide the

---

[6]  The plaintiff also suggests that the defendants breached their fiduciary duties by not disclosing certain documents during the course of this litigation. Pl.'s Mot. at 24-25. A plaintiff, however, cannot seek penalties under § 502(c) claim for any alleged disclosure violations that occur during the course of litigation. *See Verkuilen v. S. Shore Bldg. & Mortgage Co.*, 122 F.3d 410, 411-12 (7th Cir. 1997) ("Nothing but confusion could come from treating complaints and interrogatories as ERISA demands, and replacing Rules 11 and 37 with the penalty provisions of § [502](c)").

plaintiff with certain documents about the retirement plans.[7] *Id.* In response, the individual defendants argue that "ERISA does not provide a substantive remedy beyond § 502(c) for notice and disclosure violations."[8] Individual Defs.' Mot. at 19.

ERISA § 404 requires plan fiduciaries to discharge their duties "solely in the interest of the participants and beneficiaries . . . and with the care, skill, prudence, and diligence" of a "prudent man" under like circumstances. 29 U.S.C. § 1104(a). ERISA § 409, a provision entitled "Liability for Breach of Fiduciary Duty," holds plan fiduciaries personally liability "to make good to such plan any losses to the plan . . . and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan." 29 U.S.C. § 1109. Section 409, however, "subjects a fiduciary to liability only to an ERISA *plan* – not to a plan *participant*." *Murchison v. Murchison*, 180 F. App'x. 163, 164 (D.C. Cir. 2006) (determining that the district court's refusal to award an individual plaintiff damages for a breach of fiduciary duty was "entirely appropriate" (citing *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140 (1985))).

Here, the plaintiff brings claims of a breach of fiduciary duty as an individual beneficiary, not on behalf of the plan. *See generally* 2d Am. Compl. As noted, however, the plaintiff may not recover as an individual. *See Murchison*, 180 F. App'x at 164. Additionally, the court notes that relief under § 409 (for a violation of § 404) is inappropriate because Congress has already

---

[7] To the extent that the plaintiff's argument suggests that the defendants breached their fiduciary duties by erroneously denying her benefits or misconstruing her position as an independent contractor, *see* Am. Compl. ¶¶ 72-73, the court notes that "it has long been the rule that an employer or plan sponsor does not act in a fiduciary capacity when adopting, modifying or terminating an employee benefit plan," *Oliver v. Black Knight Asset Mgmt., LLC*, 2011 WL 4442665, at *6 (D.D.C. Sept. 26, 2011).

[8] NYLIM argues that the plaintiff's § 404 claims fail because NYLIM was not acting as a fiduciary. *See generally* NYLIM's Opp'n to Pl.'s Mot. at 6-7. The court need not reach these arguments, however, because it is persuaded that the claims against NYLIM fail for the same reasons that they fail against the individual defendants, as pronounced above.

provided a mechanism for relief for a notice and disclosure violation through § 502(c), as discussed above. *Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996) ("[W] e should expect that where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate' [under § 409]"). The plaintiff cannot simply recycle its claims by reasserting them as claims for breach of fiduciary duty under § 404. Accordingly, the court grants summary judgment to the defendants with respect to the plaintiff's § 404 claims.

## IV. CONCLUSION

For the foregoing reasons, the court grants the defendants' respective motions for summary judgment and denies the plaintiff's cross-motion for summary judgment. An Order consistent with this Memorandum Opinion is separately and contemporaneously filed this 8th day of December, 2011.

RICARDO M. URBINA  
United States District Judge